UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTONIO CABALLERO,

        Plaintiff,

   v.                                                               20-MC-0040-LJV
                                                                      DECISION & ORDER
FUERZAS ARMADAS
REVOLUCIONARIAS DE COLUMBIA, et
al.,

        Defendants.

_____


      The plaintiff, Antonio Caballero, is a judgment creditor of the Fuerzas Armadas

Revolucionarias de Columbia ("FARC").  To satisfy his judgment against FARC,

Caballero has moved *ex parte* under section 201(a) of the Terrorism Risk Insurance Act

of 2002 ("TRIA") for a post-judgment execution on the blocked assets of Petroleos de

Venezuela, S.A ("PDVSA"), an alleged agency or instrumentality of FARC.  Docket Item

10. [1]  For the reasons that follow, the motion is granted.


## BACKGROUND


      In 2012, Caballero commenced an action in Florida state court against FARC,

Norte de Valle Cartel ("NDVC"), and the Ejercito de Liberacion National ("ELN"), for their

_____

[1] Caballero originally moved for a determination that PDVSA and six of its
subsidiaries are agencies or instrumentalities of FARC, and that PDVSA's and the six
subsidiaries' assets are blocked within the meaning of the TRIA.  *See* Docket Item 10.
On December 18, 2020, Caballero withdrew his request for determinations relating to
the subsidiaries.  *See* Docket Item 13.

"extra-judicial kidnapping, torture, and killing of [Caballero's] father to facilitate the trafficking and distribution of illicit drugs throughout the United States."  Docket Item 10-2 at 2-3.  On November 18, 2014, after FARC, NDVC, and ELN failed to appear or defend that action, "the state court entered [a] final judgment, after a trial, in [Caballero's] favor against all three defendants jointly and severally."  *Id.* at 3.

On December 19, 2018, Caballero commenced an action for damages under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, against FARC and NDVC in the United States District Court for the Southern District of Florida.  *Id.*  On May 20, 2020, after FARC and NDVC failed to appear or defend that action, Chief United States District Judge Michael K. Moore entered a final default judgment in favor of Caballero and awarded him $45,000,000 in actual compensatory non-economic damages; $1,729,667 in actual compensatory economic damages; and post-judgment interest at 0.15% per annum.  *Id.* at 15.

On September 10, 2020, Caballero registered the federal judgment with this Court under 28 U.S.C. § 1963.  Docket Item 1.  On October 9, 2020, Caballero moved *ex parte* for a writ of execution under TRIA § 201(a) to attach assets held by non-party M&T Bank Corporation in Buffalo, New York, "in the putative name of, or for the benefit of" PDVSA.  Docket Item 10.[2]

---

[2] On October 9, 2020, Caballero moved to seal the motion for a writ of execution, as well as any order granting that motion, until the writ of execution is served and the assets are attached.  Docket Item 9.  That motion is granted, and this decision and order shall be sealed until PDVSA's assets have been attached.

## DISCUSSION

The TRIA is a means through which terrorism victims can satisfy judgments for

damages against terrorist defendants.  TRIA § 201(a) provides:

> Notwithstanding any other provision of law, and except as provided in
> subsection (b), in every case in which a person has obtained a judgment
> against a terrorist party on a claim based upon an act of terrorism, or for
> which a terrorist party is not immune under [28 U.S.C. §1605(a)(7)], the
> blocked assets of that terrorist party (including the blocked assets of any
> agency or instrumentality of that terrorist party) shall be subject to execution
> or attachment in aid of execution in order to satisfy such judgment to the
> extent of any compensatory damages for which such terrorist party has
> been adjudged liable.

Terrorism Risk Insurance Act § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (2002)

(codified at 28 U.S.C. § 1610 note).  "[B]y its terms[,] § 201 provides that the blocked

assets that may be [attached and] executed upon are those of either the 'terrorist party'

or 'any agency or instrumentality of that terrorist party,' even though the judgment itself

need be only against the terrorist party."  *Weininger v. Castro*, 462 F. Supp. 2d 457, 479

(S.D.N.Y. 2006).

Therefore, Caballero can satisfy his judgment against FARC through the

attachment and execution on blocked assets of FARC's agency or instrumentality if he

can demonstrate that (1) he has a judgment against a terrorist party—here, allegedly

FARC—for a claim based on an act of terrorism, (2) he seeks to attach blocked assets

within the meaning of the TRIA; (3) he seeks execution "only to the extent of any

compensatory damages," *id.*; and (4) "the purported agency or instrumentality"—here,

PDVSA—is "actually an agency or instrumentality" of a terrorist party, *Stansell v.

Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 723 (11th Cir. 2014).

3

## I.    AGENCY OR INSTRUMENTALITY

The TRIA does not define the terms "agency or instrumentality."  *See* TRIA §

201.  But the Foreign Sovereign Immunities Act ("FSIA")—the statute under which the

TRIA is codified—does.  Under the FSIA, an "agency or instrumentality of a foreign

state means any entity"

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a
> majority of whose shares or other ownership interest is owned by a foreign
> state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in
> section 1332(c) and (e) of this title, nor created under the laws of any third
> country.

28 U.S.C. § 1603(b).

The FSIA definition does not end the analysis, however.  In fact, the Second

Circuit has concluded that the TRIA's definition of agency or instrumentality is broader

than that under the FSIA.  *See Kirschenbaum v. 650 Fifth Avenue and Related*

*Properties*, 830 F.3d 107, 133-34 (2d Cir. 2016), *abrogated on other grounds by Rubin*

*v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).  TRIA § 201(a) applies to an "agency

or instrumentality of [a] *terrorist party*"; the FSIA, on the other hand, applies to an

"agency or instrumentality of a *foreign state*."  *Id.*  For that reason, and because the

TRIA reaches the property of non-state actors, the Second Circuit has found that the

TRIA "unambiguously reaches more broadly to permit the attachment of property in

circumstances not covered by the FSIA or FSIA immunity."  *See id.* ("[A]pplying the

FSIA's definition of agencies or instrumentalities to TRIA would leave only terrorist

states as potential sponsors of agencies or instrumentalities under TRIA § 201,

eviscerating TRIA's effectiveness vis-à-vis non-state terrorist organizations.") (citing

*Stansell*, 771 F.3d at 731)).  In this circuit, therefore, "agency or instrumentality" for

purposes of the TRIA means any person or entity who "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Id.* at 135 (emphasis in original). Because of the "clandestine" nature of terrorist parties and their agents, an agency-or-instrumentality relationship can be found even if the agency or instrumentality "had not previously been directly linked to" the terrorist party and even if the evidence linking the agency or instrumentality to the terrorist party is "indirect." *See Stansell*, 771 F.3d at 732, 739, 742 ("[T]errorist organizations such as FARC operate in the shadows out of necessity. For example, a corporation organized under Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies.").

Here, Caballero has established both that FARC is a terrorist party and that PVDSA is an agency or instrumentality of FARC.[3] "According to the Department of Justice, [] FARC is responsible for the production of more than half the world's supply of cocaine and more than two-thirds of the cocaine imported into the United States[] and is

_____

[3] This Court finds that Caballero has presented credible evidence that PDVSA is an agency or instrumentality of FARC. Other courts have found the same. *See* Docket Item 11.

Because "an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns." *Stansell*, 771 F.3d at 726. This Court agrees with the Eleventh Circuit's analysis in *Stansell*, however, that in TRIA cases "the [*Mathews v. Eldridge*, 424 U.S. 319, 333 (1979)] factors weigh in favor of immediate attachment." *See Stansell*, 771 F.3d at 729. While this Court finds that Caballero has presented credible evidence that PDVSA is an agency or instrumentality of FARC, before its assets are executed on, PDVSA is nonetheless entitled to notice and an opportunity to be heard to rebut the allegations that it is an agency or instrumentality of FARC.

