



312 Minorca Avenue | Coral Gables, FL 33134
Ph: (305) 444-5565 | Fax: (305) 444-8588
www.zplaw.com

January 6, 2021

**Via Federal Express**
Clerk of the Court
Attention: Kim
United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 4202
Phone: (716) 551-1700
Fax: (716) 551-1705

Re:    *Antonio Caballero v. Fuerzas Armadas Revolucionarias
de Colombia, et al.*, Case No. 20-mc-00040-LJV

Dear Clerk of Court:

We submit the enclosed binder and CD-ROM containing Plaintiff's sealed motion for a writ of execution, along with sealed Composite Exhibit A and sealed Exhibit B, in the above-captioned matter. The aforementioned motion and exhibits are being filed under temporary seal pursuant to this Court's Text Order [D.E. 8], which authorized the temporary sealing of a similar post-judgment application for writ of execution. Furthermore, the duration of the seal sought by Plaintiff with regards to the motion and supporting exhibits is the same as the duration previously sought by Plaintiff and granted by this Court (i.e. until the Writ of Execution is served upon the garnishee).

Respectfully submitted,

**ZUMPANO PATRICIOS, P.A.**

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano
Florida Bar Number: 0056091
*Appearing Pro Hac Vice*
E-mail address: jzumpano@zplaw.com
Leon N. Patricios
Florida Bar Number: 0012777
*Appearing Pro Hac Vice*
E-mail address: lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565


**ZUMPANO PATRICIOS & POPOK, PLLC**
Mitchell G. Mandell
Senior Partner
417 Fifth Avenue, Suite 826
New York, New York 10016
Tel: (212) 542-8125
Fax: (646) 665-4685
mmandell@zplaw.com

***Attorneys for Plaintiff Antonio Caballero***

UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NEW YORK

CASE NO: 1:20-mc-00040-LJV

ANTONIO CABALLERO,                    **FILED UNDER SEAL**

     Plaintiff,

vs.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA,
a/k/a FARC-EP a/k/a
REVOLUTIONARY ARMED FORCES
OF COLOMBIA; and THE NORTE DE
VALLE CARTEL,

     Defendants.

_____/

### PLAINTIFF'S MOTION FOR ISSUANCE OF COURT ORDERED POST-JUDGMENT WRIT OF EXECUTION PURSUANT TO SECTION 201(a) OF THE TERRORISM RISK INSURANCE ACT OF 2002

Plaintiff Antonio Caballero ("Caballero"), by and through undersigned

counsel, moves this Court for a determination that: (i) PDV Marina SA; (ii) Aceites

Y Solventes Venezolanos SA; (iii) Petroanzoategui SA[1] ("Petroanzoategui"); (iv)

Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd; (vii) Banco

---

[1] "Petroanzoategui SA" is also referred to as "Petro San Felix SA." *See* Supplemental Sworn Declaration of John Robert McBrien Regarding Agents and Instrumentalities of the FARC executed on September 8, 2020 (the "Supplemental Declaration"). Moreover, Citibank, N.A. has in its production referred to "Petro San Felix SA" as "AKA - Petrolera Zuata SA; Petrozuata."

Central de Venezuela (a.k.a Central Bank of Venezuela), hereafter "Banco Central de Venezuela"; and (viii) Ministerio del Poder Popular de Economia y Finanzas[2], are agents and instrumentalities of Defendant, Fuerzas Armadas Revolucionarias de Colombia (a/k/a FARC-EP; a/k/a Revolutionary Armed Forces of Colombia) (the "FARC"), and to direct the Clerk of Court to issue a writ of execution for any assets within this Court's jurisdiction in the putative names of, or for the benefit of, or blocked due to an association with, such entities and individuals mentioned above, pursuant to: (i) the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(e); (ii) Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note); (iii) *Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 729-730 (11th Cir. 2014) (concluding that in actions to enforce judgments against terrorists "factors weigh in favor of immediate attachment"); (iv) *Kirschenbaum v. 650 Fifth Ave & Related Properties*, 830 F.3d 107, 135 (2d Cir. 2016); (v) Fed. R. Civ. P. 69, New York CPLR §§ 5230 and 5232; and (vi) L.R.Civ.P. 5.3.

This Motion is being filed under temporary seal pursuant to this Court's Text Order [D.E. 8] which authorized the temporary sealing of a similar post-judgment application for writ of execution. Furthermore, the duration of the seal sought by

---

[2] Citibank, N.A. has referred to the above entity as the "Minesterio del Poder Popular de Eco" for short, and further translates the "Minesterio del Poder Popular de Eco" to the "Venezuela Ministry Of Finance."

Caballero with regards to this motion is the same as the duration previously sought by Caballero and granted by this Court (i.e. until the Writ of Execution is served upon the garnishees). Such temporary seal will protect the post judgment collection process from premature disclosure that can affect the ability of a victim of terrorism from collection his judgment.

## MEMORANDUM OF LAW

### 1.    Brief Procedural Background

On May 20, 2020, Chief Judge Michael K. Moore of the United States District Court for the Southern District of Florida ("S.D. Fla.") entered a Final Judgment in favor of Caballero and against Defendants FARC and the Norte del Valle Cartel ("NDVC") in the amount of $46,729,667.00, which was trebled pursuant to Section 18 U.S.C. § 2333, and which included post-judgment interest at the rate of 0.15% from May 20, 2020, the date of the final judgment. *See* D.E. 63, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, Case No. 18-25337 (S.D. Fla. May 20, 2020) (the "ATA Final Judgment"). On September 10, 2020, pursuant to 28 U.S.C. § 1963, Caballero registered the ATA Final Judgment [D.E. 1] with this Court and may now enforce his ATA Final Judgment like any judgment issued from this Court. *See* 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.").

3

### A. Brief Factual Background

As recounted by a Florida state court and accepted by the S.D. Fla., the "Plaintiff, his father, and his family owned and operated farms and properties in the central regions of Colombia, in an area that was strategically located along the defendants' drug trafficking route." *See* ATA Final Order, D.E. 10-2 at 3. "ELN forces kidnapped Plaintiff's father, who was the former Ambassador to the United Nations, a leading politician, and an outspoken critic of narcotics traffickers…to send a message to other potentially uncooperative landowners in the region that resistance to the defendants' demand would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *Id.* "Then, ELN and FARC, abused and tortured Plaintiff's father over a period of approximately six months before brutally murdering him." *Id.*

After reviewing Plaintiff's federal court Complaint filed under the ATA, the record in the federal court, and a final judgment entered after a non-jury trial in Florida state court under different theories of recovery, the S.D. Fla. entered an order on Motion for Default Judgment entering Final Judgment in favor of Plaintiff Antonio Caballero and against the FARC and NDVC for $45 million in actual compensatory non-economic damages, which it trebled under 18 U.S.C § 2333 (2020), $1,729,667.00 in actual compensatory economic damages, which it trebled under § 2333, and a post-judgment interest rate of 0.15% per annum. *Id.* at 15.

4

**B. Relief Sought**

As explained more fully below, Congress has recognized that it is difficult for terrorism victims to recover on their judgments. By passing TRIA and amending the ATA, Congress has allowed terrorism victims to satisfy the compensatory damages portion of their judgments from the blocked assets of the terrorist defendants *and* from the blocked assets of any agents and instrumentality of the terrorist defendants.

Through post-judgment discovery efforts in the S.D. Fla. action, including a subpoena to OFAC, Caballero has learned that Citibank, N.A. is holding in this jurisdiction, blocked assets in the putative names of, or for the benefit of, or that were blocked due to an association with, (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii) Petroanzoategui; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd; (vii) Banco Central de Venezuela; and (viii) Ministerio del Poder Popular de Economia y Finanzas.[3] In accordance with the law and evidence discussed below, Caballero respectfully requests that this Court determine that the above named entities are agents and instrumentalities of the FARC and authorize the issuance of a writ of execution to execute and/or attach any blocked assets/accounts that Citibank, N.A. is holding in this Court's jurisdiction in

---

[3] Discovery is still ongoing in Caballero's S.D. Fla. Action.

5

the putative names of, or for the benefit of, or that were blocked due to an association with, such agents and instrumentalities.

As will be discussed in greater detail below, according to the United States Department of the Treasury's Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked (Aug. 13, 2014), any entity owned in the aggregate, directly or indirectly, 50 percent or more by one or more FARC agents or instrumentalities is itself a blocked person and also an agent or instrumentality of the FARC. Significantly, PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd; and Venfleet Ltd are subsidiaries directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO (hereafter "PdVSA"), which this Court has already determined to be an agent and instrumentality of the FARC. *See* Decision and Order, D.E. 15.

Indeed, other courts have also determined either PdVSA and/or the aforementioned subsidiaries to be agents and instrumentalities of the FARC. *See e.g.* Amended Order at ¶ 3, *Caballero v. FARC, et al.,* Case No. 2020CP4003495 (S.C. Ct. Com. Pl. Nov. 23, 2020) (determining that PdVSA, PDV Marina SA, Aceites Y Solventes Venezolanos SA, Petro San Felix SA a/k/a Petranzoategui SA, Venfleet

Asphalt Ltd., Venfleet Products Ltd., and Venfleet Ltd.—among others—are agents and instrumentalities of the FARC.); Order on Judgment Creditor's Motion for Agency or Instrumentality Determination Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, *Caballero v. FARC, et al.*, Cause No. 20-09-11744 (Tex.—Montgomery County [284th Dist.] Dec. 1, 2020) (determining that PdVSA is an agent and instrumentality of the FARC); *see also* Order Granting Ex Parte Motion for Issuance of Writs of Garnishment, D.E. 367, *Stansell v. Revolutionary Armed Forces of Columbia*, Case No. 19-cv-20896 (S.D. Fla. June 17, 2020) (determining that a separate PdVSA subsidiary—i.e., Petrocedeño S.A.—is an agency or instrumentality of the FARC and that its assets are subject to execution under TRIA); Order Adopting Reports and Recommendations and Granting Sealed Motion for Release of Funds Held by Garnishee, SMM Petcoke, LLC, D.E. 288, *Doe v. FARC*, Case No. 10-cv-21517 (S.D. Fla. June 5, 2020) (same).[4] As such, Caballero respectfully requests that this Court determine the aforementioned subsidiaries to be agents and instrumentalities of the FARC.

## C. The Terrorism Risk Insurance Act

In 2002, Congress enacted TRIA to govern certain post-judgment attachment proceedings for cases involving terrorist attacks. Congress sought to "deal

---

[4] The four orders referenced above are attached hereto as **Composite Exhibit A-1 through A-4, respectively.**

comprehensively with the problem of enforcement of judgments issued to victims of

terrorism in any U.S. court by enabling them to satisfy such judgments from the

frozen assets of terrorist parties." 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002)

(statement of Sen. Harkin). Section 201(a) states:

> ***Notwithstanding any other provision of law***, and except
> as provided in subsection (b), in every case in which a
> person has obtained a judgment against a terrorist party on
> a claim based upon an act of terrorism, or for which a
> terrorist party is not immune under section 1605A or
> 1605(a)(7) . . . , the blocked assets of that terrorist party
> **(including the blocked assets of any agency or**
> **instrumentality of that terrorist party)** shall be subject
> to execution or attachment in aid of execution in order to
> satisfy such judgment to the extent of any compensatory
> damages for which such terrorist party has been adjudged
> liable.

TRIA § 201(a) (emphasis added).

In other words, a victim holding an unsatisfied judgment against a terrorist

party can collect so long as the following requirements are met: first, the victim "has

obtained a judgment against a terrorist party." *Weininger v. Castro*, 462 F. Supp. 2d

457, 479 (S.D.N.Y. 2006). Second, "the judgment is either (a) for a claim based on

an act of terrorism, or (b) for a claim for which a terrorist party is not immune under

§ 1605(a)(7)." *Id.* Third, "the assets are 'blocked assets' within the meaning of

TRIA." *Id.* Lastly, the "execution is sought only to the extent of any compensatory

damages." *Id.* All elements are satisfied here.

Additionally, to execute against a terrorist party's "agency or instrumentality," the victim "must further establish that the purported agency or instrumentality is actually an agency or instrumentality." *Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 723 (11th Cir. 2014). The agency or instrumentality standard was created to reach beyond the terrorists' efforts to stay in the shadows by using "straw persons" or other layers of affiliated companies and persons as fronts. As the Eleventh Circuit put it, "[o]n the other hand, terrorist organizations such as FARC operate in the shadows out of necessity. For example, a corporation organized under Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies." *Stansell* 771 F.3d at 732. The Eleventh Circuit has also recognized that terrorist and money laundering operations are "clandestine" such that a plaintiff can even establish the agent or instrumentality relationship as being indirect. *Id.* at 732, 742. In fact, the standard can be met even if the blocked party has never previously been linked to the terrorist party. *Id.* at 739 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.")

Per the Eleventh Circuit's holding in *Stansell*, a terrorist victim may apply *ex-parte* for an agent or instrumentality determination by a court because the alleged agencies and instrumentalities are not entitled to a hearing before the issue of a writ

9

of attachment, but only before turnover. *Stansell*, 771 F.3d at 729.[5]  In its extensive

due process analysis, the Eleventh Circuit concluded that "[m]ere attachment is a

minimally intrusive manner" of reducing the risk of fleeting assets. *Id.*  Thus, Mr.

Caballero has moved ex-parte for the issuance of the writ of execution described

herein. *Id.* ("Because the factors weigh in favor of immediate attachment, Claimants

[that is, not the victims but the putative owners of the blocked assets] were not

constitutionally entitled to a hearing before the writ issued. In sum, Claimants were

entitled to notice and to be heard before execution, though not necessarily before

attachment.").

### i.  The Judgment Is Against a Terrorist Party

The first element under TRIA—that "a person has obtained a judgment

against a terrorist party"—is met. *Weininger*, 462 F. Supp. 2d at 479. The Defendant

FARC is a "terrorist party." *See* ATA Final Order, D.E. 10-2 at 2. TRIA defines a

"terrorist party" as a "terrorist" or as a "terrorist organization (as defined in section

212(a)(3)(B)(vi) of the Immigration and Nationality Act [("INA")] (8 U.S.C.

1182(a)(3)(B)(vi)) . . . ." TRIA § 201(d)(4). Under the INA, a "terrorist organization"

includes: (1) any organization designated as a Foreign Terrorist Organization under

---

[5] Because *Stansell*, 771 F.3d at 729, has interpreted TRIA to authorize the filing of
an ex parte motion, Plaintiff satisfies L.R.Civ.P. 5.3 requirements for filing under
seal. *See also* 11 New York Civil Practice: CPLR 5230.00 (2020) ("an execution
under CPLR 5230 may issue against either real or personal property without prior
recourse to the courts").

8 U.S.C. § 1189, see 8 U.S.C. § 1182(a)(3)(B)(vi)(I); (2) any organization designated, upon publication in the Federal Register, as a terrorist organization for engaging in terrorist activities, see 8 U.S.C. § 1182(a)(3)(B)(vi)(II); and (3) any organization "that is a group of two or more individuals, whether organized or not, which engages in, or that has a subgroup which engages in, [terrorist activities as defined in 8 U.S.C. § 1182(a)(3)(B)(iv)(I)–(VI)] . . . . " *See* 8 U.S.C. § 1182(a)(3)(B)(vi)(III).

The Southern District determined that the Defendants' conduct constituted an act of international terrorism. *See* ATA Final Order, D.E. 10-2 at 7. The Southern District found that the Defendants kidnapped Caballero's father, tortured him for approximately six months, and then killed him "to send a message to other potentially uncooperative landowners in the region that resistance to (or failure to comply with) Defendants' demands would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *See id.* (quoting Compl. at ¶ 5).

Moreover, in 2001, the United States designated the FARC as a Specially Designated Global Terrorist under Executive Order 13224, and in 2003, the U.S. President designated the FARC as a Specially Designated Narcotics Trafficking Kingpin pursuant to the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§1901–1908.

11

1. **The Law Provides a Broad Definition of Agents and Instrumentalities**

In *Stansell*, the Eleventh Circuit adopted the District Court's definition of "agency or instrumentality" for TRIA purposes. 771 F.3d at 724 n.6. An "agency or instrumentality" is any person, entity, drug cartel, or organization that: (1) "materially assist[ed] in, or provid[ed] financial or technological support for or to, or provid[ed] goods or services in support of the international narcotics trafficking activities of a specially designated narcotics trafficker . . . [FARC]"; "and/or" (2) was "owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker . . . [FARC]"; "and/or" (3) "play[ed] a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC]." *See id.*

2. **This Motion is Supported by the Sworn Declarations of a Highly Qualified Former OFAC Official**

This Motion is supported by the Sworn Declaration of John Robert McBrien Regarding Agencies and Instrumentalities of the FARC (the "Sworn Declaration") executed on July 14, 2020 [D.E. 10-3] and the Supplemental Declaration [D.E. 10-4]. By way of background, Mr. McBrien was formerly the Associate Director for Global Targeting in the Office of Foreign Assets Control ("OFAC"), the U.S. Treasury Department's sanctions organization. *See* Sworn Declaration at ¶ 1. He held that position from May 2005 to December 2011, when he retired from the

Treasury Department. *Id.* At all times during his employment with OFAC, Mr. McBrien was in charge of its designation operations. *Id.* This covered the period from November 1987 to and throughout the formal creation of OFAC's Office of Global Targeting (OGT) in 2005. *Id.*

Mr. McBrien was in charge of the designation programs of OFAC for more than 24 years. *Id.* OFAC's Office of Global Targeting is charged with investigating and identifying the foreign entities and individuals that are designated under OFAC's Specially Designated Nationals ("SDN") programs directed against the principals, operatives, and networks of sanctioned countries, regimes, and non-state foreign adversaries. *Id.* Mr. McBrien is also an authority in the employment of U.S. economic sanctions programs and had a seminal role in the conception, design, and development of the Specially Designated Nationals list and targeted sanctions against non-state foreign adversaries. *Id.* at ¶ 2. His initiatives have been a key factor in the development of economic sanctions as a major instrument of national security policy. *Id.* During his nearly 25 years with OFAC, Mr. McBrien participated in the development of every sanctions Executive Order issued in that period and in the implementation of the resulting sanctions programs. *Id.*

**3. Any entity owned in the aggregate, directly or indirectly, 50 percent or more by PdVSA is an agent and instrumentality of the FARC**

The following PdVSA subsidiaries owned in the aggregate, directly or indirectly, 50 percent or more by PdVSA are agents and instrumentalities of the FARC: PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd; and Venfleet Ltd.

That the aforementioned subsidiaries are agents and instrumentalities of the FARC is supported by the Supplemental Declaration of Mr. McBrien. *See* Supplemental Declaration at D.E. 10-4 at ¶ 13. Mr. McBrien has analyzed OFAC's pronouncements regarding persons or entities associated with blocked parties. *Id.* at ¶ 23. Specifically, and as previously discussed, according to the United States Department of the Treasury's Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked (Aug. 13, 2014), any entity owned in the aggregate, directly or indirectly, 50 percent or more by one or more FARC agents or instrumentalities is itself a blocked person and also an agent or instrumentality of the FARC. *See Id.* Mr. McBrien concluded that "subsidiaries owned, directly or indirectly, 50 percent or more by PdVSA, are also blocked entities and that any assets titled in or held in the name of such subsidiary entities are blocked assets." *See Id.* at ¶ 13.

Based on his review of certain records outlined in his Supplemental Declaration, including information provided in audited financial statements of PdVSA and representations from United States banking institutions, Mr. McBrien concluded that PdVSA owns, directly or indirectly, 50 percent or more of the following entities: (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii) Petroanzoategui; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd and that such entities are all blocked entities that are agents and instrumentalities of the FARC. *Id.* Thus, Caballero respectfully requests that this Court determine that the aforementioned subsidiaries of PdVSA are agents and instrumentalities of the FARC.

Moreover, on December 21, 2020, this Court determined PdVSA to be an agent and instrumentality of the FARC and issued a Writ of Execution upon the funds held in the name of, or for the benefit of, PdVSA, held by M&T Bank Corporation. *See* Decision and Order, D.E. 15. *See* Decision and Order, D.E. 15. Thus, given the above referenced Revised Guidance and the fact that PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd; and Venfleet Ltd are subsidiaries directly and/or indirectly owned 50 percent or more by PdVSA, it follows that the aforementioned subsidiaries are also agents and instrumentalities of the FARC.

15

Significantly, other courts have also determined either PdVSA and/or the aforementioned subsidiaries to be agents and instrumentalities of the FARC. *See e.g.* Amended Order at ¶ 3, *Caballero v. FARC, et al.,* Case No. 2020CP4003495 (S.C. Ct. Com. Pl. Nov. 23, 2020) (determining that PdVSA, PDV Marina SA, Aceites Y Solventes Venezolanos SA, Petro San Felix SA a/k/a Petranzoategui SA, Venfleet Asphalt Ltd., Venfleet Products Ltd., and Venfleet Ltd.—among others—are agents and instrumentalities of the FARC.); Order on Judgment Creditor's Motion for Agency or Instrumentality Determination Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, *Caballero v. FARC, et al.,* Cause No. 20-09-11744 (Tex.—Montgomery County [284th Dist.] Dec. 1, 2020) (determining that PdVSA is an agent and instrumentality of the FARC).[6]

Moreover, two federal judges have already determined that Petrocedeño, S.A. ("Petrocedeño"), another subsidiary of PdVSA, is an agency or instrumentality of FARC. Specifically, the Judge Scola Order granting Stansell's Ex Parte Motion for Issuance of Writs of Garnishment [D.E. 367, *Stansell v. Revolutionary Armed Forces of Columbia,* Case No. 19-cv-20896 (S.D. Fla. June 17, 2020)][7], concluded that Petrocedeño is an agency or instrumentality of the FARC and that its assets are subject to execution under TRIA. In his order, Judge Scola took judicial notice of

---

[6] The two orders referenced above are attached hereto as **Composite Exhibit A-1 and A-2, respectively.**

[7] Attached hereto as **Composite Exhibit A-3.**

16

the Judge Huck Order in *Doe v. FARC*, Case No. 10-cv-21517 (S.D. Fla. June 5,

2020)[8], wherein Judge Huck determined that Petrocedeño is an agency or

instrumentality of FARC and that its assets are subject to execution under TRIA. As

noted by Judge Scola:

> 3. In an order turning over blocked assets to a victim of FARC, Judge Paul C. Huck has previously held, "Petrocedeño S.A. is an agency or instrumentality of FARC." *Doe v. FARC*, Case No. 10-cv-21517 (USDC SDFL June 5, 2020) (Huck, J.). *The Court takes judicial notice of Judge Huck's order in that case, which determined that Petrocedeño S.A. is the owner of blocked assets, is an agency and instrumentality of FARC and that its assets are subject to execution under TRIA. As such, this Court determines that Petrocedeño S.A. is an agency or instrumentality of FARC and its blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. §2333*.
>
> 4. The assets that the Plaintiffs seek to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e).
>
> 5. The "blocked assets" are assets "of" and owned by Petrocedeño S.A. such that the ownership requirement has been met.

*See* Judge Scola Order, D.E. 367, *Stansell v. Revolutionary Armed Forces of

Columbia*, Case No. 19-cv-20896 (S.D. Fla. June 17, 2020) [emphasis added].

Caballero asks this Court to take judicial notice of the Judge Huck Order and

Judge Scola Orders.   Because both federal judges concluded that PdVSA's

subsidiary – Petrocedeño – is an agency or instrumentality of FARC, the same

---

[8] Attached hereto as **Composite Exhibit A-4**.

conclusion applies to the entity that controls it – i.e., PdVSA – and, indeed, this Court reached this very conclusion in its previous Order [D.E. 15]. Moreover, because PdVSA itself is an agent and instrumentality such a finding as well applies to all of the owned and/or controlled subsidiaries of PdVSA – in this instance: PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Vanfleet Asphalt Ltd.; Vanfleet Products Ltd; and Vanfleet Ltd. As such, Caballero respectfully requests that this Court determine the aforementioned subsidiaries to be agents and instrumentalities of the FARC.

### 4. Banco Central de Venezuela is an agent and instrumentality of the FARC

Mr. McBrien has opined that Banco Central de Venezuela is an agent and instrumentality of the FARC. *See* Supplemental Declaration, D.E. 10-4 at ¶ 30. As Mr. McBrien describes in his Supplemental Declaration, "[t]he Banco Central de Venezuela ('BCV') has…been designated a SDN by OFAC, and has been under the control of multiple OFAC designated individuals holding leadership position at the Bank, including [Simon Alejandro] Zerpa [Delgado][9] and William Antonio Contreras, both of whom OFAC stated "…are Directors of the bank and were

---

[9] Mr. McBrien has opined that Simon Alejandro Zerpa ("Zerpa") is an agent and instrumentality of the FARC. *See* Supplemental Declaration at D.E. 10-4, ¶ 25, 31. "Zerpa, is also the Minister of Economy and Finance (i.e. Ministerio de Poder Popular de Economia y Finanzas) serving as a member of Maduro's Cabinet." *Id*. at ¶ 31.

designated by OFAC pursuant to E.O. 13692...." *Id.* at ¶ 26 (citing Press Release, Dep't of Treasury, Treasury Sanctions Central Bank of Venezuela and Director of the Central Bank of Venezuela (April 17, 2019), available at https://home.treasury.gov/news/press-releases/sm661). Furthermore, the illicit gold mining program of Venezuela is carried out by BCV and the FARC, specifically the scheme works as follows:

> 1. Miners extract gold from the Arco Minero in eastern Venezuela under the supervision of the Colombian guerrilla groups ELN and FARC. The gold is then purchased by Venezuela's state-owned gold company, Minerven, through a joint gold venture with Turkey called Mibiturven S.A.
> 2. The gold is then turned over to CVG MINERVEN, the state-owned Venezuelan mining conglomerate that processes the gold and packages it for transport to Caracas.
> 3. Once processed, the gold is transported by the Venezuelan National Guard to the Central Bank of Venezuela (BCV), who prepares it for international shipment. The gold is moved from BCV to Maiquetia International Airport using the private security firm Transporte Panamericano and loaded onto one of several, private airliners, or a commercial Turkish Airlines flight, with weekly service to Istanbul via Havana...

*Id.* at ¶ 27 (citing Joseph M. Humire, Iran, Turkey, and Venezuela's Super Facilitator: Who is Alex Saab?, CENTER FOR A SECURE FREE SOCIETY (June 30, 2020), https://www.securefreesociety.org/research/who-is-alex-saab/ (last visited September 8, 2020) (emphasis added).

Moreover, the Supplemental Declaration details how the BCV's role is critical to the FARC and the Cartel of the Suns, specifically, "[b]y preparing the gold for international shipment, the BCV enables the sale of the illicit gold which perpetuates the symbiotic relationship between the Maduro regime and the FARC...." *Id.* at ¶ 28 (citing Diego Area, Domingo Sadurní, Douglas Farah, The Maduro Regime's Illicit Activities: A Threat to Democracy in Venezuela and Security in Latin America, Atlantic Council (August 13, 2020) https://www.atlanticcouncil.org/in-depth-research-reports/issue-brief/the-maduro-regimesillicit-activities-a-threat-to-democracy-in-venezuela-and-security-in-latin-america/ (last visited Sept. 8, 2020). Mr. McBrien also opines that the BCV's role is a "'hedge bet' or 'offset' to the narcotrafficking efforts of the FARC and the Cartel of the Suns." *Id.* at ¶ 29 (quoting Venezuela Investigative Unit, Venezuela Relies on Gold as Other Criminal Economies Dry Up, InSight Crime (June 1, 2020) https://www.insightcrime.org/news/analysis/venezueladepends-gold-industry/ (last visited Sept. 8, 2020) (emphasis in original and emphasis added).

Therefore, "[g]iven the critical role of the BCV in perpetuating the illicit gold program run by the Maduro regime and the FARC, including without limitation, by participating in the international shipment and sale of illicitly mined gold and by providing the "hedge" or "offset" against narco-trafficking losses incurred due to US anti-narcotics operations, the activities of the BCV have materially assisted in, and

provided financial or technological support for or to, or providing of goods or services in support of, the international narcotics trafficking activities of the FARC[,]" Mr. McBrien opines that BCV is an agent and instrumentality of the FARC. *Id.* at ¶ 30.

### 5. Ministerio del Poder Popular de Economia y Finanzas is an agent and instrumentality of the FARC

McBrien has opined that the Ministerio del Poder Popular de Economia y Finanzas, is an agent and instrumentality of the FARC. *See id.* at ¶ 31.   In his Supplemental Declaration, Mr. McBrien states that "[t]his purported governmental organ of the Maduro regime is under the direct control of Maduro through Zerpa. And Mr. McBrien explains how the Ministerio del Poder Popular de Economia y Finanzas, "serves to support the Maduro regime's grip on power which enables the Cartel of the Suns headed by Maduro to move FARC cocaine to the United States and other nations." *Id.* Mr. McBrien further explains that the Ministerio del Poder Popular de Economia y Finanzas is "intrinsically tied to Zerpa's role in perpetuating the illicit activities of the Cartel of the Suns and Maduro regime, and cannot be divorced from the control of Maduro and Zerpa – his designee to run that purported agency." *Id.* Given that the Ministerio del Poder Popular de Economia y Finanzas is "under the control of Maduro and Zerpa, this ministry materially assists and provides

financial and technical support for the international narcotics trafficking activities of

the FARC" and is therefore an agent and instrumentality of the FARC. *Id.*[10]

### ii.  The Claim Is Based on an Act of Terrorism

The ATA Final Judgment satisfies the second element of TRIA because it is

"for a claim based on an act of terrorism." *Weininger*, 462 F. Supp. 2d at 479. The

---

[10] Courts have addressed TRIA's preemption over the Foreign Sovereign Immunity
Act's immunity provisions:

> Courts that have addressed the interaction between the TRIA, the
> FSIA and other international immunity provisions have
> uniformly resolved statutory conflicts in favor of the TRIA *See,
> e.g., Smith ex rel. Estate of Smith v. Federal Reserve Bank of New
> York*, 346 F.3d 264 (2d Cir. 2003) ("[T]he 'notwithstanding'
> clause [of § 201(a)] applies only when some 'other provision of
> law' conflicts with the TRIA"); *United States v. All Funds on
> Deposit with R.J. O'Brien & Associates*, 892 F. Supp. 2d 1038,
> 2012 U.S. Dist. LEXIS 136648, 2012 WL 4464243 (N.D. Ill.
> Sept. 25, 2012) (TRIA § 201(a) overrides United States
> sovereign immunity in blocked assets seized by the United
> States); *Hill v. Republic of Iraq*, 2003 U.S. Dist. LEXIS 3725,
> 2003 WL 21057173 at *2 (D.D.C. March 11, 2003) ("[B]y its
> plain terms, the TRIA overrides any immunity from execution
> that blocked Iraqi property might otherwise enjoy under ... the
> FSIA."). The one court that has addressed the specific interaction
> of § 1611(b) and § 1610(g), on the one hand, and TRIA § 201(a)
> on the other hand, determined that any immunity granted by §
> 1611(b) has been overridden by the subsequently enacted TRIA
> § 201(a). *See Weininger v. Castro*, 462 F. Supp. 2d 457
> (S.D.N.Y. 2006) ("TRIA, which was enacted later in time than §
> 1611, overrides the immunity conferred in § 1611").

*Gates v. Syrian Arab Republic*, No. 11 C 8715, 2013 U.S. Dist. LEXIS 45327 at *21
(N.D. Ill. Mar. 29, 2013).

Southern District found that the Defendants' conduct constituted an act of international terrorism. *See* ATA Final Order, D.E. 10-2 at 7. That Court found that the Defendants' kidnapped Caballero's father, tortured him, and then killed him to "send a message to other potentially uncooperative landowners in the region that resistance to (or failure to comply with) Defendant's demand would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *See id.* (quoting Compl. at ¶ 5).

### iii.   The Accounts Are "Blocked Assets" of a Terrorist Party

To satisfy the third element of TRIA, the assets must be "blocked" assets within TRIA's meaning. See Weininger, 462 F. Supp. 2d at 479. This is the case here.

As a preliminary matter, OFAC administers various economic sanctions programs authorized by the IEEPA. See 50 U.S.C. §§ 1701–1706.[11] OFAC's power includes the authority to "designate" persons and entities to thus "block" that person or entity's assets. Only assets that are "blocked" are executable under TRIA. TRIA defines "blocked assets" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) [("TWEA")]

---

[11] In 2001, the President issued Executive Order 13224 ("E.O. 13224") under the IEEPA, authorizing the Secretary of Treasury to block certain assets and to promulgate related rules and regulations. The Secretary of Treasury delegated that authority to OFAC. *See* 31 C.F.R. § 594.802. E.O. 13224 also gives the Secretary of State blocking power.

23

or under sections 202 and 203 of the [IEEPA]." TRIA § 201(d)(2)(A).  Further, if

one or more blocked persons, either directly or indirectly, owns in the aggregate 50

percent or more of an entity, that entity is considered a blocked person. See U.S.

Dep't Treasury, Revised Guidance on Entities Owned by Persons Whose Property

and Interests in Property are Blocked, (Aug. 13, 2014).  Statutory authority for

execution under TRIA is also found under the Antiterrorism Act. See 18 U.S.C. §

2333(e) (2020).  If a terrorist party is designated as a Specially Designated Narcotics

Trafficking Kingpin ("SDNTK") under the Kingpin Act, assets of such Kingpin are

blocked assets also executable under TRIA. *See id.*

Importantly, the following entities are subsidiaries directly and/or indirectly

owned and/or controlled 50 percent or more PdVSA, which has itself been

designated by Executive Order 13850,[12] which derives its authority from the

IEEPA[13]: (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii)

---

[12] *See* 84 Fed. Reg. 509-510 (Jan. 30, 2019) (amending subsection (d) of section 6 of Executive Order 13850 to include PdVSA), available at https://www.govinfo.gov/content/pkg/FR-2019-01-30/pdf/2019-00615.pdf; OFAC SDN List, available at https://www.treasury.gov/ofac/downloads/sdnlist.txt (evidencing that PdVSA remains designated pursuant to Executive Order 13850).
[13] *See* Executive Order 13850, 83 Fed. Reg. 55243 (Nov. 2, 2018), available at https://www.govinfo.gov/content/pkg/FR-2018-11-02/pdf/2018-24254.pdf ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including ***the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA)…"*) (emphasis added); *see also* 84 Fed. Reg. 509-510 (Jan. 30, 2019) (same), available at https://www.govinfo.gov/content/pkg/FR-2019-01-30/pdf/2019-00615.pdf.

24

Petroanzoategui; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; and, (vi) Venfleet Ltd. Thus, the assets of these entities are "blocked assets" under TRIA and are executable. Indeed, Mr. McBrien has opined that the assets of PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd; and, Venfleet Ltd are all considered blocked assets. *See* Supplemental Sworn Declaration, D.E. 10-4 at ¶ 41-42.

Furthermore, Banco Central de Venezuela has been designated by Executive Order 13850.[14] And, the Supplemental Declaration details how the BCV's role is critical to the FARC and the Cartel of the Suns, for example, "[b]y preparing the gold for international shipment, the BCV enables the sale of the illicit gold which perpetuates the symbiotic relationship between the Maduro regime and the FARC...." Supplemental Declaration at ¶ 28. Thus, the assets of Banco Central de Venezuela are "blocked assets" under TRIA and are executable.

Moreover, the Ministerio del Poder Popular de Economia y Finanzas is controlled by FARC operatives Nicolas Maduro Moros and Zerpa – both of whom have been designated under the Venezuelan sanctions program, specifically

---

[14] *See* 84 Fed. Reg. 23162 (May 21, 2019) (designating Banco Central de Venezuela), available at https://www.govinfo.gov/content/pkg/FR-2019-05-21/pdf/2019-10490.pdf; *see also* OFAC SDN List, available at https://www.treasury.gov/ofac/downloads/sdnlist.txt (evidencing that Banco Central de Venezuela remains designated pursuant to Executive Order 13850).

Executive Order 13692[15] – which derives its authority from the IEEPA.[16]  And, as

previously discussed, Mr. McBrien explains that the Ministerio del Poder Popular

de Economia y Finanzas is "intrinsically tied to Zerpa's role in perpetuating the illicit

activities of the Cartel of the Suns and Maduro regime, and cannot be divorced from

the control of Maduro and Zerpa – his designee to run that purported agency."

Supplemental Declaration at ¶ 31.  Thus, the assets of Ministerio del Poder Popular

de Economia y Finanzas are "blocked assets" under TRIA and are executable.

Here, discovery has revealed that non-party, Citibank, N.A. is holding in this

Court's jurisdiction blocked assets in the putative names of, or for the benefit of, or

blocked due to an association with, PDV Marina SA; Aceites Y Solventes

Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd;

Venfleet Ltd; Banco Central de Venezuela; and Ministerio del Poder Popular de

---

[15] *See* 82 Fed. Reg. 37290 (Aug. 9, 2017) (designating Nicolas Maduros Moros pursuant to Executive Order 13692), available at https://www.govinfo.gov/content/pkg/FR-2017-08-09/pdf/2017-16419.pdf; *see also* 82 Fed. Reg. 35870-72 (Aug. 1, 2017) (designating Zerpa pursuant to Executive Order 13692), available at https://www.govinfo.gov/content/pkg/FR-2017-08-01/pdf/2017-16136.pdf; *see also* OFAC SDN List, available at https://www.treasury.gov/ofac/downloads/sdnlist.txt (evidencing that Nicolas Maduro Moros and Zerpa remain designated pursuant to the Venezuelan sanctions program).

[16] *See* Executive Order 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015), available at https://home.treasury.gov/system/files/126/13692.pdf ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including ***the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA)…")*** (emphasis added).

Economia y Finanzas. Because each is a blocked party or owned and controlled by a blocked party, the assets of each are deemed blocked and available to satisfy the compensatory damages portion of Caballero's ATA Final Judgment under TRIA and Section 2333(e) of the ATA.

### iv. Execution Helps Satisfy Mr. Caballero's Award for Compensatory Damages

The last element for execution under TRIA requires that "execution is sought only to the extent of any compensatory damages." *Weininger*, 462 F. Supp. 2d at 479. The ATA Final Judgment awarded Mr. Caballero $45 million in actual, compensatory non-economic damages, and $1,729,667.00 in actual compensatory economic damages. *See* ATA Final Judgment, D.E. 1 at 2. The ATA Final Judgment trebled the compensatory damages award pursuant to 18 U.S.C. § 2333, and further included post-judgment interest at the rate of 0.15% from May 20, 2020, the date of the ATA Final Judgment. *Id.* Because Caballero seeks, at this point, enforcement

only as to the outstanding[17] portion of the compensatory damages award (i.e.,

$37,960,280.54) plus interest,[18] this TRIA requirement is satisfied.

### D. New York Execution Statutes Govern Procedure

Federal Rule of Civil Procedure 69(a)(1) governs post-judgment TRIA

executions. *See Stansell*, 771 F.3d at 730 (holding that TRIA did not preempt Florida

collections statutes such that the plaintiff needed to follow the requirements of

Florida law applicable in that case).    Because TRIA does not preempt New York

law, New York law applicable to post judgment proceedings governs the procedural

steps necessary to execute on the ATA Final Judgment.

---

[17] Mr. Caballero has collected some funds from his earlier state court action and has subtracted that amount from his compensatory damages award in the federal ATA case in order to arrive at the total set forth herein. Indeed, Caballero has collected additional monies since this Court issued his previous Writ of Execution [D.E. 18-1]. As such, the dollar amount reflected in the proposed Writ of Execution attached hereto as **Exhibit B** (i.e., $37,960,280.54) is lower than the amount in the previously issued Writ of Execution (i.e., $41,734,153.93) [D.E. 18-1].

[18] Whether TRIA judgment creditors – such as Caballero – are permitted to collect their total *trebled* final judgments is currently on appeal before the Eleventh Circuit Court of Appeals (the "Eleventh Circuit") in *Caballero v. Stansell, et al.,* No. 20-13102 (11th Cir. 2020).  Given such pending appeal, Caballero reserves his right to attach the full outstanding balance of his trebled damages (plus interest), yet at this juncture, after attachment by the Writ of Garnishment, would only seek turnover only of the outstanding balance of his non-trebled base compensatory damages (i.e., $37,960,280.54)) plus interest pending the resolution of the appeal.  The Eleventh Circuit appeal will resolve whether Caballero is permitted to seek turnover of the outstanding balance of his trebled damages award plus interest, or only the outstanding non-trebled portion of his compensatory damages award  plus interest.

As Plaintiff's ATA Final Judgment is a money judgment, the procedural aspect of these collection proceedings is governed by Article 52 of the New York Civil Practice Law and Rules, applicable to the collection of money judgments. Pursuant to CPLR § 5230, an execution is the proper vehicle to attach personal property, deposit accounts and accounts receivable or general intangibles. The execution may be served on a third person pursuant to CPLR § 5232 ("The person served with the execution shall forthwith transfer all such property . . . to the sheriff or to the support collection unit and execute any document necessary to effect the transfer or payment.")

Undersigned counsel has attached hereto as **Exhibit B** the proposed Writ of Execution. Because Plaintiff Antonio Caballero has met the requirements set forth in TRIA, the ATA, and the CPLR, he respectfully requests that the Court grant him the relief set forth below.

**E. Conclusion**

PDV Marina SA; Aceites Y Solventes Venezolanos SA; Petroanzoategui; Venfleet Asphalt Ltd.; Venfleet Products Ltd; Venfleet Ltd; Banco Central de Venezuela; and Ministerio del Poder Popular de Economia y Finanzas are agents and instrumentalities of the FARC. The blocked assets of the aforementioned entities are "blocked assets" under TRIA.

29

**WHEREFORE** Plaintiff requests entry of an Order:

i.    Determining that: (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii) Petroanzoategui SA[19]; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd; (vii) Banco Central de Venezuela (a.k.a Central Bank of Venezuela); and (viii) Ministerio del Poder Popular de Economia y Finanzas[20] are agents and instrumentalities of the FARC;

ii.    Determining that the assets of: (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii) Petroanzoategui SA; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd; (vii) Banco Central de Venezuela (a.k.a Central Bank of Venezuela); and (viii) Ministerio del Poder Popular de Economia y Finanzas are blocked assets and are executable under TRIA towards satisfaction of the ATA Final Judgment;

---

[19] "Petroanzoategui SA" is also referred to as "Petro San Felix SA." *See* Supplemental Sworn Declaration of John Robert McBrien Regarding Agents and Instrumentalities of the FARC executed on September 8, 2020 (the "Supplemental Declaration"). Moreover, Citibank, N.A. has in its production referred to "Petro San Felix SA" as "AKA - Petrolera Zuata SA; Petrozuata."

[20] Citibank, N.A. has referred to the above entity as the "Minesterio del Poder Popular de Eco" for short, and further translates the "Minesterio del Poder Popular de Eco" to the "Venezuela Ministry Of Finance."

iii.   Authorizing the issuance of the Writ of Execution in the form attached hereto as **Exhibit B** to attach any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to their association with: (i) PDV Marina SA; (ii) Aceites Y Solventes Venezolanos SA; (iii) Petroanzoategui SA; (iv) Venfleet Asphalt Ltd.; (v) Venfleet Products Ltd; (vi) Venfleet Ltd; (vii) Banco Central de Venezuela (a.k.a Central Bank of Venezuela); and (viii) Ministerio del Poder Popular de Economia y Finanzas; and

iv.   Maintaining this Motion, any Order granting the Motion, and the Writ of Execution under seal until such Writ is served on the Garnishee.

**DATED this 6th day of January 2021.**

Respectfully Submitted

ZUMPANO PATRICIOS, P.A.

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano
Florida Bar Number: 0056091
*Appearing Pro Hac Vice*
E-mail address: jzumpano@zplaw.com
Leon N. Patricios
Florida Bar Number: 0012777
*Appearing Pro Hac Vice*
E-mail address: lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565

31

ZUMPANO PATRICIOS & POPOK, PLLC
Mitchell G. Mandell
Senior Partner
417 Fifth Avenue, Suite 826
New York, New York 10016
Tel: (212) 542-8125
Fax: (646) 665-4685
mmandell@zplaw.com

*Attorneys for Plaintiff Antonio Caballero*

# COMPOSITE

# EXHIBIT A

# COMPOSITE

# EXHIBIT A-1

ELECTRONICALLY FILED - 2020 Nov 23 10:55 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4003495

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | ) FOR THE FIFTH JUDICIAL CIRCUIT |
| | ) |
| ANTONIO CABALLERO, | ) Case No.: 2020CP4003495 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FUERZAS ARMADAS | ) |
| REVOLUCIONARIAS DE COLOMBIA | ) |
| a/k/a FARC-EP a/k/a REVOLUTIONARY | ) |
| ARMED FORCES OF COLOMBIA; and | ) |
| THE NORTE DE VALLE CARTEL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AMENDED ORDER ON PLAINTIFF'S
## MOTION FOR AGENT OR INSTRUMENTALITY DETERMINATION AND
## ISSUANCE OF WRITS OF GARNISHMENT AND INCORPORATED
## MEMORANDUM OF LAW

THIS CAUSE came before the Court upon Plaintiff, Antonio Caballero's ("Caballero")

Motion for Agent or Instrumentality Determination and Issuance of Writs of Garnishment and

Incorporated Memorandum of Law (the "Motion"). Upon due and careful consideration of (i) the

Anti-Terrorism Act ("ATA"), 18 U.S.C. §2333(e); (ii) section 201(a) of the Terrorism Risk

Insurance Act ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. §

1610 note); (iii) Uniform Enforcement of Judgments Act ("UEFJA"), S.C. Code Ann. § 15-35-

920; and (iv) *Stansell v. FARC*, 771 F.3d 713, 729-30 (11th Cir. 2014) ("factors weigh in favor of

immediate attachment"),

**IT IS ORDERED** as follows:

1.      This Court has subject matter jurisdiction to conduct post-judgment execution

proceedings of a plaintiff's final judgment under a federal statute (ATA), rendered by a U.S.

ELECTRONICALLY FILED - 2020 Nov 23 10:55 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4003495

district court and properly registered in this district pursuant to South Carolina Code of Laws Section 15-35-920 of the Uniform Enforcement of Foreign Judgments Act.

2.      The Court grants Plaintiff Antonio Caballero's Motion.

3.      The Court finds that each individual and entity listed below (i.e. the individuals and entities set forth on Exhibit 1 to Caballero's Motion) are agents and instrumentalities of the FARC:

a.    Petroleos de Venezuela, S.A. (a/k/a PDVSA; a/k/a PETROLEOS DE VENEZUELA S A; a/k/a PETROLEOS DE VENEZUELA S.A; a/k/a REFINERIA EL PALITO) ("PdVSA")

b.    PDV Marina SA

c.    Aceites Y Solventes Venezolanos SA

d.    Petro San Felix SA a/k/a Petranzoategui SA

e.    Venfleet Asphalt Ltd.

f.    Venfleet Products Ltd.

g.    Venfleet Ltd.

h.    Alba de Nicaragua, S.A.

i.    Alba Petroleos de El Salvador S.E.M. de C.V.

j.    Joaquin Leal Jimenez

k.    Veronica Esparza Garcia

l.    Olga Maria Zepeda Esparza

m.    Libre Abordo, S.A. de C.V.

n.    Schlager Business Group S. de R.L. de C.V.

o.    Alel Technologies LLC

p.    Luzy Technologies LLC

q.    Cosmo Resources Pte. Ltd.

r.    Washington Trading Ltd

s.    Rosneft Trading S.A.

t.    TNK Trading International S.A.

u.    Kaibab International Corp.

v.    Banco de Desarrollo Economico y Social de Venezuela (a/k/a Banco Bandes; a/k/a Bandes; f/k/a Fondo de Inversiones de Venezuela)

w.    Banco Bandes Uruguay S.A. (a/k/a Bandes Uruguay)

x.    Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunias, Banco Universal C.A. (f/k/a Banco Bicentenario Banco Universal C.A.; a/k/a Banco Bicentenario del Pueblo; a/k/a Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal CA)

ELECTRONICALLY FILED - 2020 Nov 23 10:55 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4003495

y.   Banco de Venezuela SA Banco Universal (a/k/a Banco de Venezuela; a/k/a Banco de Venezuela SA, Banco Universal; f/k/a Banco de Venezuela, S.A.; a/k/a Banco de Venezuela, S.A.C.A.)

z.   Banco Prodem S.A. (f/k/a Fondo Financiero Privado Prodem S.A.)

4.       The Court finds that the assets of each individual and entity listed above in paragraph 3.a.-z. (i.e. the individuals and entities set forth on Exhibit 1 to Caballero's Motion) are blocked assets and are executable under TRIA towards satisfaction of the ATA Final Judgment.

5.       The Court concludes that Caballero, has adequately established that (1) he has obtained an ATA Final Judgment against a terrorist party (the FARC) that is based on an act of international terrorism, (2) the assets which Caballero seeks to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e), (3) the total amount of the executions do not exceed the compensatory damages amount with regard to Caballero's ATA Final Judgment, and (4) the putative owners of the subject blocked assets are each an agent and instrumentality of the FARC.

6.       The Clerk of the Court is authorized and directed to issue such writs in aid of garnishment to attach to any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to their association with, any individual or entity listed above in paragraph 3.a.-z. (i.e. the individuals and entities set forth on Exhibit 1 to Caballero's Motion).

**AND IT IS SO ORDERED** this __ day of November 2020, in Richland County, South Carolina.

*Electronic signature page to follow*

ELECTRONICALLY FILED - 2020 Nov 23 10:55 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4003495



Richland Common Pleas

**Case Caption:**   Antonio  Caballero vs   Fuerzas Armadas Revolucionarias De
Colombia , defendant, et al

**Case Number:**   2020CP4003495

**Type:**   Order/Other

IT IS SO ORDERED!

s/ Alison Renee Lee, Chief Administrative Judge
for 2020

Electronically signed on 2020-11-23 10:35:28    page 4 of 4

# COMPOSITE

# EXHIBIT A-2

Received and E-Filed for Record
12/1/2020 11:01 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Tony Beltran

**CAUSE NO. 20-09-11744**

| | | |
|---|---|---|
| ANTONIO CABALLERO, | § | IN THE DISTRICT COURT OF |
| | § | |
| JUDGMENT CREDITOR, | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| FUERZAS ARMADAS | § | MONTGOMERY COUNTY, TEXAS |
| REVOLUCIONARIAS DE COLOMBIA | § | |
| a/k/a FARC-EP a/k/a | § | |
| REVOLUTIONARY ARMED FORCES | § | |
| OF COLOMBIA; and THE NORTE DE | § | |
| VALLE CARTEL, | § | |
| | § | |
| JUDGMENT DEBTORS. | § | |
| | § | |
| | § | |
| | § | 284TH JUDICIAL DISTRICT |

**ORDER ON JUDGMENT CREDITOR'S
MOTION FOR AGENCY OR INSTRUMENTALITY DETERMINATION PURSUANT
TO SECTION 201(a) OF THE TERRORISM RISK INSURANCE ACT OF 2002**

THIS CAUSE came before the Court upon Judgment Creditor, Antonio Caballero's ("Caballero") Motion for Agency or Instrumentality Determination Pursuant to Section 201(a) of the Terrorism Rick Insurance Act of 2002 (the "Motion"). Upon due and careful consideration of the (i) the Anti-Terrorism Act, 18 U.S.C. § 2333(e); (ii) Section 201(a) of the Terrorism Risk Insurance Act of 2002 (hereinafter "TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note); (iii) Rules 657-679 of the Texas Rules of Civil Procedure and Tex. Civ. Prac. & Rem. Code Ann. §§ 63.001, et seq.; (iv) *Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 729-730 (11th Cir. 2014) (concluding that in actions to enforce judgments against terrorists "factors weigh in favor of immediate attachment"); and (v) Exhibits 1

through 13 attached to the Motion,

**IT IS ORDERED** as follows:

1.    This Court has subject matter jurisdiction to conduct post-judgment execution proceedings of a judgment creditor's final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this Court.

2.    The Court grants Judgment Creditor, Antonio Caballero's Motion for Agency or Instrumentality Determination Pursuant to Section 201(a) of the Terrorism Rick Insurance Act of 2002 as to Petroleos de Venezuela, S.A. (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA [        ] S.A; a.k.a. REFINERIA EL PALITO) and Rosneft Trading S.A. and denies it as to Kaibab International Corporation ("Kaibab") because of insufficient evidence to find that Kaibab is an agent and/or instrumentality of Fuerzas Armadas Revolucionarias de Columbia.

3.    The Court finds that Petroleos de Venezuela, S.A. (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA S.A; a.k.a. REFINERIA EL PALITO) and Rosneft Trading S.A. ██████████████ are agents and instrumentalities of Fuerzas Armadas Revolucionarias de Colombia (the "FARC").

4.    The Court finds that the assets of Petroleos de Venezuela, S.A. (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA S.A; a.k.a. REFINERIA EL PALITO) and Rosneft Trading S.A. ██████████████ are blocked assets and are executable under TRIA towards satisfaction of Caballero's ATA Final Judgment.

5.    The Court concludes that Caballero, has adequately established that (i) he has obtained an ATA Final Judgment against a terrorist party (i.e., the FARC) that is based on an act of international terrorism, (ii) the assets which Caballero seeks to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e), (iii) the total amount of the executions do not exceed the compensatory damages amount with regard to Caballero's ATA Final Judgment, and (iv) the putative owners of the subject blocked assets are each an agent and instrumentality of the FARC.

2

6.      The Court finds that Caballero is authorized to seek writs of garnishment against garnishees to attach any assets within this Court's jurisdiction in the putative name of, held for the benefit of, or that were blocked due to an association with, Petroleos de Venezuela, S.A. (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA S.A; a.k.a. REFINERIA EL PALITO) and/or Rosneft Trading S.A. ▮▮▮▮▮▮▮▮▮▮▮▮

7.      The Clerk of the Court is authorized and directed to issue such writs in aid of garnishment to attach to any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to an association with, Petroleos de Venezuela, S.A. (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA S.A; a.k.a. REFINERIA EL PALITO) and/or Rosneft Trading S.A. ▮▮▮▮▮▮▮▮▮▮▮▮

**AND IT IS SO ORDERED** this 16th day of December 2020, in Montgomery County, Texas.

12/16/2020 11:11:17 AM

_____
**HONORABLE JUDGE KRISTIN BAYS**

3

# COMPOSITE

# EXHIBIT A-3

United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Keith Stansell, and others,<br>Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 19-20896-Civ-Scola |
| | ) | |
| Revolutionary Armed Forces of<br>Columbia, Defendant. | ) | |
| | ) | |

## Order Granting Ex Parte Motion for Issuance of Writs of Garnishment

Now before the Court is the Plaintiff's ex parte expedited motion for issuance of writs of garnishment against Petrocedeño S.A. pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA"). Upon consideration of the Plaintiffs' motion and the relevant authorities, the Court **grants** the ex parte motion (**ECF No. 360**), and orders as follows:

1. This Court has subject matter jurisdiction to conduct post-judgment execution proceedings of plaintiffs' final judgment under a federal statute (ATA), rendered by a United States district court and properly registered in this district pursuant to 28 U.S.C. § 1963, with postjudgment execution under the ATA and TRIA § 201.

2. The Plaintiffs have adequately established that they have obtained an Anti-Terrorism Act ("ATA") judgment against the Revolutionary Armed Forces of Colombia ("FARC") that is based on an act of international terrorism. *See Stansell v. FARC*, Case No. 8:09-cv-2308 (M.D. Fla. June 15, 2020). The judgment was duly registered in this district on July 28, 2010.

3. In an order turning over blocked assets to a victim of the FARC, Judge Paul C. Huck has previously held, "Petrocedeño S.A. is an agency or instrumentality of the FARC." *Doe v. FARC*, Case No. 10-cv-21517 (S.D. Fla. June 5, 2020) (Huck, J.). The Court takes judicial notice of Judge Huck's order in that case, which determined that Petrocedeño S.A. is the owner of blocked assets, is an agency and instrumentality of the FARC and that its assets are subject to execution under TRIA. As such, this Court determines that Petrocedeño S.A. is an agency or instrumentality of the FARC and its blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. § 2333.

4. The assets that the Plaintiffs seek to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. § 2333(e).

5. The "blocked assets" are assets "of" and owned by Petrocedeño S.A. such that the ownership requirement has been met.

6. The total amount of the executions does not exceed the amount outstanding of the Plaintiffs' ATA judgment.

7. The **Clerk** is **directed** to issue Writs of Garnishment against the blocked assets of Petrocedeño S.A. in the form attached as ECF No. 360-7 (SSM Petcoke LLC); ECF No. 360-8 (H.J. Baker & Bro., LLC); ECF No. 360-9 (Oxbow Carbon LLC); ECF No. 10 (Oxbow Energy Solutions LLC).

8. The Clerk of this Court is authorized and directed to issue such further writs in aid of execution as warranted under, and in accordance with, Rule 69 of the Federal Rules of Civil Procedure and consistent with the Court's order.

9. The Plaintiffs are ordered to notify the Court immediately once they have attached all assets that are subject to this order. Upon the earlier of the filing of that notice or thirty days from the date of this order, whichever occurs first, the Clerk of Court is directed to unseal the sealed filings in this case, including the Plaintiff's motion (ECF No. 360) and this order.

**Done and ordered** in chambers, at Miami, Florida, on June 16, 2020.

Robert N. Scola, Jr.
United States District Judge

# COMPOSITE

# EXHIBIT A-4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-21517-CIV-HUCK/OTAZO-REYES

JOHN DOE,

       Plaintiff,

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

       Defendants,

v.  SSM Petcoke, LLC

       Garnishee.

_____/

## ORDER ADOPTING REPORTS AND RECOMMENDATIONS AND GRANTING SEALED MOTION FOR RELEASE OF FUNDS HELD BY GARNISHEE, SSM PETCOKE, LLC

THIS CAUSE comes to be heard upon the Sealed Motion for Relief of Funds

Held by Garnishee, SSM Petcoke, LLC (D.E. 258) (the "Motion"), filed October 1, 2019,

seeking the turnover of blocked funds pursuant to the Terrorism Risk Insurance Act of

2002 ("TRIA"), §201(a), 28 U.S.C. § 1610 note.

On October 2, 2019, the Court referred the Motion to the Honorable Magistrate

Alicia Otazo-Reyes, United States Magistrate Judge (D.E. 261).  On October 23, 2019,

Magistrate Judge Otazo-Reyes issued a Sealed Report and Recommendation (D.E. 264)

recommending that the Motion be granted.

On November 25, 2019, the United States filed a Sealed Statement of Interest of

the United States (D.E. 272) (the "Statement of Interest") in which it argued that

additional findings of ownership were required.  On January 24, 2020, the Court referred the Statement of Interest to Magistrate Judge Otazo-Reyes (D.E. 276).  On January 29, 2020, Magistrate Judge Otazo-Reyes issued a Sealed Second Supplement to Sealed Report and Recommendation [D.E. 264] making supplemental findings and granting thirty days for filing objections. (D.E. 277).  No objections by the United States, or anyone else, were filed.

Separately, on October 28, 2019, Magistrate Judge Otazo-Reyes issued a Sealed Supplement and Amendment to Sealed Report and Recommendation [D.E. 264] (D.E. 265) requiring service according to Rule 4 of the Federal Rules of Civil Procedure, and again required such formal service of her second supplement.  *See* D.E. 277.

Plaintiff timely filed limited objections to the requirements of Rule 4 service contained in the two supplements.  *See* D.E. 271 and D.E. 279.  On May 1, 2020, the Court issued a Sealed Order Sustaining Plaintiff's Limited Objections to the Sealed Supplements to Sealed Report and Recommendation (D.E. 282), approving Plaintiff's prior service, and ordering continuing appropriate service thereof.  On May 6, 2020, Plaintiff filed a Sealed Certificate of Service (D.E. 283).  All times for filing objections to the Reports and Recommendations (D.E. 264 and D.E. 277) have passed.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Sealed Report and Recommendation (D.E. 264) and the Sealed Second Supplement to the Sealed Report and Recommendation (D.E. 277) are **ADOPTED**.  The Sealed Motion for Relief of Funds Held by Garnishee, SSM Petcoke, LLC (D.E. 258) is **GRANTED**.  This Court adopts the findings of the Reports and Recommendations that:

1)      This Court has subject matter jurisdiction to administer post-judgment

proceedings pursuant to TRIA § 201;

2)      The Court concludes that Plaintiffs, through their extensive submissions, have adequately established that:

(a) they have obtained judgment against terrorist parties (the FARC and ELN);

(b) the judgment is based on an act of terrorism;

(c) the assets which Plaintiffs seek to execute on are "blocked assets" as that term is defined under TRIA;

(d) the "blocked assets" are assets "of" Petrocedeño, S.A., such that TRIA's ownership requirement has been met;

(e) the total amount of the execution does not exceed the amount outstanding of the compensatory portion of judgment; and

(f) Petrocedeño SA is an agency or instrumentality of the FARC and/or ELN.  Thus, its blocked assets are subject to attachment and execution pursuant to the TRIA.

3) The Court further finds that Plaintiff has served a writ of garnishment and satisfied all notice requirements pursuant to Florida law, as well as the requirements of due process required by the U.S. Constitution; and

4)  Defendants and Petrocedeño SA have failed to timely move to dissolve the writ of garnishment and are in default.

5)  The Court hereby directs SSM Petcoke LLC to surrender to Plaintiff's counsel funds equivalent to the outstanding balance of the compensatory portion of Plaintiff's judgment, which is $16,420,606.83[1], less agreed attorneys' fees of $28,043.38 within seven (7) business days from the date of the order.

---

[1]      This amount represents the outstanding balance of the compensatory judgment, including statutory post-judgment interest as noted in the Sealed Report and Recommendation.

6)  The Court directs the clerk to release to SSM Petcoke, LLC the garnishment fee of

$100.

7)  Upon completion of the requirements herein, SSM Petcoke, LLC will be released

from any liability to Petrocedeño, SA (or anyone else with claimed ownership rights

to the blocked funds) for the amount of the funds surrendered to Plaintiff, and

discharged from this garnishment action for compliance with the Order of the Court.

8) The Court hereby orders the Clerk to **UNSEAL** this matter (D.E. 237-285).


**DONE and ORDERED** in Miami, Florida on June 5, 2020.


Honorable Paul C. Huck
United States District Judge


Copies furnished to:
All Counsel of Record

4

# EXHIBIT B

## WRIT OF EXECUTION

| United States District Court | DISTRICT<br>**Western District of New York** |
|---|---|

TO THE MARSHALL OF:

The Western District of New York

YOU ARE HEREBY COMMANDED, that of the goods and chattels, lands and tenements in your district belonging to:

NAME:

FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, a/k/a FARC-EP a/k/a
REVOLUTIONARY ARMED FORCES OF COLOMBIA (the "FARC"), and any agent or
instrumentality thereof, including blocked assets of the entities in Exhibit 1 attached hereto.

you cause to be made and levied as well as a certain debt of:

| DOLLAR AMOUNT | DOLLAR AMOUNT |
|---|---|
| $37,960,280.54 | |

in the United States District Court for the Western District of New York before the Judge of the said Court by
the consideration of the same Judge lately recovered against the said,

FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA

and also the costs that may accrue under this writ.
    And that you have above listed money at the place and date listed below; and that you bring this writ with you.

| PLACE<br>2 Niagara Square, US Courthouse | DISTRICT<br>Western District of New York |
|---|---|
| CITY<br>Buffalo, NY | DATE |

Witness the Honorable

_____
*(United States Judge)*

| DATE | CLERK OF THE COURT |
|---|---|
| | (BY) |

### RETURN

| DATE RECEIVED | DATE OF EXECUTION OF WRIT |
|---|---|

This writ was received and executed.

| U.S. MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|

# **Exhibit 1**

- PDV MARINA SA, a subsidiary directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO
  - o Account ID#: ############4332
- BANCO CENTRAL DE VENEZUELA (a.k.a. CENTRAL BANK OF VENEZUELA)
  - o Account ID#: ############4751
  - o Account ID#: ############4752
- ACEITES Y SOLVENTES VENEZOLANOS SA, a subsidiary directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO
  - o Account ID#: ############4329
- PETROANZOATEGUI SA; PETRO SAN FELIX SA, AKA - PETROLERA ZUATA SA; PETROZUATA, a subsidiary(ies) directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO
  - o Account ID#: ############4346
- VENFLEET ASPHALT LTD., a subsidiary directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO
  - o Account ID#: ############4333
- VENFLEET PRODUCTS LTD, a subsidiary directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO
  - o Account ID#: ############4335
- VENFLEET LTD, a subsidiary directly and/or indirectly owned 50 percent or more by PETROLEOS DE VENEZUELA S.A (a.k.a. PDVSA; a.k.a. PETROLEOS DE VENEZUELA S A; a.k.a. PETROLEOS DE VENEZUELA, S.A.; a.k.a. REFINERIA EL PALITO,
  - o Account ID#: ############4336
- MINISTERIO DEL PODER POPULAR DE ECONOMIA Y FINANZAS ("Minesterio del Poder Popular de Eco"),
  - o Account ID#: ############5401
  - o Account ID#: ############5403