UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTONIO CABALLERO,

        Plaintiff,

    v.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLUMBIA*, et
al.*,

        Defendants.

20-MC-40-LJV
DECISION & ORDER

---

## INTRODUCTION

Motions to substitute counsel usually are simple matters.  One lawyer wants out; one lawyer wants in; the court orders what they want.  Not so here.

Two sets of lawyers claim to represent a single party.  The party is owned by the Bolivarian Republic of Venezuela ("Venezuela").  Just as there are dueling leaders claiming to be the legitimate President of Venezuela, so there are dueling entities appointed by those leaders claiming to run the party.  Each entity has retained different lawyers to represent the party in this Court.  And this Court therefore is tasked with deciding which set of lawyers gets to do that.

## PROCEDURAL HISTORY

The plaintiff, Antonio Caballero, is a judgment creditor of the Fuerzas Armadas Revolucionarias de Columbia ("FARC").  To satisfy his judgment against FARC, Caballero moved *ex parte* under section 201(a) of the Terrorism Risk Insurance Act of

2002 ("TRIA") for post-judgment execution on the blocked assets of alleged agencies or instrumentalities of FARC.[1]  *See* Docket Items 10, 22.  In connection with that request, Caballero sought a determination that Petróleos de Venezuela, S.A ("PDVSA"), Docket Item 10, and six of PDVSA's subsidiaries—(1) PDV Marina SA; (2) Aceites Y Solventes Venezolanos SA; (3) Petroanzoategui SA; (4) Venfleet Asphalt Ltd.; (5) Venfleet Products Ltd.; (6) Venfleet Ltd. (together, "the subsidiaries"), Docket Item 22—are agencies or instrumentalities of FARC.

This Court determined that PDVSA and the subsidiaries are agencies or instrumentalities of FARC and, because Caballero satisfied the other TRIA requirements, granted Caballero's motions for post-judgment execution.  Docket Items 15, 33.  On January 29, 2021, this Court entered a turnover judgment against the blocked assets of PDVSA.  Docket Item 35.

Meanwhile, PDVSA and the subsidiaries—through PDVSA's general counsel in Caracas, Venezuela—retained attorneys Terrance P. Flynn and Marcos Daniel Jiménez ("Flynn and Jiménez") to represent their interests in this action.  Represented by Flynn and Jiménez, PDVSA and the subsidiaries intervened to challenge the Court's agency-or-instrumentality determination as well as the validity of the turnover judgment.[2]  *See* Docket Items 37, 39.

---

[1] TRIA is a means through which terrorism victims can satisfy judgments for damages against terrorist defendants.  Under TRIA, a terrorism victim who meets certain requirements can satisfy her judgment against a terrorist party by attaching and executing upon the "blocked assets of . . . any agency or instrumentality of that terrorist party."  Terrorism Risk Insurance Act § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. § 1610 note).

[2] On February 2, 2021, this Court stayed the turnover judgment pending resolution of the agency-or-instrumentality determination.  Docket Item 39.  On March 29, 2021, Flynn and Jiménez moved for an extension of time to brief the agency-or-

On March 26, 2021, White & Case LLP ("White & Case")—on behalf of the Ad Hoc Board of Directors of PDVSA ("Ad Hoc Board" or the "Board")—moved to substitute counsel and for a stay of the proceedings.[3]  Docket Item 58.  On April 9, 2021, Flynn and Jiménez responded, Docket Item 65; on the same date, Caballero responded, Docket Item 66; and on April 16, 2021, White & Case replied, Docket Items 67, 68.  On April 28, 2021, the Court heard oral argument and gave the parties time to file additional materials that they wished the Court to consider in deciding the motion.  Docket Item 73. Two days later, Caballero, Docket Item 75; Flynn and Jiménez, Docket Item 77; and White & Case, Docket Item 76, filed supplemental briefing.

For the following reasons, the motion to substitute counsel is granted, but the motion for a stay is denied.

## FACTUAL BACKGROUND

PDVSA is the national oil company of Venezuela, and the subsidiaries are wholly-owned subsidiaries of PDVSA.  Docket Item 58-2 at 1.

In May 2018, Venezuela held presidential elections.  Then-president Nicolás Maduro claimed victory, but the National Assembly of Venezuela ("National Assembly") declared Maduro's presidency illegitimate and declared Juan Guaidó the Interim President of Venezuela.  Docket Item 58-2 at 3.  The United States immediately

---

instrumentality issue and for a stay pending resolution of the motion to substitute. Docket Item 60.  On March 30, 2021, this Court granted the limited motion for a stay. Docket Item 61.  Because this Court now grants the motion to substitute, that stay is lifted, and the motion for an extension of time is denied as moot.

[3] On April 26, 2021, White & Case asked this Court to waive its local counsel requirement.  Docket Item 71.  That motion is granted.

recognized Guaidó and the National Assembly (together, the "Interim Government") as the legitimate government of Venezuela.  *See* Docket Item 58-4 (Statement of President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019)).  The current administration has reaffirmed that decision.  *See* Press Briefing, Background Press Call by Senior Administration Officials on Venezuela, The White House (March 8, 2021), https://www.whitehouse.gov/briefing-room/press-briefings/2021/03/08/background-press-call-by-senior-administration-officials-on-venezuela/.

Maduro, however, continued to exert significant control over PDVSA.  *See* Docket Item 66 at 10 n.4.  On January 25, 2019, concerned with Maduro's "continued attempts to undermine the Interim [Government] of Venezuela[,] . . . the only legitimate branch of government duly elected by the Venezuelan people," the United States extended sanctions on members of the Maduro regime.  *See* Exec. Order 13857, 84 F.R. 509 (2019).  On January 28, 2019, the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") designated PDVSA a Specially Designated National and blocked all PDVSA assets subject to United States jurisdiction.  *See* Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A., U.S. Dep't of the Treasury (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.[4]

---

[4] On January 31, 2019, OFAC published a response to the frequently asked question, "[w]hen will sanctions be lifted on [PDVSA] or any entity in which [PDVSA] owns, directly or indirectly, a 50 percent or greater interest?"  The answer stated:

> The path to sanctions relief for [PDVSA] and its subsidiaries is through the expeditious transfer of control of the company to Interim President Juan Guaidó or a subsequent, democratically elected government that is committed to taking concrete and meaningful actions to combat corruption,

On February 5, 2019, "the National Assembly enacted the Statute Governing the Transition to Democracy to Reestablish the Validity of the Constitution of the Bolivarian Republic of Venezuela" (the "Transition Statute").  Docket Item 58-2 at 3.  Article 15.a. of the Transition Statute empowered Guaidó "to appoint ad hoc administrative boards of directors to assume the management and administration of state-owned companies," including PDVSA.  *Id.* at 3-4.

On February 8, 2019, pursuant to Article 15.a., "the Interim Government appointed the Ad Hoc Board to govern PDVSA."  *Id.* at 4.  "[T]he National Assembly approved this action by resolution."  *Jiménez v. Palacios*, 2019 WL 3526479, at *6 (Del. Ch. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020); *see also Impact Fluid Solutions LP aka Impact Fluid Solutions LLC v. Bariven SA*, *et al.*, Case No. 4:19-cv-00652, Docket Item 52-1 (S.D. Tex. May 4, 2020) (Resolution Authorizing the President in Charge of the Republic, Juan Gerardo Guaido Marquez, to Extend the Powers Granted and to Increase the Number of Members of the Ad-Hoc Management Board of Petroleos de Venezuela, S.A. (PDVSA), National Assembly of the Bolivarian Republic of Venezuela). The resolution gave the Ad Hoc Board the power to "exercise the legal representation of [PDVSA] and its subsidiaries."  *Bariven*, Case No. 4:19-cv-00652, Docket Item 52-1 at

---

restore democracy, and respect human rights. A bona fide transfer of control will ensure that the assets of Venezuela are preserved for the country's people, rather than misused and diverted by former President Nicolas Maduro.  Treasury will continue to use its economic tools to support Interim President Guaidó, the National Assembly, and the Venezuelan people's efforts to restore their democracy.

Docket Item 58-10 (OFAC FAQs No. 660 (Jan. 31, 2019), https://home.treasury.gov/policy-issues/financial-sanctions/faqs/660).

4.  It also barred Maduro appointees from exercising power over PDVSA and its affiliates.  *Id.* at 5.

Venezuela's highest constitutional court, the Supreme Tribunal of Justice, Constitutional Court, found the Transition Statute unconstitutional and declared Guaidó's appointment of the Ad Hoc Board unlawful and a nullity.  Docket Item 65 at 8 n.1; Docket Item 65-1.[5]

As for this case, Flynn and Jiménez were retained to represent PDVSA by its general counsel, part of the Maduro regime.[6]  Docket Item 77 at 2.  White & Case was retained to represent PDVSA by the Ad Hoc Board, appointed by Guaidó.  Docket Item 58-3.  Both claim to be the legitimate attorneys for PDVSA and the subsidiaries, and both ask this Court to recognize them as such.  Docket Items 58, 65.

---

[5] As explained more thoroughly below, despite this, "[t]he act of state doctrine requires that this [C]ourt assume the official act of the Guaidó government as valid, precluding this [C]ourt from giving deference to the Constitutional Court's ruling purporting to invalidate the Guaidó government's appointments to the PDVSA board."  *See Jiménez*, 2019 WL 3526479, at *15 n.101.  This is so because

the recognition of one sovereign government must be construed to exclude other bodies, including legal tribunals, from purporting to wield authority on behalf of a different government.   Underscoring this point, the U.S. Executive Branch has taken the extraordinary step of declaring the Constitutional Court of Venezuela to be illegitimate and sanctioning the members of that tribunal.

*Id.* (citing Press Release, U.S. Dep't of the Treasury, Treasury Sanctions Eight Members of Venezuela's Supreme Court of Justice (May 18, 2017), https://www.treasury.gov/press-center/press-releases/Pages/sm0090.aspx).

[6] Although Flynn and Jiménez have not explicitly linked PDVSA's general counsel to Maduro, the connection is self-evident.  The Maduro and Guaidó regimes are the only two entities competing to govern PDVSA and indeed Venezuela itself. Because Flynn and Jiménez were retained by PDVSA counsel unconnected to Guaidó or the Ad Hoc Board, the Court is left with the inevitable conclusion that counsel was appointed by or is otherwise associated with Maduro.

**LEGAL PRINCIPLES**

I.      **POLITICAL QUESTION DOCTRINE**

"The political question doctrine calls for a careful and delicate analysis into

whether a 'matter has been committed by the Constitution to another branch of

government or whether the action of that branch exceeds whatever authority has been

committed.'"  *In re MTBE Prod. Liab. Litig.*, 438 F. Supp. 2d 291, 295 (S.D.N.Y. 2006)

(quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).  "Political questions are those that 'lie

beyond the competence and proper institutional role of the federal courts.'"  *D'Amico v.*

*Waste Management of New York, LLC*, 2019 WL 1332575, at *16 (W.D.N.Y. Mar. 25,

2019) (citing *Belgrade v. Sidex Int'l Furniture Corp.*, 2 F. Supp. 2d 407, 415 (S.D.N.Y.

1998)).  A political question arises when there is:

> [1] a textually demonstrable constitutional commitment of the issue to a
> coordinate political department; [2] a lack of judicially discoverable and
> manageable standards for resolving it; [3] the impossibility of deciding
> without an initial policy determination of a kind clearly for nonjudicial
> discretion; [4] the impossibility of a court's undertaking independent
> resolution without expressing lack of the respect due coordinate branches
> of government; [5] an unusual need for unquestioning adherence to a
> political decision already made; or [6] the potentiality of embarrassment
> from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217.

Under the political question doctrine, the decision to recognize a foreign

sovereign is exclusively a function of the Executive Branch and presents a non-

justiciable political question.  *Oetjen v. Central Leather Co.*, 246 U.S. 297, 303 (1918).

Indeed, "the Executive Branch's decision to recognize a foreign state '*conclusively*

*binds*' all domestic courts, such that they must accept that decision."  *Jiménez*, 2019 WL

3526479, at 10 (emphasis added) (citing *Oetjen*, 246 U.S. at 302).  This is so because

7

"[a]s Chief Executive, the President of the United States is the sole organ of the federal government in the field of international relations, and thus holds the exclusive power of recognition of a foreign government."  *Id.* at *9 (internal marks omitted) (citing *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964)).

Moreover "a state *derecognizes* a governmental regime when it recognizes another regime as the legitimate government of that state."  *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988) (emphasis in original). Accordingly, "a regime not recognized as the government of a state[] is ordinarily denied access to courts in the United States."  Restatement (Third) of Foreign Relations Law of the U.S. § 205(1); *see also Guaranty Trust Co. v. United States*, 304 U.S. 126, 137 (1938).  Nevertheless, corporations owned by unrecognized regimes still have access to United States courts.[7]  *See* Restatement (Third) of Foreign Relations Law § 205 cmt. a.

## II.    ACT OF STATE DOCTRINE

The act of state doctrine also is rooted in the principle of separation of powers. *Sabbatino*, 376 U.S. at 423.  It "arises out of the basic relationships between branches of government in a system of separation of powers . . . [and] concerns the competency of dissimilar institutions to make and implement particular kinds of decisions in the area of international relations."  *Id.*  "[A]s formulated in past decisions[, the doctrine] expresses the strong sense of the Judicial Branch that its engagement in the task of

---

[7] As conceded by Jiménez at oral argument, this principle does not apply here where PDVSA is owned not by an unrecognized regime but by Venezuela itself.  Docket Item 74 at 35-36.  The principle might apply, for example, if the Maduro government created a new company and that new company sought access to a United States court.

passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Id.* Stated more simply, "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1987).

The act of state doctrine therefore requires the Judicial Branch to deem valid any "official act of a foreign sovereign performed within its own territory." *W. S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990); *see also Jiménez*, 2019 WL 3526479, at *11. It applies only to official acts taken by recognized sovereigns, *In re Refined Petroleum Products Antitrust Litigation*, 649 F. Supp. 2d 572, 582 (S.D. Tex. 2009), including acts involving management of state-owned corporations, *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 672-73 (S.D. Fla. 1988).

## III.   STAYING PROCEEDINGS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LYUSA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "It follows that the decision whether to issue a stay is 'firmly within a district court's discretion.'" *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995)).

"In determining whether a stay is appropriate, the Court must consider whether the 'interests of efficient judicial administration and comprehensive disposition of litigation' is better served through an order to stay the proceedings." *Red Tree Investments, LLC v. Petróleos De Venezuela, S.A.*, 2020 WL 209276, at *1 (S.D.N.Y. Jan. 14, 2020) (citing *New York v. Blank*, 1991 WL 208883, at *11 (N.D.N.Y. Oct. 10, 1991)). "To guide this determination, courts generally consider five factors: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" *Id.* (citing *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

## DISCUSSION

Entities appointed by dueling governments of Venezuela have retained different sets of attorneys to represent PDVSA and the subsidiaries in this case. So the ordinarily simple matter of substitution of counsel has turned into a matter with international implications. Fortunately, this Court need not—indeed, it cannot—decide for itself which Venezuelan government is legitimate; at least as far as the United States is concerned, that decision is entrusted to, and has been decided by, the Executive Branch.

## I.      MOTION TO SUBSTITUTE COUNSEL

The parties all agree that Venezuela owns PDVSA; that the President of Venezuela has the authority to appoint PDVSA's board of directors; that the United

States Executive Branch has the exclusive authority to recognize foreign governments; and that both the current President of the United States and his immediate predecessor have recognized Guaidó and the Interim Government as the only legitimate government of Venezuela. *See* Docket Item 74 at 5-7. They disagree, however, on whether this even matters—in other words, whether the political question and act of state doctrines apply to this case.

Flynn and Jiménez argue that the political situation in Venezuela is beside the point.[8]  Docket Item 65 at 4-6. They emphasize this Court's ability to control its docket, and they frame the issue as whether substitution of counsel would violate PDVSA's and the subsidiaries' due process rights. *Id.* According to Flynn and Jiménez, because the "precise issue" is not which government of Venezuela is legitimate, the political question doctrine does not apply. Docket Item 74 at 17.

White & Case, on the other hand, says that the political question doctrine is crucial in deciding who represents PDVSA and the subsidiaries. Docket Item 58-1 at 4. More specifically, White & Case argues that to determine which attorneys are duly authorized to represent PDVSA and the subsidiaries, this Court must identify the lawful governing body of PDVSA; that analysis, White & Case says, necessarily implicates the political question and act of state doctrines. *See id.*; *see also* Docket Item 67 at 2. Put most simply, White & Case reasons that (1) Venezuela owns PDVSA; (2) the President of Venezuela can appoint the board of any government-owned company, including PDVSA; (3) the United States recognizes Guaidó as the President of Venezuela;

---

[8] Caballero opposes the motion to substitute counsel not on the merits but because it would further delay his collection efforts. Docket Item 74 at 13.

(4) Guaidó appointed the Ad Hoc Board; (5) the Ad Hoc Board therefore controls PDVSA as far as the United States is concerned; and (6) White & Case has been retained by the Ad Hoc Board and therefore is the legitimate counsel for PDVSA and the subsidiaries in this United States court.   Docket Item 76 at 1-2.   That simple logic is compelling, and this Court agrees with White & Case.

Under the political question doctrine, at least as far as the United States courts are concerned, the Guaidó government is the only legitimate government of Venezuela. *See Jiménez*, 2019 WL 3526479, at *11.   And under the act of state doctrine, at least as far as the United States courts are concerned, Guaidó's appointment of the Ad Hoc Board is a valid act of state by the only legitimate Venezuelan government.   *See id.* at *12-*13.   The only board with legitimacy in the United States, and therefore the only board authorized to appoint counsel to represent PDVSA and the subsidiaries in this Court, is the Ad Hoc Board.   And it has done exactly that by retaining White & Case. *See* Docket Item 58-3 at 2.

Flynn and Jiménez note that regardless of what the United States thinks, Maduro is in *de facto* control in Venezuela.   Docket Item 65 at 15-16.   For that reason, they argue, the Ad Hoc Board does not have the "resources and information necessary to defend the interests and protect the assets in the United States of PDVSA and the [] [s]ubsidiaries."   *See* Docket Item 65 at 4 (citing Docket Item 58-1 at 10).   Indeed, they observe that White & Case has admitted exactly that, *see* Docket Item 58-1 at 9-10, and they argue that substitution would deny PDVSA and its subsidiaries due process, *see* Docket Item 65 at 6 (citing *United States v. Ghailani*, 686 F. Supp. 2d 279, 297 (S.D.N.Y. 2009)).

But any obstacle to White & Case's effective representation of PDVSA would be of PDVSA's own making, and the due process argument therefore is a chimera. Whoever controls PDVSA, and whichever lawyers represent it, have a single interest in this Court:  protecting the assets of PDVSA and the subsidiaries from Caballero. Whoever controls PDVSA can cooperate with whichever lawyers represent PDVSA—if not directly, then through other lawyers of their choosing.  Indeed, refusing to cooperate simply because those in control of the company did not get to pick the lawyers who represent the company in this Court would be akin to cutting off one's nose to spite one's face.  So honoring the political question and act of state doctrines will not deny PDVSA due process in any way whatsoever.[9]

For that reason, Flynn and Jiménez's reliance on *Ghailani* is misplaced.  In *Ghailani*, the United States District Court for the Southern District of New York addressed whether the Secretary of Defense's reassignment of a criminal defendant's military defense counsel was a non-justiciable political question.  *See Ghailani*, 686 F. Supp. 2d at 288-90.  The court held that the political question doctrine did not prevent it from reaching the issue of whether the Secretary's reassigning the defendant's appointed counsel would violate the defendant's Sixth Amendment rights.  *Id.* at 292. The issue "[was] not the Secretary's authority to order reassignment or even the

---

[9] Notably, Jiménez acknowledged at oral argument that an order from this Court mandating Jiménez's and his principals' cooperation with White & Case would solve any purported due process problem.  Docket Item 74 at 24.  This Court therefore asked Jiménez to propose language that might assist him toward that end, but Jiménez did not do so.  Because this order relieves Jiménez of his obligations in this case, this Court is reluctant to order such cooperation.  Nevertheless, if Jiménez believes that such an order might assist him in encouraging such cooperation by his client, he may move to intervene or request such an order through White & Case.

appropriateness of this discretionary personnel decision in this instance" but "whether the *effect* of this decision would infringe upon the defendant's constitutional rights." *Id.* (emphasis in original).

Of course, whether substitution might deprive PDVSA and the subsidiaries of their constitutional rights is a justiciable question that this Court can decide. *See id.* at 288-92. And if substitution truly deprived PDVSA of its right to due process, the political question doctrine might give way. But the Court need not address that thorny issue because there is no due process issue here.

Instead, this Court need only address the question of who is authorized to represent PDVSA and the subsidiaries. That requires the Court first to determine who the lawful governing body of PDVSA is. And that question, in turn, requires the Court to ask who the United States has recognized as Venezuela's government. Under the political doctrine, this Court must recognize Guaidó and the Interim Government as the only legitimate government of Venezuela. *See Jiménez*, 2019 WL 3526479, at *11. Therefore, as long as Guaidó's appointment of the Ad Hoc Board is a valid act of state, the Ad Hoc Board is the only entity authorized to appoint counsel in this case.

In that regard, Flynn and Jiménez argue that the act of state doctrine does not apply to the Ad Hoc Board's retaining White & Case because both the Ad Hoc Board and White & Case are located outside Venezuela and because the hiring of counsel is a private commercial activity and not a governmental act. Docket Item 65 at 14-15. But the act of state doctrine applies to "acts regarding the management of Venezuela's state-owned corporations." *See Bariven*, Case No. 4:19-cv-00652, Docket Item 55 at 6 (May 20, 2020). And the operative act of state here was Guaidó's appointment of the

14

Ad Hoc Board to govern PDVSA, not the Ad Hoc Board's retaining White & Case.  *See*

*Jiménez*, 2019 WL 3526479, at *18 ("To be clear, the relevant 'official act' is Guaidó's

appointments to the PDVSA board, and the plaintiffs do not argue that this act occurred

outside of Venezuela's territorial limits, nor could they.").  The act of state doctrine also

applies to the National Assembly's empowering the Ad Hoc Board to "exercise the legal

representation of [PDVSA] and its subsidiaries abroad" and its barring Maduro

appointees from exercising power over PDVSA or the subsidiaries.  *See Bariven*, Case

No. 4:19-cv-00652, Docket Item 52-1 at 4-5.

It is of no moment that Venezuela's Supreme Tribunal of Justice, Constitutional

Court, found the Transition Statute and the Ad Hoc Board to be unconstitutional and

void.  *See Jiménez*, 2019 WL 3526479, at *14-*15.  The act of state doctrine applies

only to official acts taken by *recognized* sovereigns.  *In re Refined Petroleum*, 649 F.

Supp. 2d at 582.  In the United States, the Interim Government is the only recognized

sovereign of Venezuela.  Exec. Order 13857; *Jiménez*, 2019 WL 3526479, at *11.

Therefore, Guaidó's appointment of the Board and the National Assembly's enactment

of the Transition Statute were valid acts of state that "must be accepted by this Court as

valid."  *See Air Panama*, 745 F. Supp. at 673.  "Judicial inquiry into the law of

[Venezuela] underlying these acts is neither necessary nor appropriate."  *Id.* (citing

*Underhill v. Hernandez*, 168 U.S. 250, 252 (1897)).  The Ad Hoc Board therefore is the

only lawful governing body of PDVSA that can retain counsel in this case.[10]

---

[10] Other courts that have addressed this issue have found the same.  *See Bariven*, Case No. 4:19-cv-00652, Docket Item 55 at 10 ("[T]he Court finds that the Ad-Hoc Management Board of PDVSA possesses lawful authority over the Defendants to appoint counsel."); *Jiménez*, 2019 WL 3526479, at *13 ("In this case, the act of state doctrine resolves the question of who constitutes the PDVSA board.  The Guaidó

Finally, whether Maduro has *de facto* control over PDVSA does not affect this analysis.  The United States recognized Guaidó and the National Assembly as the "only legitimate branch of government" in Venezuela.  Exec. Order 13857.  "Thus, no other elected branch of government in Venezuela—[including] Maduro . . .—is legitimate in the eyes of the [United States] Executive Branch."  *Jiménez*, 2019 WL 3526479, at *11. In other words, what matters is the "foreign sovereign [that] has received *de jure* recognition by the United States."  *Id.* at *16 ("The political question doctrine makes recognition of a foreign government 'conclusive on all domestic courts, which are bound to accept that determination[.]  This well-settled pronouncement does not permit domestic courts to ignore the Executive Branch's *de jure* recognition based on its own assessment of a foreign sovereign's *de facto* control.").

For all those reasons, White & Case's motion for substitution of counsel, Docket Item 58, is granted.

## II.   MOTION FOR A STAY

White & Case argues that a stay, even a limited stay of 120 days, is necessary because "Maduro's illegitimate occupation of the government in Venezuela is impeding the Interim Government's efforts to restore stable democratic governance and ensure continuity of operations of Venezuela's state[-]owned enterprises, such as PDVSA." Docket Item 58-1 at 9.  As a result, White & Case asserts, "[t]his unsettled political situation deprives PDVSA's Ad Hoc Board of information and resources necessary" to

---

government's reconstitution of the PDVSA board was the official act of a recognized sovereign taken wholly within its own territory.").

litigate this action. *Id.* White & Case also argues that a limited stay would "allow[] the Biden Administration . . . time to implement its U.S.-foreign-policy objectives in respect of Venezuela" or notify this Court of its interest in this case. *See* Docket Item 76 at 9.

Allowing time for the Biden administration to solidify its approach to Venezuela cannot justify a stay when White & Case has admitted that it is "ready, willing, and able to mount a full-throated defense of [its clients'] interests in this action." *See* Docket Item 67 at 2. Even more basically, White & Case has pointed to nothing tangible that is likely to change regarding Venezuela—including White & Case's ability to access relevant documents—in the next 120 days. Indeed, one of the cases that White & Case cites in support of its request for a stay has now been stayed for more than two years to allow the political situation in Venezuela and the fight for control over PDVSA to unfold. *See Helmerich & Payne Int'l Drilling Co., et al. v. Bolivarian Republic of Venezuela*, *et al.*, Case No. 1:11-CV-01735-CRC, Docket Item 133 (D.D.C. Feb. 15, 2019). And it appears that nothing significant has changed in those two-plus years. *See id.*, Docket Item 141 (D.D.C. Feb. 8, 2021) (status report dated February 8, 2021, requesting that the stay continue and asserting that "[t]he political situation in Venezuela continues to prevent this litigation from moving  forward [because the d]efendants can neither produce documents in the control of [PDVSA] or a [PDVSA subsidiary] nor produce corporate representatives of those defendants for deposition"). So it appears that a stay here would not accomplish anything other than delay. The motion for a stay therefore is denied.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that the motion to substitute counsel and for a stay filed by White & Case, Docket Item 58, is GRANTED IN PART and DENIED IN PART:  specifically, the motion to substitute counsel is granted but the motion for a stay is denied; and it is further

ORDERED that the motion for an extension of time filed by Flynn and Jiménez, Docket Item 60, is DENIED as moot; and it is further

ORDERED that the motion to waive the local counsel requirement, Docket Item 71, is GRANTED; and it is further

ORDERED that attorneys Claire A. DeLelle, Kimberly Anne Havlin, Nicole Erb, and Timothy L. Wilson, Jr., of White & Case LLP are designated as counsel of record for PDVSA and the subsidiaries; and it is further

ORDERED that the Clerk of the Court shall terminate Terrance P. Flynn of Harris Beach LLP and Marcos Daniel Jiménez of Marcos D. Jiménez, P.A., as attorneys of record for PDVSA and the subsidiaries and shall strike Flynn's and Jiménez's notices of appearance on behalf of PDVSA and the subsidiaries from the record; and it is further

ORDERED that within 45 days of the date of this order, PDVSA and the subsidiaries shall brief the factual and legal issues, including whether PDVSA and the subsidiaries are agencies or instrumentalities of FARC; within 30 days of his receipt of that brief, Caballero shall respond or move for discovery; and within 15 days of their receipt of Caballero's response or request for discovery, PDVSA and the subsidiaries shall reply.

18

SO ORDERED.


Dated:   May 11, 2021
         Buffalo, New York



_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE