# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO CABALLERO,<br><br>Plaintiff,<br><br>v.<br><br>FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, a/k/a FARC-EP, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DE VALLE CARTEL,<br><br>Defendants. | Case No.: 1:20-mc-00040-LJV |

## PETRÓLEOS DE VENEZUELA, S.A. AND ITS SUBSIDIARIES' REPLY IN SUPPORT OF MOTION TO QUASH WRITS OF EXECUTION AND VACATE TURNOVER JUDGMENT

**WHITE & CASE**
701 Thirteenth Street, N.W.
Washington, D.C., 20005
(202) 626-3600

*Counsel for Petróleos de Venezuela, S.A., Aceites y Solventes Venezolanos Vassa S.A., PDV Marina S.A., Petroanzoategui S.A. (a/k/a Petro San Felix S.A.), Venfleet Asphalt, Ltd., Venfleet, Ltd., and Venfleet Products, Ltd.*

August 10, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................1

I.    THE OPPOSITION FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION .....1

    A.    The Opposition Fails To Establish An Independent Basis For The Court's Subject Matter Jurisdiction Over This Action ........................................................1

    B.    Plaintiff Cannot Avoid The FSIA ....................................................................2

II.    PLAINTIFF CANNOT SIDE STEP CONSTITUTIONAL DUE PROCESS ...................7

III.    THE TURNOVER JUDGMENT IS VOID BASED ON INEFFECTIVE SERVICE ........8

IV.    THE OPPOSITION FAILS TO DEMONSTRATE THAT TRIA APPLIES TO PDVSA AND ITS SUBSIDIARIES.............................................................................11

    A.    TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of Terrorism Only...........................................................................................11

    B.    The Opposition Fails To Prove That PDVSA And Its Subsidiaries Are "Agencies Or Instrumentalities" Of The FARC ...................................................13

    C.    Plaintiff Has Not Established That PDVSA And Its Subsidiaries Own The "Blocked Assets" ........................................................................................15

V.    PLAINTIFF'S ATA JUDGMENT WAS ENTERED WITHOUT JURISDICTION AND CANNOT BE ENFORCED AGAINST PDVSA OR THE SUBSIDIARIES........17

CONCLUSION.................................................................................................................19

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)................................................................................7

*Board of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*,
    563 U.S. 776 (2011)................................................................................6

*Cairo Amman Bank v. Bucheit*,
    1 F. App'x 98 (2d Cir. 2001) ...............................................................19

*Calderon-Cardona v. Bank of N.Y. Mellon*,
    770 F.3d 993 (2d Cir. 2014)...........................................................14, 16

*Cameron v. City of N.Y.*,
    598 F.3d 50 (2d Cir. 2010)....................................................................15

*Chettri v. Nepal Bangl. Bank, Ltd.*,
    2014 U.S. Dist. LEXIS 122731 (S.D.N.Y. Sep. 2, 2014)................10, 11

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)...................................................................7

*Federal Land Bank v. Bismarck Lumber Co.*,
    314 U.S. 95 (1941).................................................................................6

*Gilmore v. Palestinian Interim Self-Government Auth.*,
    675 F. Supp. 2d 104 (D.D.C. 2009) .....................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................8

*Great Am. Ins. Co. v. Bevis*,
    652 So. 2d 382 (Fla. 2d Dist. Ct. App. 1995) .......................................17

*Harrison v. Republic of Sudan*,
    No. 13-cv-3127, 2017 U.S. Dist. LEXIS 25675 (S.D.N.Y. Feb. 10, 2017)............................13

*Hatfield v. King*,
    184 U.S. 162 (1902)................................................................................7

*Hausler v. JP Morgan Chase Bank, N.A.*,
    770 F.3d 207 (2d Cir. 2014)..................................................................16

*Hausler v. JPMorgan Chase Bank, N.A.*,
    845 F. Supp. 2d 553 (S.D.N.Y. 2012)..................................................................................16

*Hyundai Merch. Marine Co. v. Grand China Shipping (H.K.) Co.*,
    878 F. Supp. 2d 1252 (S.D. Ala. 2012)............................................................................9, 10

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*,
    No. 03-MD-1529, 2014 U.S. Dist. LEXIS 171093 (S.D.N.Y. Dec. 10, 2014) .....................15

*Insurance Corp. of Ireland v. Compagnie Des Bauxites de Guinee*,
    456 U.S. 694 (1982)...........................................................................................................17

*Jenkins v. Smead Mfg. Co.*,
    No. 09-cv-0261, 2009 U.S. Dist. LEXIS 101545 (S.D. Cal. Oct. 28, 2009) ........................18

*Jerez v. Republic of Cuba*,
    413 U.S. App. D.C. 378 (2014) ...........................................................................................18

*Keebler v. Rath*,
    405 F. App'x 517 (2d Cir. 2010) .........................................................................................17

*Kirschenbaum v. 650 Fifth Avenue*,
    830 F.3d 107 (2d Cir. 2016)....................................................................................3, 12, 14

*Kirschenbaum v. Assa Corp.*,
    934 F.3d 191 (2d Cir. 2019)..................................................................................................6

*Kumar v. Republic of Sudan*,
    880 F.3d 144 (4th Cir. 2018) ...........................................................................................8, 11

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*,
    556 U.S. 366 (2009)..............................................................................................................4

*National Communs. Ass'n v. AT&T Corp.*,
    238 F.3d 124 (2d Cir. 2001)................................................................................................15

*O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on September 11, 2001
    (Saudi Joint Relief Comm.))*,
    714 F.3d 109 (2d Cir. 2013)..................................................................................................7

*Peacock v. Thomas*,
    516 U.S. 349 (1996)..............................................................................................................1

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) ..............................................................................................9

*Prince v. Gov't of China*,
    No. 13-cv-2106, 2017 U.S. Dist. LEXIS 176969 (S.D.N.Y. Oct. 25, 2017)........................16

*Regan v. Pelham*,
  No. 19 Civ. 7987, 2021 U.S. Dist. LEXIS 52247 (S.D.N.Y. Mar. 19, 2021).........................11

*Republic of Aus. v. Altmann*,
  541 U.S. 677 (2004).........................................................................................................13

*Rosenberg v. Lashkar-e-Taiba*,
  No. 10 CV 5381, 2016 U.S. Dist. LEXIS 87724 (E.D.N.Y. July 5, 2016)............................18

*Rubin v. Islamic Republic of Iran*,
  138 S. Ct. 816 (2018)....................................................................................................2, 4

*Sartor v. Toussaint*,
  70 F. App'x 11 (2d Cir. 2002) ...........................................................................................2

*Sayles v. PAC Eng'rs & Constructors, Ltd.*,
  No. 08-cv-676, 2009 U.S. Dist. LEXIS 124819 (W.D.N.Y. Jan. 16, 2009).........................18

*Sikhs for Justice v. Nath*,
  850 F. Supp. 2d 435 (S.D.N.Y. 2012)...............................................................................11

*Smith v. FRB*,
  346 F.3d 264 (2d Cir. 2003).............................................................................................4

*Stephens v. Progressive Gulf Ins. Co.*,
  No. 1:13-cv-00244, 2015 U.S. Dist. LEXIS 50826 (N.D. Miss. Apr. 17, 2015)...................17

*Taurisano v. Tabb*,
  No. 6:19-cv-1637, 2021 U.S. Dist. LEXIS 47392 (N.D.N.Y. Mar. 15, 2021) ......................17

*Traguth v. Zuck*,
  710 F.2d 90 (2d Cir. 1983)................................................................................................2

*United States v. Assa Co.*,
  934 F.3d 185 (2d Cir. 2019).........................................................................................5, 7

*United States v. Karo*,
  468 U.S. 705 (1984)..........................................................................................................9

*United States v. Thompson*,
  921 F.3d 82 (2d Cir. 2019)..............................................................................................10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)..........................................................................................................9

*Volloldo v. Ruz*,
  No. 1:14-mc-25, 2017 U.S. Dist. LEXIS 176104 (N.D.N.Y. Oct. 24, 2017).........................19

*Weinstein v. Islamic Republic of Iran*,
   609 F.3d 43 (2d Cir. 2010).........................................................................3, 11, 13

*Wood v. Maguire Auto., LLC*,
   508 F. App'x 65 (2d Cir. 2013) ................................................................................2

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).................................................................................................8

## STATUTES AND RULES

18 U.S.C. § 2337...........................................................................................................12

18 U.S.C. § 2338...........................................................................................................18

28 U.S.C. § 1603.......................................................................................................4, 12

28 U.S.C. § 1605.............................................................................................................3

28 U.S.C. § 1605A ................................................................................................ passim

28 U.S.C. § 1608.................................................................................................8, 9, 10

28 U.S.C. § 1610.......................................................................................................4, 16

Fed. R. Civ. P. 4.........................................................................................................8, 9

Fed. R. Civ. P. 12...........................................................................................................2

Fed. R. Civ. P. 54...........................................................................................................2

Fed. R. Civ. P. 55...........................................................................................................2

Fed. R. Civ. P. 60...........................................................................................................2

N.Y. C.P.LR § 5225......................................................................................................10

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 § 201 ........... passim

## MISCELLANEOUS

148 Cong. Rec. 23122 (2002)......................................................................................13

Brief of the United States, *Bank Melli Iran N.Y. Repr. Off. v. Weinstein*,
   No. 10-947 (U.S. May 2012) ...............................................................................3, 4

Brief of the United States, *In re: 650 Fifth Ave. & Related Props.*,
   No. 17-3258(L), ECF No. 105 (2d Cir. Aug 31, 2018) .........................................4

## PRELIMINARY STATEMENT

Plaintiff's Opposition, like this entire action, proceeds from a fundamentally flawed construction of the statutory and constitutional framework of this case.  Plaintiff mischaracterizes this action as a "post-judgment" action "akin to an *in rem* forfeiture proceeding" and states that he neither is "seeking" nor has ever "obtained an *in personam* judgment against PDVSA" or its Subsidiaries.  ECF No. 90 ("Opp.") at 25.  But a court order determining that third parties are "agencies or instrumentalities" of the FARC, for purposes of holding them personally liable for payment of a default judgment against the FARC, is quintessentially an order *in personam*.  Under Supreme Court and Second Circuit law, Plaintiff was required to establish an independent basis for subject matter and personal jurisdiction but he has failed to do so.

Instead, the Opposition argues that a single phrase in TRIA — "notwithstanding any other provision of law" — displaces not only the FSIA but also the U.S. Constitution.  But TRIA is not so far-reaching.  Indeed, the Opposition cannot point to a single case decided in the adversarial context in which a court has held that TRIA permits a judgment creditor of a non-state actor to satisfy his judgment against assets of an "agency or instrumentality" of a foreign state.  There is none.  The Turnover Judgment should be vacated and the writs dissolved.

## ARGUMENT

### I.   THE OPPOSITION FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION

#### A.   The Opposition Fails To Establish An Independent Basis For The Court's Subject Matter Jurisdiction Over This Action

The Opposition ignores *Peacock v. Thomas*, 516 U.S. 349 (1996), and its progeny entirely. In fact, other than asserting that PDVSA's argument that an independent basis of jurisdiction is required "is simply wrong" (Opp. at 24), the Opposition fails to grapple with *Peacock* and *Epperson* at all.  But these case are controlling here. Mot. at 14.

Moreover, the Opposition fails to address in substance the Subsidiaries' argument that Plaintiff has not alleged facts sufficient to create a case or controversy. *See* Opp. at 27 (describing the Subsidiaries' arguments as "concoct[ed]" and "preposterous"). But Plaintiff's purported "allegations" and "proof" (*id.*) are devoid of any facts and thus cannot establish an Article III "case" or "controversy" where the Subsidiaries have never been adjudged liable for, much less *accused* of, involvement in the underlying terrorist acts. *See, e.g.*, *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (summary order) (holding "conclusory" allegations do not establish jurisdiction (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

Because Plaintiff has never established subject matter jurisdiction, the Court's Orders, Writs, and Turnover Judgment are void and must be vacated. *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002). Vacatur is not discretionary when a court lacks jurisdiction, and although relevant precedent most often arises under Rule 60(b)(4), the same result is compelled through application of any number of other Federal Rules, including 12(h)(3) and 55(c). *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983) (holding abuse of discretion under Rule 55(c) not to vacate order "functionally equivalent to an entry of default"). And, contrary to Plaintiff's emphatic assertion, the Turnover Judgment is plainly not final because this action does not adjudicate all claims of all parties. *See* Fed. R. Civ. P. 54(b). Thus, Plaintiff is also wrong that PDVSA and its Subsidiaries have no appellate rights. Indeed, PDVSA and its Subsidiaries may raise any and all arguments made here as may be necessary on direct appeal from a final judgment concluding this action.

## B.    Plaintiff Cannot Avoid The FSIA

The Opposition argues that TRIA's use of "notwithstanding" renders the FSIA "no obstacle to TRIA." Opp. at 9 (emphases omitted). This is true only to the extent a plaintiff has *already obtained* a judgment against a foreign state under §§ 1605A or 1605(a)(7). *See* Mot. at 15-16

2

(citing cases).  But Plaintiff has no such judgment here.  *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 820 (2018).  For this reason, the Opposition's reliance (at 24) on *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), to avoid the jurisdictional requirements of the FSIA is misplaced.  The holding in *Weinstein* is cabined to the situation in which a plaintiff has already obtained a judgment against a foreign state pursuant to § 1605A (or its predecessor § 1605(a)(7)).  *See Kirschenbaum v. 650 Fifth Avenue*, 830 F.3d 107, 131 (2d Cir. 2016) ("TRIA provides jurisdiction for execution and attachment proceedings to satisfy a judgment *for which there was original jurisdiction under the FSIA* if certain statutory elements are satisfied." (emphasis added; citing *Weinstein*, 609 F.3d at 52)).

In *Weinstein*, Iran was a designated state sponsor of terrorism against whom plaintiffs had obtained a judgment pursuant to § 1605(a)(7).  609 F.3d at 48.  The panel explained that the district court in the underlying action had already obtained subject matter jurisdiction with regard to Iran by way of §§ 1330(a) and 1605(a)(7).  *Id.*  Thus, in the panel's view, TRIA provided the independent basis for subject matter jurisdiction in an action against Iranian property "held in the hands of" Bank Melli, Iran's agency or instrumentality.  *Id.* at 50.  *Kirschenbaum* presented a nearly identical situation, except the property to be attached was held by entities that, because they were citizens of a U.S. state, could not be "agencies or instrumentalities" of Iran under the FSIA.  830 F.3d at 127-28, 141.  In contrast, this action is not one for which "there was original jurisdiction under the FSIA" pursuant to §§ 1605A or 1605(a)(7).  *Id.* at 131.

In any event, the statement from *Weinstein* on which Plaintiff relies was, as the United States explained, "erroneous[]."  Br. of the U.S., *Bank Melli Iran N.Y. Repr. Off. v. Weinstein*, No. 10-947 (U.S. May 2012) ("U.S. *Bank Melli* Br.") at 16 n.2 (available at https://www.justice.gov/ sites/default/files/osg/briefs/2011/01/01/2010-0947.pet.ami.inv.pdf).  Rather, TRIA "simply

resolves certain matters relevant to the collection of a terrorism-related judgment against a foreign state by specifying which assets of the foreign state are subject to execution on the judgment." *Id at* 20. That reading comports with the FSIA's framework, which provides that a foreign state's agencies and instrumentalities are part of the foreign state itself. *See* 28 U.S.C. § 1603(a). Given the views of the United States on this subject, the Court may be well served by inviting the United States to express its views in this action.

The Second Circuit has further clarified that TRIA's "notwithstanding clause applies only when some other provision of law conflicts with TRIA." *Smith v. FRB*, 346 F.3d 264, 271 (2d Cir. 2003) (quotation marks omitted). TRIA, however, does not conflict with the FSIA's jurisdictional requirements; it incorporates them. *See* TRIA § 201(a) (requiring judgment against foreign state be based on claim under §§ 1605A or 1605(a)(7)); *Rubin*, 138 S. Ct. at 824 (holding TRIA "revoke[s] the immunity of property of a foreign state" "specifically where a plaintiff holds a judgment under §1605A"). Thus, no reasonable statutory construction would have TRIA conflict with or eliminate the FSIA's jurisdictional limitations.

Indeed, as the Supreme Court explained in *Ministry of Defense*, which PDVSA and its Subsidiaries also cited (Mot. at 13), this more judicious reading of the "notwithstanding" clause effectuates Congress's purpose of overcoming the presidential waiver in § 1610(f). 556 U.S. at 386; *see also* Br. of the U.S., *In re: 650 Fifth Ave. & Related Props.*, No. 17-3258(L), ECF No. 105 (2d Cir. Aug 31, 2018) ("U.S. *Assa Co.* Br.") at 307 ("Here, the fact that the TRIA deals with "blocked assets of a terrorist party," strongly suggests that the focus of the TRIA's "notwithstanding" clause is on other legal mechanisms within the FSIA that interfere with law concerning blocked assets, such as presidential waivers.").

The Opposition next erroneously asserts that this action is not an action *in personam*, but

rather one *in rem*, and thus Plaintiff need not establish jurisdiction as to PDVSA.  Opp. at 8-9, 24-25.  But there is nothing more quintessentially *in personam* than this Court's determination that PDVSA, a state-owned agency or instrumentality of Venezuela (under the FSIA), has been used to assist a terrorist organization, the FARC, such that PDVSA is also an "agency or instrumentality" of the FARC (under TRIA).

The Opposition's erroneous assertion stems from a misreading of *United States v. Assa Co.*, 934 F.3d 185 (2d Cir. 2019).  There, the Second Circuit faced a jurisdictional challenge to a civil asset forfeiture action against property belonging to an agency or instrumentality of Iran.  *Id.* at 190.  The Second Circuit explained that, *unlike* actions by private litigants to enforce a judgment against the property of a foreign state, a civil asset-forfeiture proceeding implicates neither the text nor purpose of the FSIA.  *Id.* at 188-90.  Because "the only plaintiff that can claim civil forfeiture . . . is the United States," the foreign policy concerns jeopardized by "*quasi in rem* suits" against foreign states in the absence of personal jurisdiction are not relevant to such proceedings. *Id.*; *accord* U.S. *Assa* Co. Br. at 250-51 (arguing "the concerns that led to the FSIA simply do not apply to this action" for forfeiture "brought by the United States").

Here, the United States is not bringing this action, and it has never designated Venezuela as a state sponsor of terrorism or otherwise suggested that PDVSA's assets may be executed against to satisfy judgments against the FARC.  The United States, in fact, recognizes as an ally the Interim Government of President Juan Guaidó and has protectively blocked Venezuelan state assets to shield them from dissipation and preserve them for the Venezuelan people.  *See* ECF No. 58-10 (OFAC FAQ 660).

The Opposition's invocation of TRIA as a purported basis for subject matter jurisdiction also fails because this action does not comport with the statute's basic requirements.  Under TRIA,

by its plain terms, "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party." U.S. *Assa Co.* Br. at 307 (citing *Hausler v. JP Morgan Chase Bank, N.A.* ("*Hausler II*"), 770 F.3d 207, 212 (2d Cir. 2014))); TRIA § 201(a); Mot. at 37 (same); *Cf. Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 563 U.S. 776, 788 (2011) ("As we have explained, the use of the word 'of' denotes ownership." (cleaned up; collecting cases)). Moreover, the use of the word "including" in the statute (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets" even if they are also "blocked assets of any agency or instrumentality of that terrorist party." TRIA § 201(a); *see Fed. Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). *See* Mot. at 25-31; *see also id.* at 16 (collecting cases demonstrating this is how TRIA has worked in practice). But even under *Kirschenbaum*'s definition of "agency or instrumentality," the FARC still would need an ownership interest in the blocked assets.

This plain-language interpretation of the ownership requirement under TRIA is further confirmed by the "basic principle of garnishment that a plaintiff merely stands in the shoes *of the judgment debtor*" and, thus, "cannot acquire more property rights . . . than those already held *by the judgment debtor.*" 50 C.J.S. *Judgments* § 770 (2021) (emphasis added). But Plaintiff has never alleged that the assets he seeks are property of the FARC, or that the FARC has any ownership interest in the blocked assets of PDVSA or its Subsidiaries, putting TRIA out of reach for this action. *Cf. Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019) (noting "concerns" that, "if broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party institution" with "only incidental and perhaps unintentional involvement with a terrorist party").

In a final attempt to avoid the jurisdictional requirements of the FSIA, the Opposition asserts that it is "pure fantasy" that "an agency or instrumentality of a (non-terrorist) foreign state retains its FSIA immunity even if such agency or instrumentality is committing horrible crimes on behalf of a non-state terrorist." Opp. at 26. Setting aside that PDVSA has not committed "horrible crimes," a plaintiff must establish an FSIA exception to immunity no matter the allegation against the foreign state's agency or instrumentality. *See* Mot. at 15; *O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on September 11, 2001 (Saudi Joint Relief Comm.))*, 714 F.3d 109, 115 n.7, 118 (2d Cir. 2013) (dismissing complaint against agencies or instrumentalities of Saudi Arabia alleged to have provided financial support to Al Qaeda no FSIA exception to immunity applied).

PDVSA is not an agency or instrumentality of a designated state sponsor of terrorism. And because the United States is not a plaintiff here, Plaintiff thus cannot avoid PDVSA's immunity under the FSIA. *See Amerada Hess*, 488 U.S. at 434; *Assa Co.*, 934 F.3d at 189 & n.4 (explaining the FSIA provides the sole basis for subject matter jurisdiction for "controvers[ies] involving a foreign state"). Accordingly, this Court lacked subject matter jurisdiction to enter the Orders, Writs, and Turnover Judgment and, thus, they should be vacated.

## II.    PLAINTIFF CANNOT SIDE STEP CONSTITUTIONAL DUE PROCESS

The Opposition advances meritless arguments that constitutionally sufficient minimum contacts are not necessary here. *See* Opp. at 27-28. First, PDVSA and the Subsidiaries have not, as the Opposition asserts, "moved to intervene." *Id*. at 5. The actions of Messrs. Jiménez and Flynn were not authorized and are null and void. *See* ECF Nos. 78 at 12, 67 at 8; *Hatfield v. King*, 184 U.S. 162, 167-168 (1902) (holding unauthorized acts of attorney did not subject party to personal jurisdiction of the court). And, in any event, such intervention would not waive personal jurisdiction, but would merely function as "consent to have the district court determine all issues in the case, including issues of jurisdiction." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d

114, 139 (2d Cir. 2011) (cleaned up).

Second, the Opposition would have TRIA's "plain language and intent" (Opp. at 27-28) do away with the basic requirement of due process that defendants must have "certain minimum contacts with the [forum s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (cleaned up). But TRIA does not, and could not, displace due process. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citations omitted).

## III. THE TURNOVER JUDGMENT IS VOID BASED ON INEFFECTIVE SERVICE

Plaintiff concedes that he did not serve PDVSA pursuant to the FSIA, or the Subsidiaries pursuant to the Hague Convention or the Inter-American Service Convention. Opp. at 29. Absent proper service, Plaintiff's judgment is void. Mot. at 24 (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998), and *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019), among other cases); *see also Kumar v. Republic of Sudan*, 880 F.3d 144, 160 (4th Cir. 2018) (reversing denial of vacatur based on ineffective service).

The Opposition erroneously asserts that the FSIA and the Hague Service Convention are "not applicable" here. Opp. at 30-31. But, as discussed above, under *Peacock* and its progeny, this action is a new proceeding against entities not parties to Plaintiff's underlying judgment. As such, Plaintiff was required to serve PDVSA under Rule 4(j)(1) of the Federal Rules of Civil Procedure, which points to § 1608(b) of the FSIA, and to serve the Subsidiaries under Rules 4(h)(2) and (f)(1), which point to the Hague Convention. Instead, Plaintiff improperly served PDVSA and its Subsidiaries via direct mail. *See* Mot. at 22-23; ECF No. 23.

Attempting to avoid his obligation to effect proper service, Plaintiff misleadingly argues that this action is a "post-judgment proceeding" to which the Hague Convention and the FSIA do not apply. Opp. at 30-31. But because neither PDVSA nor the Subsidiaries were parties to

Plaintiff's underlying actions, the agency or instrumentality determinations and writs of execution were the first judicial acts that implicated PDVSA and its Subsidiaries and their assets.  Therefore, those orders and writs were required to be served on PDVSA and its Subsidiaries just as a case-initiating summons and complaint according to the FSIA and/or the Hague Convention.  *See Schlunk*, 486 U.S. at 700 ("Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action."); Fed. R. Civ. P. 4(*l*)(2)(A) (providing service of process "must be proved . . . as provided in the applicable treaty or convention").

Plaintiff's cited precedent therefore is off-base.  Opp. at 30-31.  In *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117 (9th Cir. 2010), the plaintiffs already had obtained a default judgment against the foreign state, Iran, and that default judgment had already been served upon Iran in accordance with § 1608(e).  Here, Plaintiff has no such judgment against PDVSA, the Subsidiaries, or Venezuela.  And Plaintiff similarly misconstrues *Schlunk*, in which the Supreme Court ultimately rejected application of the Hague Convention, only because it did not apply to *domestic* service of process that was proper under state law and consistent with due process.  468 U.S. at 707.  Here, by contrast, Plaintiff attempted to serve PDVSA and its Subsidiaries abroad by mailing the writs of execution to Caracas, which is explicitly prohibited by Venezuela's accession to the Hague Convention.

Plaintiff's reliance on *Hyundai Merch. Marine Co. v. Grand China Shipping (H.K.) Co.*, 878 F. Supp. 2d 1252 (S.D. Ala. 2012), is likewise wide of the mark.  There the court held that the Hague Convention did not apply because the maritime laws at issue only required that the defendant receive notice, but not service.  *Id.* at 1256-57.  Such maritime rules are clearly not applicable here.  But perhaps more importantly, the court also found that the plaintiff's failure to

comply with the Hague Convention rendered any "service" ineffective and thus did not establish personal jurisdiction. *Id.* at 1258. As applied here, Plaintiff's failure to comply with the FSIA and Hague Convention renders Plaintiff's purported "service" on PDVSA and its Subsidiaries ineffective and thus insufficient to confer personal jurisdiction.

Even if state procedures for service applied, such procedures would still require Plaintiff to serve PDVSA pursuant to the FSIA and the Subsidiaries pursuant to the Hague Convention. Plaintiff has no response to the argument that the FSIA and the Hague Convention preempt the service provisions of § 5225(b) where service by mail is prohibited in Venezuela. Mot. at 23.

Plaintiff is mistaken that PDVSA and its Subsidiaries each had actual notice and thus any defect in service was cured. *See* Op. at 23-24, 28-29. First, "[a]ctual notice of the suit does not cure . . . defective service." *United States v. Thompson*, 921 F.3d 82 (2d Cir. 2019); *see also Chettri v. Nepal Bangl. Bank, Ltd.*, 2014 U.S. Dist. LEXIS 122731, at *23 (S.D.N.Y. Sep. 2, 2014) (holding party claiming effective service under § 1608(b) must prove, at minimum, actual notice and "substantial compliance"). Second, neither PDVSA nor its Subsidiaries had actual notice. Plaintiff proceeded *ex parte* to adjudge PDVSA and its Subsidiaries' liability (ECF Nos. 10, 22) and then, when tasked with later serving PDVSA and its Subsidiaries, merely mailed English-copy versions of documents to an address purportedly associated with PDVSA in contravention of the FSIA and the Hague Convention. Moreover, Plaintiff does not dispute that the Ad Hoc Board had no notice of this action until *after* the Court entered its Orders and issued the Writs. Despite knowing (or being able to ascertain) that the Ad Hoc Board was the only lawful governing body of PDVSA and its Subsidiaries, Plaintiff made no attempt to serve or otherwise notice the Ad Hoc Board of this action.

Plaintiff's only "proof" that PDVSA received actual notice is an email chain in which an M&T Bank official alleges that M&T Bank provided copies of Plaintiff's pleadings to "counsel for PDVSA." ECF No. 90-3. It is clear that the counsel who allegedly received notice from M&T Bank was Mr. Jiménez, not undersigned or any counsel for the Ad Hoc Board. Mr. Jiménez was not authorized to act on behalf of PDVSA and thus any purported "notice" given to Mr. Jiménez is irrelevant. *See Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 441 (S.D.N.Y. 2012) (holding service on purported agent ineffective unless "actual appointment" proven by plaintiff).

In any event, any purported actual notice on the part of PDVSA cannot be imputed to the Subsidiaries. In fact, Plaintiff has provided no evidence nor made any allegations regarding actual notice as to the Subsidiaries. And indeed, it is Plaintiff's burden to prove as much. *See Regan v. Pelham*, No. 19 Civ. 7987, 2021 U.S. Dist. LEXIS 52247, at *14-15 (S.D.N.Y. Mar. 19, 2021).

Finally, to the extent the Court has any doubts as to whether service was effective, all doubts must be resolved in favor of PDVSA and the Subsidiaries to ensure that this dispute is resolved on its merits. *See Chettri*, 2014 U.S. Dist. LEXIS 122731 at *25; *see also Kumar*, 880 F.3d at 160 (reversing denial of vacatur for ineffective service and remanding to allow for proper service).

## IV.   THE OPPOSITION FAILS TO DEMONSTRATE THAT TRIA APPLIES TO PDVSA AND ITS SUBSIDIARIES

### A.   TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of Terrorism Only

Contrary to Plaintiff's contention, the Second Circuit has never held, or even stated in dicta, that TRIA's definition of "agency or instrumentality" is unambiguous. Opp. at 32-33. Rather, the *Weinstein* panel stated that TRIA was unambiguous to the extent it established subject matter jurisdiction over agencies or instrumentalities of foreign states against whom plaintiffs had obtained a judgment pursuant to §§ 1605A or 1605(a)(7). *See* 609 F.3d at 49-50. Likewise, the

*Kirschenbaum* panel observed that "TRIA unambiguously reaches more broadly to permit the attachment of property in circumstances not covered by the FSIA."  830 F.3d at 133.  The Second Circuit has not opined on the meaning of TRIA § 201 where the defaulting "terrorist party" is a non-state actor that has no alleged ownership interest a foreign state's "agency or instrumentality."

More importantly, giving the phrase "agency or instrumentality" the meaning Congress intended — and enacted in § 1603(b) — does not, as the Opposition suggests, render "superfluous" the definition of "terrorist party" in § 201(d)(4).  Opp. at 33.  Without doubt, in the four instances in which the term "terrorist party" appears in TRIA § 201(a), unmodified by the term "agency or instrumentality," it encompasses both state sponsors of terrorism and non-state terrorist organizations.  *See* TRIA § 201(d)(4).  But in the one instance where Congress intended to narrow the scope of the term, it did so explicitly, by using the well-defined term of art "agency or instrumentality" with the express purpose of overcoming *Bancec* — a decision with no relevance to non-state parties.  *See* Mot. at 25-27.

By contrast, reading TRIA's provision to permit execution against foreign state property for judgments "based on an act of terrorism" other than those covered by §§ 1605A or 1605(a)(7) would eviscerate TRIA's explicit incorporation of those provisions.  TRIA § 201(a).  It would also create an irreconcilable conflict with the immunity of foreign states (and their agencies) from the ATA — upon which Plaintiff's judgment is based —  under 18 U.S.C. § 2337(2).

As PDVSA has shown, reading "agency or instrumentality" to refer only to those entities owned or controlled by foreign states is consistent with the text, context, history, and purpose of TRIA.  *See* Mot. at 25-31.  Yet, the Opposition complains that effectuating TRIA as written and intended would "overlook" his particular situation.  Opp. at 33.  But Plaintiff's situation was not contemplated by Congress and he has failed to adduce a single piece of legislative history

demonstrating otherwise.  Indeed, the only legislative history on which Plaintiff relies shows that Congress did not have in mind the action before this Court, but rather was explicitly concerned with judgments against state sponsors of terrorism.  *See id.* (citing H.R. Rep. No. 107-779 at 27 (2002) (Conf. Rep.) and referencing similar remarks by Sen. Harkin).  As Senator Harkin explained, TRIA deals "comprehensively with the problem of enforcement of judgments issued to victims of terrorism" by providing that, "for purposes of enforcing a judgment *against a terrorist state*, [TRIA] does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities."  148 Cong. Rec. 23122 (2002) (emphasis added); *see Weinstein* 609 F.3d at 50 (same); H.R. Rep. No. 107-779 at 27 (explaining that TRIA "deals comprehensively" with the problem by "build[ing] upon and extend[ing] the principles in section 1610(f)(1)").

Moreover, PDVSA's interpretation avoids the host of statutory and constitutional problems raised by this action and preserves the overall scheme Congress enacted in the FSIA.  While Congress has provided an exception to jurisdictional immunity for, among other things, providing "material support or resources for" certain acts of terrorism, it has done so *only* for actions against a foreign state "designated as a state sponsor of terrorism."  28 U.S.C. §§ 1605A(a)(1), (2)(A)(i)(I). Venezuela has never been designated as a state sponsor of terrorism and thus, even if Plaintiff's allegations were true (they are not), PDVSA remains immune from liability.  That statutory limitation "reflects current political realities and relationships" that should not and cannot lightly be disturbed by this Court.  *Republic of Aus. v. Altmann*, 541 U.S. 677, 696 (2004); *see also* U.S. *Bank Melli* Br. at 21-22.

## B.  The Opposition Fails To Prove That PDVSA And Its Subsidiaries Are "Agencies Or Instrumentalities" Of The FARC

Plaintiff effectively concedes (at 36 n.22) PDVSA's argument that "agency or instrumentality status" is measured at the time Plaintiff commenced this enforcement action (i.e.,

October 9, 2020 for PDVSA; January 11, 2021 for its Subsidiaries).  *See Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 U.S. Dist. LEXIS 25675, at *15-17 (S.D.N.Y. Feb. 10, 2017); *Kirschenbaum*, 830 F.3d at 126 (same); Mot. at 31.  *Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993 (2d Cir. 2014), which the Opposition cites (at 36 n.22), is not to the contrary.  There, the Second Circuit had no cause to consider from what date a party's agency or instrumentality status is determined because the plaintiffs did not hold a judgment against a "terrorist party" where North Korea was not a designated state sponsor of terrorism at the time of the judgment.  *Calderon-Cardona*, 770 F.3d. at 999-1000.

PDVSA and its Subsidiaries asserted that they are not, were not at the time these actions were commenced, and have never been "agencies or instrumentalities" of the FARC.  Mot. at 1, 2, 36.  Nor does Plaintiff's evidence establish otherwise.  Rather than defend his inadmissible and insufficient evidence (Mot. at 31-37), Plaintiff misinterprets the Court's Order (ECF No. 78) by arguing that PDVSA and its Subsidiaries have "complete[ly] disregard[ed]" the Court's Order to "brief the . . . factual issues" by "fil[ing] no evidence."  *Id.* at 35.  The Court's Order merely required PDVSA and its Subsidiaries to "brief the . . . factual issues," and PDVSA and its Subsidiaries have done just that.  *See generally* Mot. at 31-37.  Upon vacatur and were the Court to find jurisdiction existed, PDVSA and its Subsidiaries would be entitled to the due process right to test Plaintiff's meager submission under the spotlight of the adversarial system.  *See* Order, *Kumar v. Republic of Sudan*, No. 2:10-cv-00171, ECF No. 251 (E.D. Va. Jan. 22, 2020) (ordering evidentiary hearing following remand from Fourth Circuit reversing denial of vacatur); *Gilmore v. Palestinian Interim Self-Government Auth.*, 675 F. Supp. 2d 104, 113 (D.D.C. 2009) (granting relief from default where evidence had not "been subjected to presentation in open court or the glare of cross-examination").

14

Recognizing the weakness with his evidence, Plaintiff attempts to offer new support in the form of the Declaration of Otto Reich (ECF No. 66-1). *See* Opp. at 15-17. Not only is the Reich Declaration riddled with defects rendering it inadmissible, but it *was not before the Court* at the time of the Court's agency or instrumentality determination. *See* ECF No. 66-1 (filed on April 9, 2020). Like McBrien, Reich simply recapitulates hearsay evidence and offers bare legal conclusions that PDVSA and its Subsidiaries are agencies or instrumentalities of the FARC and their assets executable under TRIA. *Id.* at 7; *see Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not present testimony in the form of legal conclusions.").

The U.S. government's indictment of Maduro does not assist Plaintiff either, for that, too, is inadmissible hearsay. Opp. at 14; *see, e.g.*, *In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03-MD-1529, 2014 U.S. Dist. LEXIS 171093, at *37 (S.D.N.Y. Dec. 10, 2014) ("The indictment . . . is hearsay, and thus not evidence upon which the [c]ourt can rely.").

Finally, Plaintiff cannot identify any evidence supporting the agency or instrumentality finding as to PDVSA's Subsidiaries and PDVSA's mere ownership cannot suffice. *See* Mot. at 35-36. And while Plaintiff denies that he is using OFAC's so-called "Fifty Percent Rule" to support his allegation that the Subsidiaries are agencies or instrumentalities, he cites to that rule to support that very conclusion. *Compare* Opp. at 38 (denying use of the Subsidiaries' blocked status to support TRIAfinding), *with* Opp. at 39 (stating TRIA finding regarding Subsidiaries is based on OFAC's 50 percent guidance).

### C.   Plaintiff Has Not Established That PDVSA And Its Subsidiaries Own The "Blocked Assets"

Once again, the Opposition misapprehends that it was PDVSA's burden to prove that PDVSA does not own the assets held by M&T Bank and Citibank. *See* Opp. at 39. But PDVSA's burden at this stage comprises demonstrating that vacatur is warranted and it has done so in spades.

Indeed, assuming, *arguendo*, the Court accepts Plaintiff's view that he may treat PDVSA and its Subsidiaries as if they were the judgment debtor, it is Plaintiff's burden to prove the blocked assets are owned by PDVSA or the Subsidiaries. *See Nat'l Communs. Ass'n*, 238 F.3d at 131 (party asserting affirmative has burden of proof). And, if the assets are not assets "of" PDVSA or the Subsidiaries, they are not available for attachment under TRIA or the FSIA. *See Calderon-Cardona*, 770 F.3d at 1000 (holding in order to be attachable under FSIA § 1610(g), the assets must be "property of" the agency or instrumentality).

Rather than prove ownership, Plaintiff speculates about M&T Bank's intentions while responding to Plaintiff's writ of execution. Opp. at 20 (stating that "M&T obviously would have checked such box" marked "unable to comply" if it held "[n]o [o]pen [a]ccounts" on behalf of PDVSA). Such speculation is hardly proof of ownership. And Plaintiff ignores that there is no record evidence indicating that the assets held by Citibank are owned by the Subsidiaries.

The question in *Hausler v. JPMorgan Chase Bank, N.A.* ("*Hausler I*"), was whether Cuba, the judgment debtor, "legally own[ed] the assets", as required by TRIA. 845 F. Supp. 2d 553, 567 (S.D.N.Y. 2012). *Hausler I* reasoned, logically, that if the assets were blocked pursuant to an entirely different blocking regime (e.g., the regime applicable to Iran) than the one applicable to Cuba, those assets were *prima facie* not assets "of" Cuba. *Id.* The Second Circuit reversed, not on this logical reasoning, but because the district court erred in finding that TRIA preempted state law with regard to defining ownership of the blocked assets. *Hausler II*, 770 F.3d at 211-12. *Hausler I*'s reasoned logic concerning the significance of different sanctions programs remains sound.

Finally, it defies basic logic that a judgment creditor could execute a judgment under TRIA against the assets of a friendly state that the United States has been blocked protectively and not

pursuant to any association with a foreign terrorist organization.  *See* Mot. at 38-39 (noting that

the United States has not punitively blocked PDVSA's assets but has done so to support the Interim

Government "taking concrete and meaningful actions to combat corruption, restore democracy,

and respect human rights.").  These comity concerns alone support vacatur.  *See Prince v. Gov't*

*of China*, No. 13-cv-2106, 2017 U.S. Dist. LEXIS 176969, at *7 (S.D.N.Y. Oct. 25, 2017) ("Courts

in [the Second] Circuit have recognized a strong policy interest in avoiding default judgments

against foreign sovereigns."); *Keebler v. Rath*, 405 F. App'x 517, 518 (2d Cir. 2010) ("[A]ll doubts

must be resolved in favor of the party seeking relief from the default judgment.").

## V.     PLAINTIFF'S ATA JUDGMENT WAS ENTERED WITHOUT JURISDICTION AND CANNOT BE ENFORCED AGAINST PDVSA OR THE SUBSIDIARIES

Given that, Plaintiff seeks to have PDVSA and its Subsidiaries pay for the FARC's default

judgment, he cannot credibly argue that PDVSA and its Subsidiaries have no standing to challenge

that default judgment for lack of personal jurisdiction.  Opp. at 41-42.  Plaintiff's cited cases on

this point do not help him either.  Opp. at 42-43.

In particular, *Insurance Corp. of Ireland v. Compagnie Des Bauxites de Guinee*, stands for

the proposition that a defendant, when present and defending in the litigation, can waive personal

jurisdiction by his own conduct.  456 U.S. 694, 703-04 (1982).  The FARC did not appear in the

Florida actions and thus did not waive jurisdictional defenses.  *See, e.g.*, *Taurisano v. Tabb*, No.

6:19-cv-1637, 2021 U.S. Dist. LEXIS 47392, at *11 (N.D.N.Y. Mar. 15, 2021) ("[A] non-

appearing defendant does not, by defaulting, forfeit its right to challenge any ensuing default

judgment for lack of personal jurisdiction.") (citation omitted);  *Great Am. Ins. Co. v. Bevis*, 652

So. 2d 382, 383-84 (Fla. 2d Dist. Ct. App. 1995) (holding judgment debtor's alleged insurer

permitted to attack default judgment because the judgment is "void for lack of personal jurisdiction

and may be collaterally attacked at any time"); *see also Stephens v. Progressive Gulf Ins. Co.*, No.

1:13-cv-00244, 2015 U.S. Dist. LEXIS 50826, at *18-20, *27-31 (N.D. Miss. Apr. 17, 2015) (holding that garnishee could assert personal jurisdiction defense on behalf of judgment debtors).

Plaintiff's other cases (at 42-43) are inapposite because they involve defendants attempting to assert the personal jurisdiction defense of proposed co-defendants who had not yet been added to the action and foreign defendants who had not yet been served in the underlying action.  *See Jenkins v. Smead Mfg. Co.,* No. 09-cv-0261, 2009 U.S. Dist. LEXIS 101545, at *8-9 (S.D. Cal. Oct. 28, 2009); *Sayles v. PAC Eng'rs & Constructors, Ltd.*, No. 08-cv-676, 2009 U.S. Dist. LEXIS 124819, at *15-18 (W.D.N.Y. Jan. 16, 2009).

Plaintiff also cannot seriously contest PDVSA's ability to challenge the subject matter jurisdiction of the Florida state and federal courts in issuing their default judgments.  *See Jerez*, 775 F.3d at 422 (upholding attack by third party on void default judgment issued by a Florida state court and Florida federal district court based on a lack subject matter jurisdiction).  By its plain terms, the jurisdictional provision of the ATA, § 2333(a), requires that a plaintiff be a U.S. national at the time of injury (which Plaintiff was not) in order to invoke the subject matter jurisdiction of a U.S. court.  *See also* 18 U.S.C. § 2338 (vesting exclusive jurisdiction for ATA actions in federal courts); *Rosenberg v. Lashkar-e-Taiba*, No. 10 CV 5381, 2016 U.S. Dist. LEXIS 87724, at *47 (E.D.N.Y. July 5, 2016), report and recommendation, *adopted in relevant part by* 2017 U.S. Dist. LEXIS 52116 (E.D.N.Y. Mar. 31, 2017) (holding "no jurisdiction exists under the ATA" for claims brought by non-U.S. nationals).  Moreover, the Florida federal judgment is also void to the extent that it relied on the Florida state court's damages determination because the Florida state court too lacked subject matter jurisdiction under the ATS.  *See* Mot. at 44-45.  Plaintiff's Opposition does not refute either the ATA or the ATS arguments on their merits and thus concedes them.

Finally, Plaintiff argues that he "fully briefed" the jurisdictional defects in his default judgments before the Florida state and federal courts.  Opp. at 43-44.  But it is undisputed that he did not do so in response to any argument raised by the defendant (which did not appear and defaulted).  Jurisdictional determinations made in a default context are "'not entitled to res judicata effect'" and they are certainly not preclusive as to PDVSA or its Subsidiaries which were not present in those proceedings.  *Volloldo v. Ruz*, No. 1:14-mc-25, 2017 U.S. Dist. LEXIS 176104, at *9 (N.D.N.Y. Oct. 24, 2017) (cleaned up; quoting *Vera v. Republic of Cuba*, 867 F.3d 310, 317 (2d Cir. 2017)); *see also Cairo Amman Bank v. Bucheit*, 1 F. App'x 98, 98-99 (2d Cir. 2001) ("When, as here, a plaintiff seeks to enforce a default judgment . . . 'the enforcing court has the inherent power to void the judgment whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of foreign jurisdiction, unless inquiry into the matter is barred by the principles of res judicata." (citation omitted)).

## CONCLUSION

For the foregoing reasons and those stated in the opening brief (ECF No. 85-1), PDVSA and its Subsidiaries respectfully request that this Court (1) vacate the Court's Decisions & Orders dated December 18, 2020 (ECF No. 15) and January 29, 2021 (ECF No. 33), (2) quash the writs of execution issued pursuant to these orders, (3) vacate its turnover judgment dated January 29, 2021 (ECF No. 35), and (4) dismiss this action with prejudice.

Dated:  August 10, 2021

Respectfully submitted,

By: */s/ Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
White & Case LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
nerb@whitecase.com

claire.delelle@whitecase.com

Susan L. Grace (admission forthcoming)
Daniel J. Grossbaum (admission pending)
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-7083
susan.grace@whitecase.com
dan.grossbaum@whitecase.com

*Counsel for PDVSA and its Subsidiaries*