UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTONIO CABALLERO,

        Plaintiff,

      v.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA, *et
al.*,

        Defendants.

_____

20-MC-40-LJV
DECISION & ORDER

      The plaintiff, Antonio Caballero, is a judgment creditor of Fuerzas Armadas

Revolucionarias de Colombia ("FARC").  To satisfy his judgment against FARC,

Caballero moved *ex parte* under section 201(a) of the Terrorism Risk Insurance Act of

2002 ("TRIA") for post-judgment execution on the blocked assets of alleged agencies or

instrumentalities of FARC.[1]  *See* Docket Items 10, 22.  In connection with that request,

Caballero sought a determination that Petróleos de Venezuela, S.A. ("PDVSA"), Docket

Item 10, and six of PDVSA's subsidiaries—(1) PDV Marina SA; (2) Aceites Y Solventes

Venezolanos SA; (3) Petroanzoategui SA; (4) Venfleet Asphalt Ltd.; (5) Venfleet

Products Ltd.; and (6) Venfleet Ltd. (together, "the subsidiaries"), Docket Item 22—are

agencies or instrumentalities of FARC.

---

[1] TRIA is a means through which terrorism victims can satisfy judgments for damages against terrorist defendants.  Under TRIA, a terrorism victim who meets certain requirements can satisfy her judgment against a terrorist party by attaching and executing upon the "blocked assets of . . . any agency or instrumentality of that terrorist party."  Terrorism Risk Insurance Act § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. § 1610 note).

This Court determined that PDVSA and the subsidiaries are agencies or instrumentalities of FARC and, because Caballero satisfied the other TRIA requirements, granted Caballero's motions for post-judgment execution.  Docket Items 15, 33.  On January 29, 2021, this Court entered a turnover judgment against the blocked assets of PDVSA.  Docket Item 35.

Meanwhile, PDVSA and the subsidiaries moved to intervene, and a dispute developed about who represented them.  Because PDVSA is an entity controlled by the Bolivarian Republic of Venezuela ("Venezuela"), PDVSA's board is appointed by the head of the Venezuelan government.  But dueling leaders claimed to be the real head of the Venezuelan government: Nicolás Maduro, the incumbent leader, and Juan Guaidó, the leader recognized by the United States.[2]  And dueling lawyers—chosen by the Maduro or Guaidó factions—claimed to represent PDVSA and its subsidiaries.

PDVSA's general counsel in Caracas, Venezuela—appointed by Maduro[3]— retained attorneys Terrance P. Flynn and Marcos Daniel Jiménez ("Flynn and Jiménez")

---

[2] In May 2018, Venezuela held presidential elections.  Then-president Maduro claimed victory, but the National Assembly of Venezuela ("National Assembly") declared Maduro's presidency illegitimate and declared Guaidó the Interim President of Venezuela.  Docket Item 58-2 at 3.  The United States immediately recognized Guaidó and the National Assembly (together, the "Interim Government") as the legitimate government of Venezuela.  *See* Docket Item 58-4 (Statement of President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019)).  The current United States administration has reaffirmed that decision.  *See* Press Briefing, Background Press Call by Senior Administration Officials on Venezuela, The White House (Mar. 8, 2021), https://www.whitehouse.gov/briefing-room/press-briefings/2021/03/08/background-press-call-by-senior-administration-officials-on-venezuela/.

[3] Flynn and Jiménez have not explicitly linked PDVSA's general counsel to Maduro, but as this Court previously explained, Docket Item 78 at 6 n.6, the connection is self-evident.  The Maduro and Guaidó regimes are the only two entities competing to govern PDVSA—and, indeed, Venezuela itself.  Because Flynn and Jiménez were

to represent the interests of PDVSA and the subsidiaries in this action.  Represented by Flynn and Jiménez, PDVSA and the subsidiaries intervened to challenge the Court's agency-or-instrumentality determination as well as the validity of the turnover judgment. *See* Docket Items 37, 39.  A short time later, White & Case LLP ("White & Case")— retained by the Ad Hoc Board of Directors of PDVSA ("Ad Hoc Board" or the "Board") appointed by Guaidó—moved to substitute counsel and for a stay of the proceedings. Docket Item 58.

After briefing and oral argument, this Court granted White & Case's motion to substitute.  Docket Item 78.  Based on the political question and act of state doctrines, the Court found that the "only board authorized to appoint counsel to represent PDVSA and the subsidiaries in this Court[] is the Ad Hoc Board."  *Id*. at 12.  The Court also denied the motion for a stay.  *Id*. at 17.

Flynn and Jiménez now ask the Court to reconsider its order granting substitution of counsel, or, in the alternative, to certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Docket Item 81.  On July 2, 2021, Caballero and White & Case both responded, Docket Items 86 and 87, and on July 23, 2021, Flynn and Jiménez replied, Docket Item 89.

For the following reasons, the motion to reconsider this Court's May 11, 2021 order granting substitution of counsel, or, in the alternative, to certify that order for interlocutory appeal is denied.[4]

---

retained by PDVSA counsel unconnected to Guaidó or the Ad Hoc Board of PDVSA, the Court is left with the inevitable conclusion that they were retained by someone who was appointed by, or who is otherwise associated with, Maduro.

[4] The Court assumes the reader's familiarity with the factual background and the analysis in the Court's May 11, 2021 order granting White & Case's motion to substitute,

**DISCUSSION**

Strict standards govern motions for reconsideration and interlocutory appeal, which should be granted only in exceptional and rare circumstances.  Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  Similarly, motions for an interlocutory appeal are generally denied because "only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 529-30 (S.D.N.Y. 2014) (internal quotations marks, alteration, and citation omitted).  In fact, the Second Circuit urges "district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992). This case presents none of those circumstances, and Flynn and Jiménez therefore have not met the lofty standards necessary for reconsideration or interlocutory appeal. [5]

---

*see* Docket Item 78.  A more complete recitation of the facts can be found in that decision.

[5] As a threshold matter, White & Case argues that Flynn and Jiménez were without authority to file their motion because this Court terminated them as attorneys of record for PDVSA and its subsidiaries and struck their appearances from the record. Docket Item 87 at 2-3.  White & Case asks the Court to deny the motion on that ground alone.  *Id.*  Because the Court finds that Flynn and Jiménez have not met the high standard for a motion to reconsider or for certification of an interlocutory appeal, that clever but somewhat circular argument is moot, and this Court therefore does not address it.

I.      **MOTION FOR RECONSIDERATION**

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Companies, Inc.,* 935 F.3d 49, 54 (2d Cir. 2019). Therefore, a motion to reconsider must provide a compelling reason why the court should revisit a prior decision. For example, reconsideration is appropriate when there is (1) a change in the controlling law, (2) newly discovered evidence, or (3) clear error or an obvious injustice the court must correct or prevent. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). On the other hand, reconsideration is not appropriate when a party simply does not like or disagrees with a decision and simply wants another bite of the apple. *See Reed v. Aqueon Prods.*, 2015 WL 506434, at *2 (W.D.N.Y. Feb. 6, 2015) (citing *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

Flynn and Jiménez do not argue that there is a change in controlling law or newly discovered evidence; instead, they assert that this Court committed clear error by misapplying Supreme Court precedent—*W.S. Kirkpatrick & Company v. Environmental Tectonics Corporation*, 493 U.S. 400 (1990)—and that it would be "manifestly unjust" to proceed with White & Case as counsel for PDVSA and the subsidiaries. Docket Item 81. Because this Court correctly applied *Kirkpatrick,* and because Flynn and Jiménez do not offer anything more than they offered the first time around, their motion to reconsider is denied.

### A.     Clear Error in Applying *Kirkpatrick*

Flynn and Jiménez fault this Court for overlooking *Kirkpatrick* and improperly applying the act of state doctrine.  *Id.* at 4-5.  *Kirkpatrick*, they say, held that "federal courts should not invoke the act of state doctrine unless the court '*must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign.'"  *Id.* at 4 (emphasis in original) (quoting *Kirkpatrick*, 493 U.S. at 406).  Here, they argue, the outcome of this case turns not on any official action by the Venezuelan sovereign but on whether Caballero can establish that PDVSA was an "agency or instrumentality" of FARC.[6]  *Id.* at 5.

Flynn's and Jiménez's argument misses the point.  To decide White & Case's motion—that is, to decide who represents parties in this Court—this Court necessarily had to decide "the effect of official action by a foreign sovereign."  *See Kirkpatrick*, 493 U.S. at 406.   More specifically, as this Court explained in its prior order, to determine who would represent the intervenors in this case, the Court had to decide whether Guaidó's appointment of the Ad Hoc Board was a valid act of state or whether Maduro and his appointees retained control of Venezuela and therefore PDVSA.  *See* Docket Item 78 at 14-16.

*Kirkpatrick* was markedly different.  In *Kirkpatrick*, one company sought damages from another under the Racketeer Influenced and Corrupt Organizations Act ("RICO") because of bribes allegedly paid to Nigerian officials to secure a government contract.

---

[6] Flynn and Jiménez made these same arguments against the application of the act of state doctrine in their briefing on the motion to substitute, *see* Docket Item 65 at 11, 17, and this Court considered and rejected those arguments in its prior order, too, *see* Docket Item 78 at 11, 14-16.

493 U.S. at 402.  The defendant argued that the act of state doctrine barred the action because the facts necessary to establish the RICO claim also would establish that the contract was illegal under Nigerian law and could result in embarrassment to the foreign government.  *Id.* at 406-08.  But the Supreme Court found that the act of state doctrine was not implicated because nothing in the case "require[d] the Court to declare invalid . . . the official act of a foreign sovereign."  *Id.* at 405 (citation omitted).  In other words, deciding an issue in the case did not require deciding the effect of an official act by a foreign sovereign, there Nigeria, and so the act of state doctrine was not implicated.  *Id.*

Not so here.  Unlike *Kirkpatrick*, this is not a case where the court's findings might indirectly suggest the invalidity of a foreign sovereign's action.  *See id.* at 405.  Here, this Court necessarily had to decide whether Guaidó's appointment of the Ad Hoc Board was a valid act of state or whether Maduro retained the authority to control PDVSA.  Indeed, the Court's decision hinged precisely on that very issue.

In sum, to resolve the motion to substitute, this Court had to decide who was properly retained to represent PDVSA and the subsidiaries.  Docket Item 78 at 14.  That, in turn, required the Court to decide who controlled PDVSA and could retain counsel on its behalf.  And that required the Court to decide who had the authority to appoint the board of the state-owned company—that is, to decide who was the legitimate leader of Venezuela's government.  *Id.*  The political question doctrine therefore required this Court to recognize the leader already recognized by the Executive Branch—Guaidó—as the head of the legitimate government in Venezuela.  *Id.* (citing *Jiménez v. Palacios*, 2019 WL 3526479, at *11 (Del. Ch. Aug. 2, 2019), *aff'd*,

237 A.3d 68 (Del. 2020)).[7]  And the act of state doctrine then required this Court to recognize Guiadó's appointment of the Ad Hoc Board as valid.  *Id.* at 14-15.

### B.   Manifest Injustice and Denial of Due Process

Flynn and Jiménez urge this Court to reconsider its prior order for a second reason: to prevent "manifest injustice" to PDVSA and its subsidiaries.  Docket Item 81 at 5-9.  They argue that granting the motion to substitute denies PDVSA's right to due process which necessarily includes the right to present evidence and to choose counsel.  *Id.*

Those arguments are identical to the arguments Flynn and Jiménez made in their earlier briefs, *see* Docket Item 65 at 6-9, 12-13; Docket Item 77 at 2-4, and this Court

---

[7] Flynn and Jiménez attempt to distinguish *Jiménez v. Palacios* because the ultimate relief sought there was a declaratory judgment that the directors of PDVSA, not the Ad Hoc Board, constituted the legitimate board, while the ultimate relief sought here is the turnover of PDVSA's and the subsidiaries' assets.  Docket Item 81 at 5.  But the application of the act of state doctrine does not turn on the *ultimate* relief sought; rather, it looks to whether the Court necessarily must decide the legitimacy of a foreign sovereign's action in rendering a decision.  Here, to decide who represents PDVSA and its subsidiaries—something this Court necessarily must decide for this case to proceed—this Court necessarily must choose the legitimate leader of the Venezuelan government so that it can honor the official act of that legitimate leader.  If it is Maduro, then his appointment of general counsel is valid, and Flynn and Jiménez, the attorneys retained by general counsel, are counsel of record; if it is Guaidó, then his appointment of the Ad Hoc Board is valid, and White & Case represents the intervenors.  There is no way around that decision and no way to decide the issue without deciding Venezuela's legitimate leadership and thus who compromises the PDVSA board.  So the political question doctrine resolves the first question:  Guaidó is the legitimate leader of the Venezuelan government—at least as far as courts in the United Sates are concerned.  And ultimate issue or not, the act of state doctrine resolves the second question: "The Guaidó government's reconstitution of the PDVSA board was the official act of a recognized sovereign taken wholly within its own territory."  *Jiménez*, 2019 WL 3526479, at *13.

rejected those arguments in its prior order, *see* Docket Item 78 at 12-14.  As this Court

noted, the right-to-choose-counsel argument hinges on who has the right to choose, an

issue addressed above and at length in this Court's prior order.  *Id*.  And as this Court

also noted, the due process argument is a chimera because any obstacle to White &

Case's effective representation of PDVSA would be of PDVSA's and Maduro's own

making.[8]  *Id*.  Therefore, and because reconsideration is not appropriate when a party

simply dislikes or disagrees with a decision and seeks to reargue issues already

considered, *see Reed*, 2015 WL 506434, at *2 (citing *In re Houbigant*, 914 F. Supp. at

100), the motion to reconsider based on due process is denied.

## II.    INTERLOCUTORY APPEAL

Having found no reason to revisit its prior decision, this Court considers

Flynn's and Jiménez's request for an interlocutory appeal.  To be entitled to bring an

---

[8] Flynn and Jiménez repeatedly assert that this Court's decision leaves PDVSA and the subsidiaries with a "Hobson's choice": (1) risk their assets by following Venezuelan law that prohibits PDVSA from working with the Ad Hoc Board and its counsel or (2) violate Venezuelan law by cooperating with the Ad Hoc Board and its counsel to protect PDVSA's assets.  Docket Item 81 at 2, 8-9.  At the same time, they insist that accepting their due process argument would not require this Court to accept the Venezuelan Supreme Tribunal of Justice Constitutional Court's ruling that the Transition Statute and Ad Hoc Board were unconstitutional and void as a valid act of state.  *Id.* at 8-9.  That is simply incorrect.  Flynn's and Jiménez's due process argument hinges on a violation of Venezuelan law based precisely on the Constitutional Court's ruling.  Therefore, accepting their argument would necessarily require the Court to accept that ruling as valid.  But as previously explained by this Court, it cannot.  Docket Item 78 at 15.  Guaidó's appointment of the Ad Hoc Board and the Transition Statute were valid acts of state that "must be accepted by this Court as valid," and judicial inquiry into Venezuelan law is "neither necessary nor appropriate" under the circumstances here.  *See Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988).  And the act of state doctrine applies only to official acts taken by recognized sovereigns—which Maduro and the Constitutional Court are not, at least in the United States.  *See* Docket Item 78 at 6 n.5, 15.

interlocutory appeal in federal court, the aggrieved party must show that the appeal involves a controlling question of law about which there is a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  But even that may not be enough: even if these criteria appear to be met, "[d]istrict courts [ ] have independent and unreviewable authority to deny certification."  *Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 440 (W.D.N.Y. 2017).  And that is because "[i]nterlocutory appeals are strongly disfavored in federal practice."  *In re Adelphia Commc'ns Corp.*, 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008); *see Westwood Pharm.*, 964 F.2d at 89 ("[W]e urge the district courts to exercise great care in making a § 1292(b) certification.  For after all, the district courts are presumed to be more familiar with a case than is the court of appeals prior to briefing and argument.")

Here, Flynn and Jiménez have not demonstrated that there is substantial ground for a difference of opinion.  They argue that the issues in the motion to substitute are particularly difficult and of first impression.  Docket Item 81 at 10.  But "the mere fact that a disputed issue is a question of first impression is insufficient to demonstrate substantial grounds for a difference of opinion."  *N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, 1993 WL 255101, at *2 (S.D.N.Y. July 1, 1993).  What is more, the political question and act of state doctrines are well-settled principles of law, this Court carefully applied them, and the application of well-settled principles of law does not amount to good reason for an interlocutory appeal.  *See, e.g., In re MTBE Prod. Liab. Litig.*, 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005).

In fact, aside from their assertion that this issue is one of first impression and difficult to resolve, Flynn and Jiménez provide no substantial basis to doubt this Court's prior decision.  Their argument is little more than disagreement with this Court's prior order and doubling down that this Court's previous ruling was incorrect.  *See, e.g.,* Docket Item 89 at 8-9 ("The act of state doctrine does not apply here because the *outcome* of this case does not turn upon the effect of official action by a foreign sovereign. . . . [T]he *Impact Fluid Solutions* [*v. Bariven*, No. 4:19-cv-652, Docket Item 55 (S.D. Tex. May 20, 2020)] decision is in direct conflict with the Supreme Court's holding in *Kirkpatrick*.").  But "[a] claim that the district court's opinion was incorrect does not, standing alone, support a finding of a substantial ground for a difference of opinion." *N.F.L. Ins. Ltd. By Lines*, 1993 WL 255101, at *2.

Moreover, contrary to their assertion, Flynn and Jiménez have not shown that an immediate appeal may materially advance the ultimate termination of this case and avoid protracted litigation.  They argue that an interlocutory appeal would better advance the litigation because they and those who retained them, not White & Case and the Ad Hoc Board, have control of and access to PDVSA's operations, documents, and witnesses.  Docket Item 81 at 10.  But as this Court observed in its prior order, "White & Case . . . is 'ready, willing, and able to mount a full-throated defense of [its clients'] interests in this action.'"   Docket Item 78 at 17 (alteration in original) (quoting Docket Item 67 at 2).  And as noted above, whoever has de facto control over PDVSA's

operations and documents can—either directly or through counsel it has chosen—

provide access to the attorneys that the Court has authorized to handle the case.[9]

       Therefore, this Court declines to certify its order granting substitution of counsel

for interlocutory appeal.

---

       [9] The Court recognizes that the realities of the political situation in Venezuela may present obstacles to the Ad Hoc Board's access to PDVSA's operations and documents. But that does not change the fact that this problem is of Maduro's and PDVSA's own making and that it might be resolved in this case by cooperation between the United States lawyers chosen by each of the dueling factions. Nor does it permit this Court to ignore the fact that the Executive Branch has recognized Guaidó and that the Ad Hoc Board's appointment therefore was a valid act of state. And as for practical considerations based on political realities, the Court must assume "that the President was apprised of and counseled on the practical ramifications of recognizing the Guaidó [g]overnment, including those presented in this motion." *Bariven*, No. 4:19-cv-652, Docket Item 55 at 14 ("This Court, nor any other court for that matter, is simply not situated to determine the proper balance of the practical considerations []. As the Supreme Court has explained, 'most federal judges [do not] begin the day with briefings that may describe new and serious threats to our Nation and its people.' *Boumediene v. Bush*, 553 U.S. 723, 797 (2008). Members of the Executive Branch do.").

**CONCLUSION**

Because Flynn and Jiménez have failed to demonstrate the exceptional and rare circumstances that would justify reconsideration or an interlocutory appeal, their motion to reconsider this Court's May 11, 2021 order, or, in the alternative, to certify that order for interlocutory appeal, Docket Item 81, is DENIED.


SO ORDERED.


Dated:   January 7, 2022
         Buffalo, New York




   */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE