## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO CABALLERO, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No.: 1:20-mc-00040-LJV |
| | ) |
| FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, a/k/a FARC-EP, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DE VALLE CARTEL, | ) ) ) ) ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## PETRÓLEOS DE VENEZUELA, S.A. AND ITS SUBSIDIARIES'
## BRIEF IN SUPPORT OF INVITING THE VIEWS OF THE UNITED STATES

**WHITE & CASE**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Petróleos de Venezuela, S.A., Aceites y Solventes Venezolanos Vassa S.A., PDV Marina S.A., Petroanzoategui S.A. (a/k/a Petro San Felix S.A.), Venfleet Asphalt Ltd., Venfleet Ltd., and Venfleet Products Ltd.*

February 10, 2022

## <u>TABLE OF CONTENTS</u>

ARGUMENT ..................................................................................................................1

I.   The Court Should Invite The Views Of The United States On The Effect This Action
     May Have On The Foreign Policy Of The United States ....................................................1

II.  The Court Should Invite The Views Of The United States On The Jurisdictional Issues
     Raised In The Motion To Vacate...........................................................................................4

III. The Court Should Invite The Views Of The United States On The Service-Related
     Issues Raised In The Motion To Vacate ...............................................................................8

IV.  The Court Should Invite The Views Of The United States On Vacatur Of The Default
     Judgment As To M&T Bank................................................................................................10

V.   The Court Should Invite The Views Of The United States On Plaintiff's Novel
     Application Of TRIA ...........................................................................................................12

VI.  The Court Should Invite The Views Of The United States On Whether Plaintiff's
     Underlying Default ATA Judgment Against The FARC Is Void.......................................14

CONCLUSION.............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) .........................................................................................................5

*Bank Melli Iran N.Y. Representative Off. v. Weinstein*,
    564 U.S. 1003 (2011).......................................................................................................4

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
    137 S. Ct. 1312 (2017).....................................................................................................4

*Calderon-Cardona v. Bank of N.Y. Mellon*,
    770 F.3d 993 (2d Cir. 2014)...........................................................................................13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    No. 1:17-mc-00151, ECF No. 154 (D. Del. Dec. 12, 2019) ...........................................2

*Dayton v. Czechoslovak Socialist Republic*,
    834 F.2d 203 (D.C. Cir. 1987)........................................................................................15

*Figueiredo Ferraz e Engenharia de Projeto Ltda v. Republic of Peru*,
    665 F.3d 384 (2d Cir. 2011).............................................................................................5

*FG Hemisphere Assocs. v. Democratic Republic of Congo*,
    447 F.3d 835 (D.C. Cir. 2006)........................................................................................10

*Impact Fluid Sols. LP v. Bariven SA*,
    No. 4:19-cv-00652, ECF No. 39 (S.D. Tex. Nov. 8, 2019) .............................................2

*In re Islamic Republic of Iran Terrorism Litig.*,
    659 F. Supp. 2d 131 (D.D.C. 2009) .................................................................................5

*Kirschenbaum v. 650 Fifth Avenue*,
    830 F.3d 107 (2d Cir. 2016).............................................................................................7

*Kirschenbaum v. Assa Corp.*,
    934 F.3d 191 (2d Cir. 2019)...........................................................................................13

*McKesson Corp. v. Islamic Republic of Iran*,
    539 F.3d 485 (D.C. Cir. 2008)..........................................................................................5

*Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
    No. 1:19-cv-10023, ECF No. 144 (S.D.N.Y. Jun. 25, 2020)...........................................2

*Republic of Arg. v. NML Capital, Ltd.*,
  569 U.S. 916 (2013)........................................................................................4

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)........................................................................................8

*Republic of Sudan v. Harrison*,
  138 S. Ct. 293 (2017).......................................................................................4

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*,
  No. 21-7019, 2022 WL 211221 (D.C. Circ. Jan. 25, 2022)................................9, 10

*Stansell v. Revolutionary Armed Forces of Colombia*,
  704 F.3d 910 (11th Cir. 2013) ........................................................................12

*Sumitomo Shoji Am. v. Avagliano*,
  457 U.S. 176 (1982)........................................................................................9

*Weinstein v. Islamic Republic of Iran*,
  609 F.3d 43 (2d Cir. 2010)..............................................................................7

## STATUTES AND RULES

28 U.S.C. § 516..................................................................................................4

28 U.S.C. § 517..................................................................................................1

28 U.S.C. § 1603...............................................................................................13

28 U.S.C. § 1605.............................................................................................5, 7

28 U.S.C. § 1605A........................................................................................5, 6, 7

28 U.S.C. § 1608.........................................................................................5, 9, 11

28 USC § 1610...................................................................................................1

CPLR § 5232.....................................................................................................9

Fed. R. Civ. P. 4................................................................................................9

Fed. R. Civ. P. 19..............................................................................................7

## TREATIES

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil
  or Commercial Matters, November 15, 1965, 20 U.S.T. 361...........................8, 9, 10

## BRIEFS FOR THE UNITED STATES

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
No. 15-243 (U.S. Aug. 2016).......................................................................................4

*Calderon-Cardona v. Bank of N.Y. Mellon*,
No. 12-75, ECF No. 210 (2d Cir. Sept. 21, 2012) ...........................................12, 14

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
No. 1:10-cv-08470, ECF No. 62 (S.D.N.Y. May 27, 2011)....................................8

*Harrison v. Republic of Sudan*,
No. 16-1094 (U.S. Aug. 2018)..................................................................................8

*Hausler v. JP Morgan Chase Bank, N.A.*,
No. 12-1264, ECF No. 133 (2d Cir. Jul. 9, 2012)..................................................14

*Jesner v. Arab Bank, PLC*,
No. 16-499 (U.S. Jun. 2017) ...................................................................................15

*Levin v. Bank of N.Y.*,
No. 1:09-cv-05900, ECF No. 1007 (S.D.N.Y. Jul. 24, 2014)..................................4

*Levin v. Wells Fargo Bank, N.A.*,
No. 21-7036 (D.C. Cir. Jan. 21, 2022)...................................................................14

*Owens v. Republic of Sudan*,
No. 1:01-cv-02244, ECF No. 69 (D.D.C. Apr. 12, 2004).......................................11

*Practical Concepts, Inc. v. Republic of Boliv.*,
No. 85-6001 (D.C. Cir. Jan. 7, 1987)......................................................................10

*Rubin v. Islamic Republic of Iran*,
No. 1:03-cv-09370, ECF No. 20 (N.D. Ill. July 28, 2004) ....................................12

*Stansell v. Mercurio Int'l S.A.*,
Nos. 11-11125 (11th Cir. Sept. 7, 2011).................................................................12

*United States v. Assa Co.*,
No. 17-3658, ECF No. 105 (2d Cir. Aug 31, 2018) ...........................................7, 13

## MISCELLANEOUS

OFAC, Frequently Asked Question No. 660 .....................................................................2

Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de
Venezuela, S.A., Jan. 28, 2019 ...................................................................................2

Pursuant to the Court's Order (ECF No. 101), PDVSA and its Subsidiaries submit this brief in support of their suggestion that the Court invite the views of the United States under 28 U.S.C. § 517. As the Court recognized at the January 26, 2022 status conference, this action raises issues that may "implicate foreign policy" and, without the views of the United States, could result in a decision from this Court "at odds with the Executive Branch . . . in ways that may cause concern for the" United States. Tr. 12:24-13:3. Indeed, Plaintiff's enforcement theory would not have been possible *but for* U.S. Executive Branch action to protectively block the assets of PDVSA and its Subsidiaries to preserve them for the people of Venezuela. The Executive Branch may therefore have a view on whether that protective blocking — under a non-terrorism sanctions program — places PDVSA's assets within the scope the Terrorism Risk Insurance Act ("TRIA") invoked by Plaintiff here. The United States may also have an interest in the many issues that this action raises under the Foreign Sovereign Immunities Act ("FSIA"), including the interplay between the FSIA and TRIA, which is codified in a note to one section of the FSIA. *See* 28 USC § 1610 note. Indeed, the United States has expressed its interest on many of the issues raised in the Motion to Vacate in other cases. Accordingly the Court should request the views of the United States, either on this action generally or on the specific questions identified below, each of which implicates weighty issues of U.S. foreign policy.

## ARGUMENT

## I.   THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON THE EFFECT THIS ACTION MAY HAVE ON THE FOREIGN POLICY OF THE UNITED STATES

As an initial matter, Nicolás Maduro's usurpation of the Presidency of Venezuela and the U.S. recognition of Interim President Guaidó and his Interim Government as the only legitimate government of Venezuela mean that U.S. litigations involving PDVSA — Venezuela's wholly owned national oil company — necessarily raise important U.S. foreign policy concerns. *See*

Decision & Order, ECF No. 78, at 3-6, 10 (describing political events in Venezuela and the deference owed to the U.S. Executive Branch in regard to the legal implications of those events). Several U.S. courts hearing such cases have therefore invited the views of the United States.  *See, e.g.*, Order, *Impact Fluid Sols. LP v. Bariven SA*, No. 4:19-cv-00652, ECF No. 39, at 2 (S.D. Tex. Nov. 8, 2019) (stating "the Court is hesitant to rule on this motion [to substitute counsel] without providing the federal government an opportunity to weigh in"); Mem. Order, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151, ECF No. 154, at 6 (D. Del. Dec. 12, 2019) (inviting views of U.S., including in consideration of the "[i]ssues of international affairs and U.S. foreign policy, which are within the purview of the Executive Branch"); Order, *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023, ECF No. 144, at 2 (S.D.N.Y. Jun. 25, 2020) (inviting views of U.S. on whether recognition of certain acts by the Venezuelan National Assembly is "consistent with the law and policy of the United States").

The U.S. foreign policy interests particular to this action are manifest.  In fact, the but-for cause of Plaintiff's attempt to hold PDVSA and its Subsidiaries liable for his default judgment against the FARC was the action of the U.S. Executive Branch to protectively block Venezuelan assets in support of Venezuela's transition to democracy.  *See* Mot. to Vacate 38-39 (citing OFAC, Frequently Asked Question No. 660, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/660); Reply 5, 16-17; *see also* Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A., Jan. 28, 2019, https://home.treasury.gov/news/press-releases/sm594 (stating that the blocking action was to "help prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela").  It was these protective blocking measures that gave Plaintiff reason to even attempt to use TRIA (albeit improperly) — which applies only to "blocked assets" — to hold PDVSA and its Subsidiaries

liable for his default ATA judgment against the FARC.  If successful, Plaintiff's action would thus frustrate the stated purpose of these U.S. Executive Branch actions by depriving the Venezuelan people of assets necessary to support the transition to democracy.

At the January 26 status conference, however, Plaintiff's counsel argued that this Court should ignore the stated purpose of the United States and instead infer that the Executive Branch condones this action because it blocked the assets of Venezuela and its Subsidiaries rather than "us[ing] different methods."  Tr. 15:17-19.  Additionally, Plaintiff's counsel suggested that the United States may be disinterested because Plaintiff's counsel "regularly communicate[s] with OFAC" and "occasionally send[s] them letters with [Plaintiff's] pleadings," yet the United States had not appeared to state its views.  Tr. 10:10-17.  But rather than encouraging the Court to seek the presumed confirmatory views of the United States — whose actions Plaintiff contends purportedly "ma[de] the assets available to victims of terrorism" — Plaintiff's counsel insists that there is "nothing for the[ United States] to give an opinion on."  Tr. 11:6-7, 15:22-24.  Certainly the United States may decline to express its views at this stage of the proceedings, but there is demonstrably no downside to this Court requesting the views of the United States within a set period of time.

In any event, Plaintiff's counsel's insistence that inviting the views of the United States would be "futile" (Tr. 16:12) reveals his narrow conception of the issues at play here.  The interests of the United States in this action reach well beyond OFAC, a single office within the U.S. Treasury Department, responsible for administering the economic sanctions regime applicable to PDVSA and its Subsidiaries.  An invitation from this Court would alert not only OFAC to the important issues of national and international concern implicated by this action, it would initiate the U.S. Department of Justice's "process for deciding whether to file a Statement of Interest[,

which] involves coordination among multiple government agencies."   Ltr. from U.S. Atty. S.D.N.Y., *Levin v. Bank of N.Y.*, No. 1:09-cv-05900, ECF No. 1007, at 1 (S.D.N.Y. Jul. 24, 2014); *see also* 28 U.S.C. § 516 (reserving to Justice Department "the conduct of litigation in which the United States . . . is interested").  The Court should therefore invite the views of the United States so the Court may hear directly from the Executive Branch if it wishes, at this stage, to express its views on the important foreign policy considerations present here.

## II.   THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON THE JURISDICTIONAL ISSUES RAISED IN THE MOTION TO VACATE

Beyond the U.S. foreign policy concerns here specific to Venezuela, the United States has "significant foreign policy interests in ensuring that the statutory provisions governing foreign sovereign immunity are properly interpreted and applied."  U.S. Br., *Bennett v. Islamic Republic of Iran*, No. 1:03-cv-01486, ECF No. 34, at 11 (D.D.C. July 18, 2008); *see also* U.S. Br., *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, No. 15-243, at 1 (U.S. Aug. 2016) (describing the U.S.'s "substantial interest" in cases involving "application of the FSIA's jurisdictional provisions," which have "implications for the treatment of the United States in foreign courts and for its relations with other sovereigns").  Importantly, the Supreme Court has expressly stated that it pays "special attention" to the United States' "views on sovereign immunity," including because the U.S. State Department "helped to draft the FSIA's language." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017).  Thus, as a matter of course, the Supreme Court invites the views of the United States in cases implicating issues of foreign sovereign immunity. *See, e.g.*, *Republic of Sudan v. Harrison*, 138 S. Ct. 293 (2017) (inviting the views of the United States); *Republic of Arg. v. NML Capital, Ltd.*, 569 U.S. 916 (2013) (same); *Bank Melli Iran N.Y. Representative Off. v. Weinstein*, 564 U.S. 1003 (2011) (same).  And lower courts have routinely followed suit. *See, e.g.*, *Figueiredo Ferraz*

4

*e Engenharia de Projeto Ltda v. Republic of Peru*, 665 F.3d 384, 389 (2d Cir. 2011) (noting

invitation of U.S. views); *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 491 (D.C.

Cir. 2008) (directing district court to invite U.S. views); *In re Islamic Republic of Iran Terrorism*

*Litig.*, 659 F. Supp. 2d 131, 137 (D.D.C. 2009) (inviting views of U.S., which "generally provides

the kind of broader perspective that this Court must have when addressing cases against foreign

sovereigns").  This Court should follow suit and invite the views of the United States on the issues

of subject matter and personal jurisdiction, including under the FSIA, raised in the Motion to

Vacate.

Specifically, under binding Supreme Court and Second Circuit precedent, Plaintiff was

required to establish an independent basis for this Court's jurisdiction for his action to hold third

parties PDVSA and its Subsidiaries liable for his default judgment against the FARC.  *See* Mot. to

Vacate 14 (citing *Peacock v. Thomas*, 516 U.S. 349, 357 (1996); *Epperson v. Entm't Express, Inc.*,

242 F.3d 100, 104 (2d Cir. 2001)); Reply 1-2.  As to PDVSA, "the FSIA provides 'the sole basis

for obtaining jurisdiction' in U.S. courts."  Mot. to Vacate 14 (quoting *Argentine Republic v.*

*Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)).  Thus, to establish this Court's

jurisdiction, Plaintiff was required to bring a new action based on one of the FSIA's exceptions to

PDVSA's presumptive immunity from suit, and then to serve PDVSA in accordance with the

FSIA's express service provisions under 28 U.S.C. § 1608.  *See* Mot. to Vacate 8-18; Reply 2-7.

Additionally TRIA — which is part of the FSIA and on which Plaintiff purports to rely —

is limited, as to foreign states, to cases in which the foreign state "is not immune under section

1605A," i.e., the FSIA's terrorism exception (previously codified as § 1605(a)(7)).  TRIA

§ 201(a).  In turn, both TRIA and the FSIA's terrorism exception are limited to foreign states that

the U.S. Executive Branch has "designated as a state sponsor of terrorism."  TRIA § 201(d); 28

U.S.C. § 1605A(a)(2)(A).  Thus, prior to obtaining his *ex parte* order purporting to establish PDVSA's liability for Plaintiff's default judgment against the FARC, the ensuing writ, and his default turnover judgment as to M&T Bank, Plaintiff was required to establish by a preponderance of the evidence that PDVSA is not immune pursuant to the FSIA's terrorism exception.  Mot. to Vacate 17.  But Plaintiff could not and cannot do so, because Venezuela is not and has never been designated as a state sponsor of terrorism.  *Id.*

As a result of Plaintiff's failure to properly serve PDVSA (and its Subsidiaries), this Court was unfortunately denied the benefit of the adversarial process, which would have revealed these statutory infirmities in Plaintiff's action prior to the entry of the erroneous orders, writs, and turnover judgment.  Such briefing would have been especially useful because this action presents an entirely novel application of TRIA devised by Plaintiff and similarly situated FARC judgment creditors after the United States protectively blocked Venezuelan assets.  This action, and these other TRIA actions involving Venezuelan assets, are the first of their kind in which a judgment creditor of a non-state terrorist party has attempted to use TRIA to satisfy a judgment from assets of a foreign state or its agencies or instrumentalities, each of which enjoys presumptive immunity under the FSIA.  *See* Mot. to Vacate 17-18.  In every TRIA case involving assets of an "agency or instrumentality" of a foreign state, the judgment debtor was itself a foreign state designated as a state sponsor of terrorism.  *See* Mot. to Vacate 15-16 (collecting cases).

Plaintiff insists the FSIA is "no obstacle" to Plaintiff's effort to hold PDVSA liable for his default judgment against the FARC.  Opp., ECF No. 90, at 9; *see* Reply 2-4.  But Plaintiff's assertion is based on the misconception that TRIA's Section 201(a) language, "notwithstanding any other provision of law," swallows whole the comprehensive and exclusive jurisdictional framework in the FSIA.  *See* Reply 1, 2-4.  However, as the United States has explained in a

number of briefs, "TRIA's 'notwithstanding' clause should not work like 'legal kryptonite.'" U.S. Br., *United States v. Assa Co.,* No. 17-3658, ECF No. 105, at 307 (2d Cir. Aug 31, 2018) ("U.S. *Assa Co.* Br."). Rather, "the fact that the TRIA deals with 'blocked assets of a terrorist party,' strongly suggests that the focus of the TRIA's 'notwithstanding' clause is on other legal mechanisms within the FSIA that interfere with law concerning blocked assets, such as presidential waivers." *Id.*; *see* Reply 4.

Plaintiff also misplaces reliance on a number of inapposite cases — in particular, *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), and *Kirschenbaum v. 650 Fifth Avenue*, 830 F.3d 107 (2d Cir. 2016). *See* Reply 3-4 (citing Opp., ECF No. 90, at 24). But *Weinstein* and *Kirschenbaum* both involved efforts by plaintiffs with underlying FSIA § 1605A or § 1605(a)(7) default judgments against Iran, a designated state sponsor of terrorism, to enforce those judgments against Iran's assets. *See id.*; *see also* Resp. to Notice of Supp. Auth., ECF No. 99, at 7-8. Here, there is no underlying default judgment against Venezuela, nor could there be, where the United States has never designated Venezuela as a state sponsor of terrorism. The United States can lend its expertise on these matters to aid the Court's analysis.

The views of the United States are equally relevant as to whether this action may proceed against PDVSA's Subsidiaries whose Venezuelan assets are also protectively blocked under the U.S. Venezuelan sanctions program. For example, if the Court found PDVSA and its assets immune under the FSIA, dismissal of the action against the Subsidiaries' assets would be mandatory, because PDVSA is a necessary and indispensable party to an adjudication concerning those assets and PDVSA could not be joined. *See* Fed. R. Civ. P. 19. In particular, Plaintiff alleged *no facts* purporting to connect the Subsidiaries directly to the FARC and instead relied on the bare and conclusory allegation that each Subsidiary was an "agency or instrumentality" of the FARC

solely because PDVSA was allegedly such an entity and PDVSA majority owns the Subsidiaries. *See* Mot. to Vacate 7, 18, 35-37; Reply 15.  Given that Plaintiff's entire theory of liability as to the Subsidiaries depends on an adjudication concerning PDVSA, an immunity determination as to PDVSA would require complete dismissal.  *See* Mot. to Vacate 36; *Republic of Philippines v. Pimentel*, 553 U.S. 851, 868-69 (2008) (holding "privilege" of sovereign immunity would be "much diminished . . . if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in the sovereign's absence and over its objection").

## III.   THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON THE SERVICE-RELATED ISSUES RAISED IN THE MOTION TO VACATE

The United States has a substantial interest in service-related issues under the FSIA and treaties to which the United States is a party.  *See* Mot. to Vacate 21-25; Reply 8-11.  Rather than comply with the mandatory service requirements of the FSIA and the Hague Service Convention, Plaintiff proceeded *ex parte* to obtain orders shifting liability for his default ATA judgment against the FARC onto PDVSA and its Subsidiaries and then purported to serve PDVSA — but not the Subsidiaries — according to state garnishment law.  *See* Mot. to Vacate 7, 22-23.

The United States has expressed its "substantial diplomatic interests in ensuring that foreign states need not appear in domestic courts unless and until they are properly served under the FSIA, in a manner consistent with the United States' treaty obligations."  U.S. Br., *Harrison v. Republic of Sudan*, No. 16-1094, at 10 (U.S. Aug. 2018); *see also* U.S. Br., *Chettri v. Nepal Bangladesh Bank, Ltd.*, No. 1:10-cv-08470, ECF No. 62, at 3 (S.D.N.Y. May 27, 2011) (expressing the "important interest" of the U.S. "in ensuring that foreign states, along with their political subdivisions and agencies and instrumentalities, do not have to litigate suits against them in United States courts unless they have been properly served in accordance with the service provisions of

the FSIA").  And the views of the United States are entitled to "great weight" when it comes to interpreting U.S. treaty obligations, such as those under the Hague Service Convention.  *Sumitomo Shoji Am. v. Avagliano*, 457 U.S. 176, 185 (1982).

Here, Plaintiff was required to serve PDVSA under Rule 4(j)(1) of the Federal Rules of Civil Procedure, which points to § 1608(b) of the FSIA, and to serve the Subsidiaries under Rule 4(h)(2) and (f)(1), all of which point the Hague Service Convention, which does not permit service by mail in Venezuela.  *See* Mot. to Vacate 21; Reply 8-10.  Instead, Plaintiff purported to serve PDVSA pursuant to CPLR § 5232(c) by mailing the writ of execution as to M&T Bank to an address allegedly associated with PDVSA in Caracas.  *See* Mot. to Vacate 7.  There is no evidence that Plaintiff has ever attempted to serve the Subsidiaries.  *See id.* at 21-22.  This facially deficient (and, as to the Subsidiaries, nonexistent) service mandates vacatur of the *ex parte* orders, writs, and default turnover judgment, as discussed below.  *See* Mot. to Vacate 21-24; Reply 8-11.

Indeed, the D.C. Circuit has recently decided a highly relevant case regarding service in Venezuela under the Hague Service Convention that confirms vacatur is mandatory here.  *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 21-7019, 2022 WL 211221, at *3 (D.C. Circ. Jan. 25, 2022); *see also* Tr. 9:17-23 (discussing same).  Specifically, the D.C. Circuit reversed a default judgment enforcing an arbitral award against Venezuela where the petitioner in fact *had* attempted service pursuant to the Hague Service Convention, but failed to strictly comply with the Convention's requirements.  *Saint-Gobain*, 2022 WL 211221, at *3.  The D.C. Circuit explained that, to obtain a default judgment against a Venezuelan defendant, a plaintiff must (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) absent such a certificate, serve the defendant in a manner

9

consistent with Venezuelan law.  *See id.* at *1-2.  Plaintiff has done none of these things and the United States could assist, not only with the Court's analysis of the service regime, but with the significance of the interests of the United States in litigants adhering to this regime.  *See* Reply 8 (describing Plaintiff's concession that he failed to serve PDVSA and its Subsidiaries in accordance with the Hague Service Convention (citing Opp., ECF No. 90, at 29)).

## IV.   THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON VACATUR OF THE DEFAULT JUDGMENT AS TO M&T BANK

The United States has a particularly keen interest with regard to the entry of default judgments against foreign sovereigns.  The United States has stated that it is "in the interest of United States' foreign policy to encourage foreign states to appear before [U.S.] courts in cases brought under the FSIA."  U.S. Br., *Practical Concepts, Inc. v. Republic of Boliv.*, No. 85-6001, at 3 (D.C. Cir. Jan. 7, 1987).  Thus, U.S. interests counsel that, when a foreign state appears and asserts legal defenses after entry of a default judgment, "it is important that those defenses be considered carefully, and, if possible, that the dispute be resolved on the basis of all relevant legal arguments."  *Id.* at 3-4; *see also FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (stating the D.C. Circuit has "stressed a foreign sovereign's interest — and our interest in protecting that interest — in being able to assert defenses based on its sovereign status").

Due to Plaintiff's failure to comply with the service provisions of the FSIA and Hague Service Convention, Plaintiff's turnover judgment as to M&T Bank was improperly obtained in default.  *See* Mot. to Vacate 7-8; *see also* Turnover Judgment, ECF No. 35, at 2 n.2 (stating "PDVSA has not appeared in this action" and holding the Court's prior *ex parte* order (ECF No. 15) "therefore stands").  Likewise the *ex parte* orders, which purport to establish the liability of PDVSA and its Subsidiaries, are themselves tantamount to default judgments, as they were

obtained in the absence of PDVSA and its Subsidiaries, and thus must also be vacated.  *See* Mot. to Vacate 21-24; Reply 8-11.

Moreover, Plaintiff failed to comply with the requirements of § 1608(e) of the FSIA, which governs the entry of default judgments in respect of foreign states and their agencies and instrumentalities.  *See* Mot. to Vacate 10.  Under § 1608(e), prior to obtaining the *ex parte* order and the turnover judgment in default, Plaintiff was required to establish proper service, an exception to immunity, and liability and right to relief on a preponderance of admissible evidence. *Id.* at 31-32.  Thereafter, Plaintiff was required to properly serve a copy of the ensuing order and default judgment in accordance with the terms of § 1608(b).  *See id.* at 10.  Plaintiff did none of these things.

In terms of purported liability, the orders, ensuing writs, and turnover judgment were based on the inadmissible and insufficient declaration of a former U.S.-government official, John McBrien, which Plaintiff has since attempted to supplement with the equally deficient declaration of Otto Reich, another former U.S.-government official.  *See* Mot. to Vacate 31-37; Reply 15. Plaintiff's failure to meet basic evidentiary requirements — that are equally applicable in an FSIA case — necessarily implicates the interests of the United States.  *See* II, *supra*.  Moreover, this meager evidentiary showing implicates the demonstrated interest of the United States in the testimony of former Executive Branch officials, like McBrien and Reich.  *Cf.* U.S. Br., *Owens v. Republic of Sudan*, No. 1:01-cv-02244, ECF No. 69, at 3-6 (D.D.C. Apr. 12, 2004) (opposing efforts to depose declarants who were former executive branch officials because plaintiff failed to meet federal *Touhy* requirements that apply before officials may provide testimony).

Maintenance of the *ex parte* orders and default judgment thus implicates issues on which this Court would benefit from inviting the views of the United States.  If, however, the Court is

inclined to vacate these orders and default judgment now that PDVSA and its Subsidiaries are here (*see* Tr. 8:18-9:6), the views of the United States may not be required on this particular issue or, indeed, the applicable service requirements.

## V.   THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON PLAINTIFF'S NOVEL APPLICATION OF TRIA

The United States has expressed its strong interest in "judicial interpretations" of TRIA, which "can significantly impact the nation's foreign policy interests."  U.S. Br., *Calderon-Cardona v. Bank of N.Y. Mellon*, No. 12-75, ECF No. 210, at 2 (2d Cir. Sept. 21, 2012) ("U.S. *Calderon-Cardona* Br."); *see also* U.S. Mot., *Stansell v. Mercurio Int'l S.A.*, No. 11-11125, at 4-5 (11th Cir. Sept. 7, 2011) ("[T]he United States is deeply interested in ensuring that the Court properly understands TRIA's scope and meaning.").  As the United States has explained, TRIA operates "against the backdrop of United States economic sanctions programs, which serve as an important tool of foreign affairs and national security."  U.S. *Calderon-Cardona* Br. 2.  The application of TRIA in U.S. courts "thus can have important consequences for the Executive Branch's implementation of United States economic sanctions programs in the national interest." *Id.*; *see also* U.S. Br., *Rubin v. Islamic Republic of Iran*, No. 1:03-cv-09370, ECF No. 20, at 1 (N.D. Ill. July 28, 2004) (stating the U.S. "has a significant interest in ensuring that laws and regulations related to foreign economic sanctions are properly construed by the courts, since this may have a far-reaching impact," including "on the conduct of the foreign relations of the United States").

Given these interests and the complex statutory and regulatory backdrop against which TRIA operates, the United States has filed numerous briefs in TRIA-related cases and that courts hearing such cases have routinely adhered to the reasoning of those briefs.  *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 914-17 (11th Cir. 2013) (agreeing with

argument advanced by U.S. that the disputed assets were not "blocked assets" within the meaning of TRIA); *Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993, 1000-02 (2d Cir. 2014) (agreeing with argument advanced by U.S. that the disputed assets were not assets "of" the terrorist party and thus not available under TRIA). This fact alone undermines Plaintiff's contention that it would be "futile" (Tr. 16:12) for this Court to invite the views of the United States on these issues, which arise here in an entirely new legal context.

*First*, the Court should invite the views on the correct interpretation of the phrase "agency or instrumentality" in TRIA, which is a legal term of art defined in § 1603(b) of the FSIA. *See* Mot. to Vacate 25-31; Reply 11-13. Notwithstanding the Second Circuit's *Kirschenbaum* decision construing the phrase (*see* Mot. to Vacate 30-31), the views of the United States on this critical interplay between TRIA and the FSIA may be instructive. As described above, *Kirschenbaum* was decided in an entirely different context, and thus necessarily did not consider the problems created by Plaintiff's actions here. *See* Reply 13. Indeed, another panel of the Second Circuit recently noted "concerns" that, "if broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party institution" with "only incidental and perhaps unintentional involvement with a terrorist party." *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019); *see* Reply 5-6. The views of the United States on the proper construction of "agency or instrumentality" will undoubtedly assist the Court in resolving those concerns.

*Second*, the Court should invite the views with regard to the requirement under TRIA that the blocked assets to be attached be "blocked assets *of* that terrorist party." TRIA § 201(a) (emphasis added); *see* Reply 5-6 (citing U.S. *Assa Co.* Br. 303 (stating that, under TRIA, "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party")). Plaintiff, however, has not alleged or proved (nor can he) that the judgment debtor, the

FARC, has any direct or ultimate-beneficial ownership interest in the disputed assets.  *See* Mot. to Vacate 37-39; Reply 5-6, 15-17.  The United States has often focused the attention of courts on the importance of this ownership requirement under TRIA.  As recently as January 21, 2022, for example, the United States explained that, under TRIA, a plaintiff can execute only against assets "of" the judgment debtor.  U.S. Br., *Levin v. Wells Fargo Bank, N.A.*, No. 21-7036, at 19 (D.C. Cir. Jan. 21, 2022) ("U.S. *Levin* Br.").  This is consistent with the common law principle that "'a lienholder enjoys rights in property no greater than those of the debtor himself.'"  U.S. Br., *Hausler v. JP Morgan Chase Bank, N.A.*, No. 12-1264, ECF No. 133, at 18-19 (2d Cir. Jul. 9, 2012) ("U.S. *Hausler* Br."); *see also* Reply 6.  And "neither TRIA nor [the] FSIA abrogated 'traditional common-law principles governing the execution of judgments.'"  U.S. *Levin* Br. 19; *see also* U.S. *Hausler* Br. 19 (same).  Rather, as the United States has explained, the "statutory language reflects a legislative choice to focus TRIA attachment on the terrorist party itself, and not to authorize the unpredictable, varied, and potentially problematic effects that could arise if TRIA were read more broadly."  U.S. *Calderon-Cardona* Br. 15.  And the United States has warned that application of "TRIA's attachment provisions to the assets of third parties would improperly disregard this legislative determination, thereby both departing from the statute's text and causing harms including imposing potentially heavy costs on non-terrorist property owners whom Congress did not contemplate as sources for collection under TRIA."  *Id.*  In other words, even if the Court accepted Plaintiff's meaning of "agency or instrumentality" under TRIA, Plaintiff must still prove that the FARC has an ownership interest in the assets of PDVSA and its Subsidiaries.

## VI.    THE COURT SHOULD INVITE THE VIEWS OF THE UNITED STATES ON WHETHER PLAINTIFF'S UNDERLYING DEFAULT ATA JUDGMENT AGAINST THE FARC IS VOID

Plaintiff secured his default judgment against the FARC for injuries arising from his father's death in Colombia even though neither was a U.S. national at the time of Plaintiff's father's

death, as required to establish subject-matter jurisdiction under the ATA. *See* Mot. to Vacate 42-43 (citing 18 U.S.C. § 2333(a)). Because the issuing court lacked jurisdiction, the default judgment is void. *See* Mot. to Vacate 39, 44. The United States may therefore have an interest in the integrity of a default judgment being enforced against a sovereign entity such as PDVSA that was not party to the underlying action. The United States may also have an interest in opining as to the extraterritorial application of the ATA to claims such as Plaintiff's, which have no connection with the United States, and implicate important foreign relations concerns and questions of international law and practice. *Cf.* U.S. Br., *Jesner v. Arab Bank, PLC*, No. 16-499 (U.S. Jun. 2017) (stating that exterritorial application of U.S. law "can have implications for the Nation's foreign and commercial relations and for the enforcement of international law"). And the United States may also wish to opine on whether the assertion of jurisdiction for claims such as Plaintiff's conflict with international law and practice that the United States follows when it espouses the claims of U.S. nationals against foreign governments. *See, e.g. Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C. Cir. 1987) ("Under well-established principles of international law . . . the United States cannot espouse claims against foreign governments for injuries inflicted on persons who were not U.S. citizens at the time of injury." (citations omitted)). The Court should therefore invite the views of the United States as to whether Plaintiff's default ATA judgment against the FARC is void.

## **CONCLUSION**

For the foregoing reasons, and those stated in the Motion to Vacate and Reply, PDVSA and its Subsidiaries respectfully request that this Court invite the views of the United States generally on its Motion to Vacate, or in the alternative, on the specific questions detailed above.

Dated:  February 10, 2022

Respectfully submitted,

By: *s/ Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
White & Case LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com

*Counsel for PDVSA and its Subsidiaries*

16