# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO CABALLERO,<br><br>    Plaintiff,<br><br>v.<br><br>FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, a/k/a FARC-EP, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DE VALLE CARTEL,<br><br>    Defendants. | Case No.: 1:20-mc-00040-LJV |

## PETRÓLEOS DE VENEZUELA, S.A. AND ITS SUBSIDIARIES' OPPOSITION TO PLAINTIFF'S MOTION TO STAY

May 3, 2022

**WHITE & CASE**
701 Thirteenth Street, N.W.
Washington, D.C., 20005
(202) 626-3600

*Counsel for Petróleos de Venezuela, S.A., Aceites y Solventes Venezolanos Vassa S.A., PDV Marina S.A., Petroanzoategui S.A. (a/k/a Petro San Felix S.A.), Venfleet Asphalt, Ltd., Venfleet, Ltd., and Venfleet Products, Ltd.*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

Background ...........................................................................................................................2

      A.      This Action and Related TRIA Litigations ..............................................................2

      B.      The 9/11 proceedings regarding DAB's assets ........................................................7

Argument ...............................................................................................................................8

I.     A Stay Would Undermine Rather Than Promote Judicial Economy .................................9

II.    PDVSA Will Be Prejudiced By A Stay ...........................................................................12

III.   Plaintiff Will Incur No Prejudice If A Stay Is Denied......................................................13

IV.   The Requested Stay Is Immoderate And Thus Unlawful .................................................14

Conclusion ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Applestein v. Kleinhendler*,
  No. 20-CV-1454 (AMD) (VMS), 2021 WL 493424 (E.D.N.Y. Feb. 10, 2021) .................8, 14

*Caballero v. FARC*,
  No. 20-MC-0040-LJV, 2021 WL 307558 (W.D.N.Y. Jan. 29, 2021) ......................................12

*De Santis v. City of N.Y.*,
  10 Civ. 3508 (JPO), 2014 WL 228659 (S.D.N.Y. Jan. 22, 2014) ...........................................11

*Echevarria v. Diversified Consultants*,
  No. 13 CIV. 4980 LAK AJP, 2014 WL 1378081 (S.D.N.Y. Mar. 24, 2014) ........................14

*In re Walt Disney Co. Derivative Litig.*,
  No. 15452, 1997 WL 118402 (Del. Ch. Ct. Mar. 13, 1997)................................................9, 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..............................................................................................................9, 14

*McDonald v. Piedmont Aviation, Inc.*,
  625 F. Supp. 762 (S.D.N.Y. 1986) ...........................................................................................8

*Musket Corp. v. PDVSA Petroleo, S.A.*,
  512 F. Supp. 2d 155 (S.D.N.Y. 2007)....................................................................................13

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019)..............................................................................................................9

*Ronar, Inc. v. Wallace*,
  649 F. Supp. 310 (S.D.N.Y. 1986) .........................................................................................12

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999)..................................................................................................................9

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*,
  23 F.4th 1036 (D.C. Cir. 2022) ..............................................................................................10

*Scalia v. KDE Equine, LLC*,
  No. 19-CV-3389(KAM)(SJB), 2020 WL 4336395 (E.D.N.Y. July 28, 2020).........................8

*The Youngbloods v. BMG Music*,
  No. 07 CIV 2394 GBD KNF, 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) ....................9, 11, 14

*United States v. Askins & Miller Orthopaedics*,
    924 F.3d 1348 (11th Cir. 2019) ..........................................................................................11

Plaintiff's request for an indefinite stay is yet another example of forum manipulation and should be denied as such. Plaintiff asks this Court to indefinitely stay its decision on the fully briefed Motion to Vacate (ECF No. 85) filed by Petróleos de Venezuela, S.A. and its Subsidiaries (collectively, "PDVSA") in favor of an unrelated proceeding, *In re: Terrorist Attacks on September 11, 2001*, No. 1:03-md-1570 (S.D.N.Y.) (the "9/11 Action"), in which the stakeholders have not and may never appear to defend and provide the court with the benefit of full briefing from both sides.

The 9/11 Action involves enforcement attempts under the Terrorism Risk Insurance Act ("TRIA") to satisfy default judgments against the Taliban using assets in the United States of Afghanistan's central bank, Da Afghanistan Bank ("DAB"). Those proceedings, currently pending before a magistrate judge, did not begin until 11 months after Plaintiff's proceedings against PDVSA before this Court and after the Motion to Vacate here was fully briefed. Plaintiff and PDVSA are not parties in the 9/11 Action. And, most importantly, neither DAB nor any other potentially interested party has appeared to defend the sovereign reserves at issue or raise the TRIA arguments PDVSA asserts here.

Nevertheless, Plaintiff contends a stay pending those proceedings will promote "judicial efficiency," because this Court will have the benefit of decision by a coordinate federal court on one of the numerous issues raised in the Motion to Vacate. Mot., ECF No. 111, at 1, 2-3. But why this Court should stay its advanced proceedings in favor of a newly commenced enforcement action involving unrelated parties and proceeding in a default setting in a coordinate court can only be explained by blatant forum-shopping. Plaintiff's latest tactic exposes a long history of similar conduct that seeks to obtain favorable judgments by orchestrating one-sided advocacy that deprives U.S. courts of the benefit of the adversarial process. Indeed, Plaintiff

often cites as purported authority in this Court, the *ex parte* rulings he has obtained in PDVSA's absence due to ineffective service. This latest Motion is more of the same tactic, seeking to capitalize on the stakeholder's current absence in the 9/11 Action.

In pursuit of his forum-shopping strategy, Plaintiff previously relied on the pendency of the proceedings *in this Court* to obtain a stay of a similar proceeding involving PDVSA in the Southern District of Texas. And yet Plaintiff now asks this Court to defer to a third court in a proceeding in which PDVSA is not involved and the stakeholders might never appear. Moreover, Plaintiff's Motion fails to inform this Court that Plaintiff is also actively litigating similar issues against a different PDVSA subsidiary in the District of Connecticut, where the PDVSA subsidiary is currently represented by unauthorized counsel. (The issue of authorized counsel is pending on appeal in the Second Circuit.) Plaintiff has not sought a stay of the Connecticut action based on the 9/11 Action or for any other reason. Why? Because he is hedging his bets on which court might rule in his favor and he clearly prefers his odds in Connecticut and therefore needs to control the pace of this action, which is more advanced than any of the other actions at issue.

The Court should reject such gamesmanship out of hand and deny the Motion to Stay.

## BACKGROUND

### A.  This Action and Related TRIA Litigations

This action is the most advanced of numerous litigations involving Plaintiff's attempts to hold PDVSA and various of its subsidiaries liable for his default ATA judgment against the FARC. Despite Plaintiff's failure to properly serve PDVSA or its subsidiaries in this or any of his other actions (*see* Mot. to Vacate Mem. at 21-25), PDVSA and/or its subsidiaries have appeared in the four actions Plaintiff is or was actively prosecuting for purposes of obtaining vacatur of court orders and writs Plaintiff obtained *ex parte* and under seal and for other relief

similar to that sought by PDVSA in the Motion to Vacate. Plaintiff initiated his actions across the United States *ex parte* but, one by one, as PDVSA has appeared to assert its meritorious defenses, Plaintiff seeks to retreat from each action in favor of the action he perceives more advantageous to his interests.

1. **Proceedings before this Court**

In this action, as described more fully in the Memorandum in support of the Motion to Vacate (at 5-8), Plaintiff obtained *ex parte* orders from this Court on December 18, 2020 and January 29, 2021 designating PDVSA and each of its Subsidiaries as an "agency or instrumentality of FARC" and issuing writs of execution to attach assets purportedly belonging to PDVSA and its Subsidiaries. Decision & Order, ECF No. 15, at 11; Decision & Order, ECF No. 33, at 10-12. Plaintiff obtained these *ex parte* orders under seal in part on the basis of other *ex parte* orders he obtained in South Carolina state court (*see* ECF No. 19) and in the District of Connecticut (*see* ECF No. 27).

After appearing through duly authorized counsel, PDVSA initially moved to substitute unauthorized counsel and for a stay of proceedings because the political situation in Venezuela compromises PDVSA's ability to put forward its own evidence, upon vacatur, to rebut Plaintiff's allegations. *See* Mot. to Substitute & Stay, ECF No. 58, at 1. Plaintiff opposed both the substitution of counsel and the entry of a stay, characterizing the motion as "tactical delays" designed to "to stall proceedings." Pl.'s Opp. to Mot. to Substitute & Stay, ECF No. 66 at 2. Plaintiff argued that a stay of the proceedings was "inappropriate" because it would contravene "sacrosanct" legal principles and "run[] afoul of" the purported "Timing Cautions" — a phrase coined by Plaintiff's counsel and created from whole cloth. *Id.* at 2-3; *see* Tr. of Apr. 8, 2021 Hrg. 41:21 (admitting Plaintiff's counsel "coined" the phrase "Timing Cautions"). On May 11, 2021, the Court granted PDVSA's motion to substitute counsel, but denied the motion to stay.

*See* Decision & Order, ECF No. 78, at 16-17.

Pursuant to the Court's Order (*id.* at 18), PDVSA moved on June 25, 2021 "for an order setting aside the Court's Decisions & Orders dated December 18, 2020 (ECF No. 15) and January 29, 2021 (ECF No. 33), quashing the writs of execution issued pursuant to these orders, and vacating the Turnover Judgment dated January 29, 2021 (ECF No. 35)." Mot. to Vacate at 1. The Motion to Vacate was fully briefed as of August 10, 2021. *See* Mot. to Vacate Reply; *see also* ECF Nos. 92, 93, 94, 95, 99, 100, 110 & 114 (supplemental authorities related to the Motion to Vacate and responses and replies thereto).

Following a status conference on January 26, 2022, and supplemental briefing regarding PDVSA's suggestion that the Court invite the views of the United States under 28 U.S.C. § 517 (ECF Nos. 103, 104 & 105), the Court "invite[d] the United States to submit a brief as amicus curiae." ECF No. 106 at 4. On March 21, the Court granted the United States' request to extend its time to respond to the Court's invitation until April 18, 2022. ECF No. 109. On April 18, before the United States responded to the invitation, Plaintiff filed the present Motion. The United States thereafter notified the Court that, due in part to "Plaintiff's motion to stay this case . . . , the United States respectfully declines to file a Statement of Interest at this time," but requested "thirty days from the date that the Court" denies or lifts Plaintiff's requested stay "in order to file a notice informing the Court whether it will file a Statement of Interest in this matter." Notice by U.S., ECF No. 112, at 2.

2.   **Plaintiff's S.D. Tex. Action**

In *Caballero v. FARC*, No. 4:21-cv-01668 (S.D. Tex.) (the "S.D. Tex. Action"), following removal and consolidation, PDVSA moved on July 6, 2021 to (1) vacate a Texas state court order finding that PDVSA is an "agent[] and instrumentalit[y] of the FARC" and authorizing writs, (2) dissolve writs of garnishment issued pursuant to that order, (3) vacate of

4

the Texas state court's judgment in garnishment, and (4) dismiss the entire action with prejudice. *See* S.D. Tex. Action, ECF No. 34 at 36.

On July 19, 2021, Plaintiff moved to stay the S.D. Tex. Action "in favor of" this case, which he characterized as "related and more advanced" than the S.D. Tex. Action. S.D. Tex. Action, ECF No. 38 at 4. On March 31, 2022 — one day before Plaintiff filed the present Motion to Stay — that court entered an order staying the S.D. Tex. Action "pending ruling by Judge Lawrence J. Vilardo on the" Motion to Vacate. S.D. Tex. Action, ECF No. 60 at 1; *see also* Mot. at 3 (noting court stayed S.D. Tex. Action "pending proceedings in this Court").

### 3. Plaintiff's D. Conn. Action

In *Caballero v. FARC*, No. 3:20-cv-01939 (D. Conn.) (the "D. Conn. Action"), involving Alba Petróleos S.E.M. de C.V. ("ALBA"), a PDVSA subsidiary incorporated in El Salvador, ALBA moved to substitute undersigned counsel in place of Marcos Jiménez and his local counsel for purposes of "mov[ing] for vacatur of the turnover judgment for, among other reasons, insufficient service of process and lack of subject-matter and personal jurisdiction." D. Conn. Action, ECF No. 136 at 7. The order denying ALBA's motion to substitute is currently on appeal. *See* D. Conn. Action, ECF No. 170 at 1. Plaintiff is actively litigating in the D. Conn. Action, including filing on April 8, 2022, his response to a motion filed by Mr. Jimenéz purportedly on behalf of ALBA, that unabashedly cribbed heavily from undersigned counsel's briefing in this Court on the Motion to Vacate. *See* D. Conn. Action, ECF No 199. Plaintiff has, conspicuously, not moved to stay the D. Conn. Action.

### 4. Plaintiff's D.S.C. Action

In *Caballero v. FARC*, No. 3:20-cv-04485 (D.S.C.) (the "D.S.C. Action"), Plaintiff, PDVSA, and the garnishee there agreed to a stay on June 2, 2021, "[g]iven the pendency of" this action and the S.D. Tex. Action. D.S.C. Action, ECF No. 43 at 2; *see also* Mot. at 4 (indicating

5

D.S.C. Action is stayed pending further proceedings in S.D. Tex. Action "and this Court"). The D.S.C. Action involves assets allegedly belonging to PDVSA that are also at issue in the S.D. Tex. Action. If and when the stay is lifted in the D.S.C. Action, that court will first be required to resolve a motion to substitute counsel that undersigned counsel will file for PDVSA, as Mr. Jiménez has purported to appear for PDVSA there as well. *See* D.S.C. Action, ECF No. 43 at 1.

### 5. The *Stansell* interpleader actions in the S.D.N.Y.

Additionally, as described in PDVSA and its Subsidiaries' Response to Plaintiff's Notice of Supplemental Authority filed in this Court (ECF No. 114 at 1), Plaintiff and a number of PDVSA's subsidiaries are interpleader defendants in *Stansell v. FARC*, No. 1:16-mc-00405 (S.D.N.Y.) (the "*Stansell* Action"). The PDVSA subsidiaries there have moved to vacate the *Stansell* plaintiffs' orders and writs involving assets allegedly belonging to PDVSA's subsidiaries and have moved to dismiss the relevant interpleader complaints. *See Stansell* Action ECF Nos. 344 (motion to vacate) & 364 (motion to dismiss). The motions to vacate and dismiss were fully briefed on November 1, 2021 and January 7, 2022, respectively. *See* Mot. to Vacate Reply, *Stansell* Action, ECF No. 393; Mot. to Dismiss Surreply, *Stansell* Action, ECF No. 424. Briefing on Mr. Jiménez's purported authority to represent the PDVSA subsidiaries and a number of other Venezuelan entities there was completed on January 26, 2022. *See* Reply Br., *Stansell* Action, ECF No. 434. Both motions and the issue of Mr. Jiménez's unauthorized appearance are pending before a magistrate judge who will issue reports and recommendations subject to challenge before the district judge. Plaintiff has not moved to stay the *Stansell* Action. Plaintiff has a separate action against a number of PDVSA subsidiaries pending in the Southern District of New York (*Caballero v. FARC*, No. 1:20-mc-00249 (S.D.N.Y.)). He has not moved to stay that action either, although he is not yet actively prosecuting it as to the PDVSA subsidiaries there.

### B. The 9/11 proceedings regarding DAB's assets

As previously described in PDVSA and its Subsidiaries' Notice of Supplemental Authority filed in this Court (ECF No. 104 at 1), two groups of plaintiffs obtained writs of attachment against sovereign reserves in the United States belonging to DAB, in their attempts to satisfy the default judgments they hold against the Taliban. *See also* Notice by U.S., Ex. 1, ECF No. 112-1, at 11-12. Following Executive Branch action to protectively block DAB's assets, the United States filed a Statement of Interest identifying a number of legal issues relevant to the application of TRIA in regards of DAB's assets, including issues also raised to this Court by PDVSA in the Motion to Vacate. *See* ECF No. 104 at 1-3; *see also* Notice by U.S. at 1-2 (describing the 9/11 action as raising "closely related issues").

The magistrate judge presiding in the 9/11 Action has since lifted the stay of those proceedings as to the writs of attachment against the DAB's assets. *See* 9/11 Action, ECF No. 7717 at 1. And on March 20, 2022, each group of plaintiffs moved for turnover of DAB's assets, relying in part on this Court's *ex parte* Decision & Order and Turnover Judgment to support their argument that "agencies or instrumentalities of foreign governments can also constitute agencies and instrumentalities of an entirely separate terrorist party under TRIA." 9/11 Action, ECF No. 7764 at 23 (citing ECF Nos. 15 & 35); *see* 9/11 Action, ECF No. 7769 at 22 (same).

To date, neither the Taliban nor DAB has appeared to oppose the turnover motions or otherwise litigate in the 9/11 Action. The State of Afghanistan previously appeared to contest liability in a member case in the 9/11 multi-district litigation (*Faulkner v. Bin Laden,* No. 1:09-cv-07055-GBD-SN (S.D.N.Y.)), but lawyers for Afghanistan withdrew following the collapse of the Afghan government in the fall of 2021 and Afghanistan has not appeared in the actions relating to DAB's assets. *See* R. & R., 9/11 Action, ECF No. 7731, at 1-2 (describing appearance and withdrawal of counsel for Afghanistan).

Neither PDVSA nor any of its subsidiaries is a party to the 9/11 Action. Though in no way relevant to the Motion, Plaintiff points out (at 6-7) that undersigned counsel represents separate entities in the 9/11 multidistrict litigation with no connection to PDVSA or DAB. Specifically, Ms. DeLelle and Ms. Erb have appeared for the Republic of the Sudan, a defendant in certain member cases in the 9/11 Action unrelated to the DAB asset enforcement proceedings. Ms. Erb also represents Al Rajhi Bank, a defendant in a number of member cases in the 9/11 Action.

## ARGUMENT

Because entry of a stay is an "'intrusion into the ordinary processes of administration and judicial review,'" Plaintiff, as the moving party, "'bears the burden of establishing its need.'" *Applestein v. Kleinhendler*, No. 20-CV-1454 (AMD) (VMS), 2021 WL 493424, at *3 (E.D.N.Y. Feb. 10, 2021) (quoting *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012)). To meet his burden, Plaintiff must show that "considerations of judicial economy, fundamental fairness, and the orderly administration of justice" warrant a stay in favor of concurrent proceedings in a coordinate federal court. *McDonald v. Piedmont Aviation, Inc.*, 625 F. Supp. 762, 767 (S.D.N.Y. 1986); *see also Scalia v. KDE Equine, LLC*, No. 19-CV-3389(KAM)(SJB), 2020 WL 4336395, at *3 (E.D.N.Y. July 28, 2020) (describing the "general rule in the Second Circuit" that first filed of "competing cases" has priority absent "showing of balance of convenience" or "special circumstances"). And "a later-filed action" generally should not be stayed "unless the parties and issues of the concurrent actions are substantially identical." *McDonald*, 625 F. Supp. at 767. Finally, a stay request must be denied where its length is "immoderate and hence unlawful." *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936); *see also The Youngbloods v. BMG Music*, No.

07 CIV 2394 GBD KNF, 2011 WL 43510, at *6 (S.D.N.Y. Jan. 6, 2011) (same). Plaintiff cannot meet his burden on any factor and the stay should be denied.

## I. A STAY WOULD UNDERMINE RATHER THAN PROMOTE JUDICIAL ECONOMY

Having instituted and pursued *ex parte* actions around the country in parallel, Plaintiff cannot now credibly argue a stay is warranted under the guise of judicial economy. *See, e.g.*, *In re Walt Disney Co. Derivative Litig.*, No. 15452, 1997 WL 118402, at *3 (Del. Ch. Ct. Mar. 13, 1997) ("One must wonder what theory of judicial efficiency or comity would promote a rule that encourages plaintiffs' counsel to file in multiple jurisdictions, force defendants to commit resources from coast to coast, and then allow plaintiffs' counsel, at their own whim, to move the lines of battle after they have already begun to form?"). Far from promoting judicial efficiency, staying this action pending a report and recommendation in the 9/11 Action — which could be years in the making and would have no preclusive effect and little persuasive value — would result in needless delay for no meaningful gain..

A stay is particularly inefficient here because this Court may grant the Motion to Vacate without addressing any of the issues also pending in the 9/11 Action. As Plaintiff (at 8) concedes, only *some* of the issues relevant to the Motion to Vacate are also implicated by the 9/11 Action. So, for example, the Court may grant vacatur for lack of personal jurisdiction or on the basis of Plaintiff's failure to properly serve PDVSA. *See* Mot. to Vacate Mem. at 18-25; Mot. to Vacate Reply at 7-11; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (stating federal courts need not resolve subject matter jurisdiction before resolving other "threshold grounds for denying audience to a case on the merits"). If the Court were to grant vacatur on ineffective service grounds, as it should, Plaintiff would be required to serve PDVSA and its Subsidiaries in conformity with the law and begin this action over. *See Republic of Sudan*

*v. Harrison*, 139 S. Ct. 1048, 1062 (2019) (reversing denial of vacatur of $330million default judgment for ineffective service under the FSIA); *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, 23 F.4th 1036, 1042 (D.C. Cir. 2022) (reversing summary judgment for ineffective service under the Hague Service Convention).

PDVSA is not aware of any precedent (and Plaintiff cites none) that would support staying this Court's resolution of the fully briefed Motion to Vacate so that it can "have the benefit" of a non-binding report and recommendation regarding later-filed motions in an unrelated case proceeding, so far, in a default context. Mot. at 3. Plaintiff's contention (at 2-3, 5) that the 9/11 Action is a better forum for resolution of "a central issue pending before this Court" — whether TRIA permits the attachment of assets of an agency or instrumentality of a foreign state in satisfaction of a judgment against a non-state terrorist party — finds no support in fact or law. The magistrate judge and district judge in the 9/11 Action are no more qualified than this Court to decide the TRIA issues placed before it.

Plaintiff has done nothing to persuade this Court that it should cede its responsibility to decide the issues that have been pending fully briefed before it for months where, in contrast, the 9/11 Action is in its nascent stages and the court there may never have the benefit of advocacy from the stakeholder to aid its decision-making process. Plaintiff's failure to disclose that neither the judgment-debtor (the Taliban) nor the alleged TRIA "agency or instrumentality" (DAB) are among the "numerous parties" who have appeared in the 9/11 Action is telling. Mot. at 3, 5. And, as the magistrate judge recently noted in a different member case of the 9/11 Action, following the Taliban's recent "rapid ascent," lawyers retained by Afghanistan's "former government . . . have withdrawn, and it is unclear what entity governs Afghanistan or is empowered to advance arguments on its behalf." R. & R., 9/11 Action, ECF No. 7731 at 1.

Thus, any decision that may arise many months, if not years, from now regarding application of TRIA to the DAB assets obtained in the absence of the adversarial process will be of little, if any, persuasive value to this Court. *See, e.g.*, *United States v. Askins & Miller Orthopaedics*, 924 F.3d 1348, 1359 n.4 (11th Cir. 2019) (stating "default or consent orders" are not "subject to the sort of vigorous litigation that would give them persuasive value"); *De Santis v. City of N.Y.*, 10 Civ. 3508 (JPO), 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014) (stating default judgments are disfavored "precisely because they do not allow 'for cases to be adjudicated on the merits'").

Additionally, judicial economy "encompasses the interests of all actors involved," which includes this Court, the parties to this proceeding, and the magistrate judge, district judge, and parties in the 9/11 Action. *The Youngbloods*, 2011 WL 43510, at *6. The plaintiffs seeking turnover of DAB's assets have expressly relied on this Court's Decision & Order (ECF No. 15) and Turnover Judgment (ECF No. 35), which are the subject of the Motion to Vacate. *See* 9/11 Action, ECF Nos. 7764 at 23 & 7769 at 22; *see also* Notice by U.S., Ex. 1, at 23, 27 n.9 (discussing this Court's Decision & Order and Turnover Judgment). The numerous factual and legal issues raised by the Motion to Vacate call that Decision & Order and Turnover Judgment into question and, indeed, the court in the 9/11 Action may look to this Court's ultimate ruling for guidance now that this Court has had the benefit of full adversarial briefing from all stakeholders — something the court in the 9/11 Action may never have.

Finally, Plaintiff cannot credibly argue (at 1) that a stay in favor of the 9/11 Action is necessary "for reasons of judicial efficiency" when he is actively litigating the "central issue pending before this Court" in the D. Conn. Action. *See, e.g.*, D. Conn. Action, ECF No. 192 at 12-16 (addressing the interplay of TRIA and the Foreign Sovereign Immunities Act and

repeating many of the arguments made in opposing the Motion to Vacate here). Plaintiff's litigation conduct in the D. Conn. Action reveals the true motivation for the requested stay: Plaintiff has brought multiple actions across the country, but now seeks "to move the lines of battle" in pursuit of what he perceives to be more favorable terrain. *In re Walt Disney*, 1997 WL 118402, at *3; *see* S.D. Tex. Action, ECF No. 44, at 13-14 (opposing Plaintiff's motion to stay the S.D. Tex. Action including based on Plaintiff's gamesmanship). Having already obtained a stay of the S.D. Tex. Action pending this Court's resolution of the Motion to Vacate, Plaintiff would have this Court stay its resolution of the Motion to Vacate in favor of proceedings in which the affected parties have not appeared, while he proceeds to litigate in the D. Conn. Action, where he believes he is more likely to obtain a favorable result. Such a forum-shopping "tactic is not to be condoned." *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 319 (S.D.N.Y. 1986).

## II.  PDVSA WILL BE PREJUDICED BY A STAY

As this Court has already recognized, "the attachment and execution" of even blocked property is a "drastic result[]" that "undeniably implicates due process concerns." *Caballero v. FARC*, No. 20-MC-0040-LJV, 2021 WL 307558, at *1 (W.D.N.Y. Jan. 29, 2021) (quotation marks omitted). Here, however, Plaintiff has failed to comply with the requirements of due process in obtaining *ex parte* writs of execution against assets allegedly belonging to PDVSA and its Subsidiaries. *See* Mot. to Vacate Mem. at 18-25; Mot. to Vacate Reply at 7-11.

Plaintiff now asks this Court to require PDVSA to endure the "harsh remedy" of having assets (wrongfully) attached on an (erroneous) *ex parte* finding that it is an "agency or instrumentality" of a terrorist party and delay (possibly for years) vindication of its due process rights pending a decision in an unrelated litigation in which they are not parties and the stakeholder has not appeared. *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) (quotation marks omitted). A decision in the 9/11 Action will have no

12

preclusive effect on the parties here, provide little persuasive value on the common issues absent a full airing in the adversarial context, and do nothing to advance resolution of the numerous other issues raised in the Motion to Vacate. Leaving in place the Court's void Decisions & Orders, writs of execution, and Turnover Judgment — where Plaintiff and other courts continue to cite them — would necessarily prejudice PDVSA and its Subsidiaries. Accordingly, Plaintiff's Motion should be denied.

### III. PLAINTIFF WILL INCUR NO PREJUDICE IF A STAY IS DENIED

Plaintiff fails to point to any prejudice he would suffer if a stay is denied. Plaintiff's Motion has all the hallmarks of a gambit that Plaintiff recognizes he would be fortunate to achieve. Indeed, Plaintiff "continues to maintain, and does not waive, his position" that his so-called (and illusory) "Timing Cautions" require that "this matter be resolved with speed." *Id.* And Plaintiff has "repeatedly argued" to this Court (and others) that a speedy termination of this action is required by law. *Id.* As recently as January 26, Plaintiff's counsel opposed this Court inviting the views of the United States in part because such a request might result in prolonged delay of this Court's resolution of the Motion to Vacate. *See* Tr. 13:7-10 ("And I think, Judge, what you're saying makes sense if there is truly a 30-day deadline, and we don't get 15 extensions asked for, that if what you request is something narrow.").

Other than the fact that a new, unrelated proceeding may result in a decision, potentially in the default context, addressing only some issues raised in the Motion to Vacate, Plaintiff fails to identify what new circumstances justify Plaintiff's sudden reversal. *See* Mot. at 5-6. Quite obviously, the present Motion is merely a tactical maneuver made in hopes of improving Plaintiff's litigation position. Plaintiff has thus failed to carry his burden of showing why a stay is needed. *See Applestein*, 2021 WL 493424, at *3 (finding moving party failed to discharge its burden of showing need for stay); *The Youngbloods*, 2011 WL 43510, at *7 (describing prejudice

13

caused by "unnecessary delay in and the inability to obtain expeditious resolution of . . . already protracted litigation"); *see also Echevarria v. Diversified Consultants*, No. 13 CIV. 4980 LAK AJP, 2014 WL 1378081, at *1 (S.D.N.Y. Mar. 24, 2014) (R. & R.), *mooted on other grounds by*, 2014 WL 12783200 (S.D.N.Y. Apr. 21, 2014) (denying motion to stay that was mere "gamesmanship").

## IV. THE REQUESTED STAY IS IMMODERATE AND THUS UNLAWFUL

Plaintiff's request to indefinitely stay this action "given the overlap between a central issue pending before this Court and" in the 9/11 Action (Mot. at 1) also must be denied because it is immoderate in duration and thus unlawful. Plaintiff identifies no timeframe or "reasonable limits" for the proposed stay. *Landis*, 299 U.S. at 257; *see also The Youngbloods*, 2011 WL 43510, at *8 (holding absence of "any evidence about the duration of the requested stay" "weighs heavily against" granting a stay); Pl.'s Opp. to Mot. to Substitute & Stay at 6 ((arguing a stay is "immoderate unless it has a reasonable and foreseeable time limit") (citing *Landis*, 299 U.S. at 257)). There is no telling when the magistrate judge presiding over the proceedings regarding DAB's assets, in which briefing is ongoing, may issue her report and recommendation, much less what objections and appeals might follow.

In *Landis*, the Supreme Court rejected a nearly identical request for a stay pending a decision in an unrelated case that would decide similar legal issues, including any appeals from such decision. *See* 299 U.S. at 256-57. The Supreme Court cautioned that such a stay was "immoderate and hence unlawful" because such a stay was not "within reasonable limits" in that it was set to "continue by its terms for an immoderate stretch of time." *Id.* at 256-57. Applying *Landis*, this Court, too, should reject Plaintiff's request for an indefinite stay.

## CONCLUSION

For the foregoing reasons, PDVSA respectfully requests that this Court deny Plaintiff's Motion to Stay (ECF No. 111).

Dated: May 3, 2022

Respectfully submitted,

By: *s/ Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com

Susan L. Grace
Daniel J. Grossbaum
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-7083
susan.grace@whitecase.com
dan.grossbaum@whitecase.com

*Counsel for PDVSA and its Subsidiaries*