the world's leading cocaine manufacturer." *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2015 WL 13325432, at *2 (M.D. Fla. Feb. 17, 2015). The sworn declaration of John Robert McBrian, former associate director for global targeting in the Office of Foreign Assets Control ("OFAC") within the United States Department of Treasury, opines that Venezuela has been "a safe haven for . . . FARC." Docket Item 10-4 at 4. "[B]eginning in 2005," for example, former Venezuelan president Hugo Chávez "personally directed the exchange of vast sums of oil revenue for cocaine with [FARC]." *Id.* at 6 (citing Roger F. Noriega, *Venezuela: Rise of a Narcostate*, AMERICAN ENTERPRISE INSTITUTE (Aug. 11, 2015), https://www.aei.org/foreign-and-defense-policy/latin-america/venezuela-rise-of-a-narcostate/). And within Venezuela, PDVSA is "[t]he primary money laundering structure for [] FARC." *Id.* at 313. Douglas Farah, president of IBI Consultants LLC, testified in September 2017 before the Senate Caucus on International Narcotics Control that "key elements of [] FARC's foreign financial infrastructure" are two subsidiaries of PDVSA, "ALBA Petróleos, the subsidiary of the Venezuelan state oil company PDVSA in El Salvador" and "Albanisa, the PDVSA subsidiary in Nicaragua." *Id.* at 308, 313. Farah explained that "[s]ources within these subsidiaries claim [that financial irregularities in their revenue and expenditures] are the proceeds of money laundering and a financial support cycle involving corrupt Venezuelan officials and drug trafficking organizations, including [] FARC." *Id.* at 316-17. And "[t]here is significant anecdotal evidence that the vast, economically irrational funds washing through ALBA Petróleos, Albanisa, and its scores of subsidiary companies scattered from El Salvador to Gibraltar and from Panama to Nevada, are at

least in significant part the FARC economic resources now being laundered into the world's financial system." *Id.* at 318.

The McBrian declaration further explains that "[i]n addition to money laundering, [PDVSA] has also helped FARC purchase arms." *Id.* at 6. In particular, PDVSA "was involved in a proposed 'three-way deal under which China would give some weapons to Venezuela and others to FARC." *Id.* at 6. "FARC sought surface-to-air [missiles], 0.5 calibre machine guns, rifles and ammunition." *Id.* at 7 (citing *id.* at 301, James L. Smith, *The FARC Files: Venezuela, Ecuador and the Secret Archive of "Raul Reyes"*, Int'l Inst. For Strategic Studies (May 10, 2011)) (internal marks and citations committed). "As compensation for the agreement, 'Venezuela would give China oil to pay for both its own and FARC's weapons, and FARC would pay Venezuela the difference in cash.'" *Id.* at 6-7, 301.

Through the McBrian declaration and supporting documentation, Caballero has sufficiently demonstrated that PDVSA, through money laundering and weapons support, has "provided material services to, on behalf of, or in support of [FARC]." *See Kirschenbaum*, 830 F.3d at 135. PDVSA is thus an agency or instrumentality of FARC. *See id.*; *see also Stansell*, 2015 WL 13325432, at *3 (concluding "Hezbollah . . . including its individual members, divisions, front companies and networks, predecessor, subordinates, derivatives, and/or successor organizations are all agencies or instrumentalities of [] FARC, because they are or were involved in the purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and

international cocaine trafficking").  And because Caballero also has established that FARC is a terrorist party, *see infra*, he has adequately demonstrated that PVDSA is an "agency or instrumentality of [a] terrorist party," *see* TRIA § 201(a).

## II.    TERRORIST PARTY AND ACT OF TERRORISM

Caballero also must show that he has "obtained a judgment against a terrorist party on a claim based upon an act of terrorism."  *See* TRIA § 201(a).  Included in the TRIA's definition of "terrorist party" are "terrorist[s, or] terrorist organization[s]" that are designed as a Foreign Terrorist Organization, as well as organizations "otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization."  *See* TRIA § 201(d)(4) (incorporating the definition of terrorist organization of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(B)(vi)).  FARC is undoubtedly a terrorist party within the meaning of TRIA.  The Secretary of State designated FARC as a Foreign Terrorist Organization in 1997 and re-designated it in 2001.  *See Stansell*, 2015 WL 13325432, at *2; *Stansell v. Revolutionary Armed Forces of Columbia (FARC)*, 2013 WL 12419640, at *1 (M.D. Fla Mar. 12, 2013).  In addition, in October 2001, the president designated FARC as a "Specially Designated Global Terrorist" under Executive Order 13224.  *Id.*; Docket Item 10 at 9.

What is more, Caballero's claim against FARC clearly is "based on an act of terrorism."  *See* TRIA § 201(a).  The United States District Court for the Southern District of Florida specifically found that the defendants' conduct here "constitute[d] an act of international terrorism."  Docket Item 10-2 at 7.  Indeed, FARC and NDVC

"kidnapped [Caballero's] father in Columbia, tortured him for approximately six months, and then killed him to send a message to other potentially uncooperative landowners in the region that resistance to (or failure to comply with) [the d]efendants' demands would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination."  *Id.* (citing the complaint) (internal quotation marks omitted). Caballero's judgment against FARC is therefore a "judgment against a terrorist party on a claim based upon an act of terrorism."  *See* TRIA § 201(a).

## III.   BLOCKED ASSETS

Caballero also must show that PDVSA's assets are "blocked assets" within the meaning of the TRIA.  *See* TRIA § 201(a).  "Assets blocked under authority of the International Emergency Economic Powers Act ('IEEPA') fall within the TRIA definition of 'blocked assets' and are subject to execution under TRIA."  *Stansell*, 2015 WL 13325432, at *1; *see also* TRIA § 201(d)(2)(A).  OFAC has the power to designate assets as "blocked" under the IEEPA.  *See* Exec. Order No. 13224, 3 C.F.R. 13224 (2001); 31 C.F.R. 31 CFR § 594.802.

Under the IEEPA, on November 1, 2018, the president issued Executive Order 13850 blocking "any person determined by the Secretary of the Treasury, in consultation with the Secretary of State":

> (i) to operate in the gold sector of the Venezuelan economy or in any other sector of the Venezuelan economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State;
> (ii) to be responsible for or complicit in, or to have directly or indirectly engaged in, any transaction or series of transactions involving deceptive practices or corruption and the Government of Venezuela or projects or programs administered by the Government of Venezuela, or to be an immediate adult family member of such a person;
> (iii) to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, any

9

activity or transaction described in subsection (a)(ii) of this section, or any person whose property and interests in property are blocked pursuant to this order; or

(iv) to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order.

Exec. Order No. 13850, 83 F.R. 55243 (2018).  And on January 28, 2019, under Executive Order 13850, OFAC designated PDVSA a Specially Designated National ("SDN"), blocking "all property and interests in property of [PDVSA] subject to U.S. jurisdiction."[4]  Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A., U.S. Department of the Treasury (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.  PDVSA's assets therefore are blocked and subject to attachment and execution under the TRIA.

## IV.        COMPENSATORY DAMAGES

Finally, Caballero must show that "execution is sought only to the extent of any compensatory damages."  *Weininger*, 462 F.Supp.2d at 479.  The district court in Florida awarded Caballero $45,000,000 in actual compensatory non-economic damages, $1,729,667 in actual compensatory economic damages, and post-judgment interest at 0.15% annum.  Docket Item 10-2 at 15.  Caballero seeks attachment of $41,734,153.93.[5]  Docket Item 14.  He therefore seeks "execution only to the extent of

---

[4] "OFAC defines 'interest' as 'an interest of any nature whatsoever, direct or indirect,' and property as any 'property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent.'"  *Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 418 (S.D.N.Y. 2013) (citing 31 C.F.R. §§ 544.305, 544.308).

[5] Caballero has collected some funds not reflected in the motion, Docket Item 10, or proposed writ, Docket Item 10-6.  He now seeks to attach the outstanding portion of his compensatory damages award, $41,734,153.93.   Docket Item 14.

any compensatory damages." *Weininger*, 462 F.Supp.2d at 479; *see also* TRIA §

201(a).

## **ORDER**

In light of the above, the Court finds that (1) PDVSA is an agency or

instrumentality of FARC; (2) Caballero has established that he has obtained a final

judgment against a terrorist party, FARC, that is based on an act of international

terrorism; (3) PDVSA's assets, which Caballero seeks to attach and on which he seeks

to execute, are "blocked assets" within the meaning of the TRIA; and (4) Caballero

seeks execution only to the extent of any compensatory damages, therefore

IT IS HEREBY ORDERED that Caballero's motion for a post-judgment writ of

execution on the blocked assets of PDVSA, Docket Items 10, 14 is granted; and it is

further

ORDERED that the motion to seal, Docket Item 9, is granted; and it is further

ORDERED that the Clerk of the Court shall issue the writ of execution to attach

the assets held by M&T Bank Corporation, One M&T Plaza, Buffalo, NY 14203, in the

putative name of, or for the benefit of, Petroleos de Venezuela, S.A., for service and

levy on the garnishees by the United States Marshal, in the amount of $41,734,153.93;

and it is further

ORDERED that the Clerk of the Court is authorized and directed to issue such

further writs in aid of execution as warranted under, and in accordance with, Rule 69 of

the Federal Rules of Civil Procedure, consistent with this order.

SO ORDERED.


Dated:   December 18, 2020
         Buffalo, New York


_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE