UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NEW YORK

CASE NO: 1:20-mc-00040-LJV

ANTONIO CABALLERO,

    Plaintiff,

vs.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA, a/k/a
FARC-EP a/k/a REVOLUTIONARY ARMED
FORCES OF COLOMBIA; and THE NORTE
DE VALLE CARTEL,

    Defendants.
_____/

**PLAINTIFF ANTONIO CABALLERO'S**
**REPLY IN SUPPORT OF HIS MOTION TO STAY**

## **TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 1

**BACKGROUND** ............................................................................................................................. 2

**ARGUMENT** ................................................................................................................................... 4

    I.   PDVSA FAILS TO REFUTE THAT THE PRIVATE INTEREST OF PLAINTIFF AND THE INTEREST OF THE COURTS FAVOR A STAY ....................................... 4

    II.   PDVSA FAILS TO REFUTE THAT PRIVATE INTERESTS OF THE DEFENDANTS AND PURPORTED BURDEN ON THE DEFENDANTS FAVORS A STAY ................................................................................................................................. 7

    III.   PDVSA FAILS TO REFUTE THAT THE PUBLIC INTEREST AND INTEREST OF PERSONS NOT PARTIES TO THE LITIGATION FAVORS A STAY ............................................................................................................................... 10

Plaintiff Antonio Caballero ("Caballero"), by and through undersigned counsel, hereby submits his Reply in Support of his Motion to Stay this proceeding [D.E. 111] (the "Motion") given the overlap between certain issues pending before this Court and the United States District Court for the Southern District of New York ("SDNY").

## INTRODUCTION

PDVSA[1] has apparently forgotten that *it was PDVSA* that has so zealously advocated for the U.S. government's input on certain issues, which PDVSA has characterized as "implicat[ing] weighty issues of U.S. foreign policy." *See* D.E. 103 at 6. One such issue (the "Overlapping Issue")—specifically the application of section 201(a) of TRIA in an action where a party has obtained a judgment against a non-state terrorist party and seeks to execute the judgment against an entity that is both: (i) an agency or instrumentality of that non-state terrorist party; and (ii) owned by a non-terrorist state—is directly at issue in *In re: Terrorist Attacks on September 11, 2001,* No. 03 MD 1570-GBD-SN (the "SDNY Action"). Notably, the U.S. government—the very body whose opinion PDVSA has so desperately sought—has already weighed in at least once on the Overlapping Issue in the SDNY Action by way of a Statement of Interest. And because the Overlapping Issue is being actively litigated in the SDNY Action, Caballero has moved this Court for a temporary stay so that this Court can have the benefit of any reasoned opinion issued by the SDNY on the Overlapping Issue.

Incredibly, PDVSA opposes Caballero's requested stay despite the fact that: i) both PDVSA and the U.S. government have acknowledged the overlap of the aforementioned issue in both cases; ii) PDVSA has clamored for the government's input on such issue; and iii) the U.S.

---

[1] "PDVSA" refers collectively to Petróleos de Venezuela, S.A. and certain subsidiaries identified in D.E. 85 at 1.

1

government does not oppose Caballero's requested stay. *See* PDVSA's Opp. to Plaintiff's Mot. to Stay (the "PDVSA Opp."), D.E. 115 at 11 ("***Following Executive Branch action to protectively block DAB's assets, the United States filed a Statement of Interest identifying a number of legal issues relevant to the application of TRIA in regards of DAB's assets, including issues also raised to this Court by PDVSA in the Motion to Vacate***.") (emphasis added); Notice by the U.S. Concerning Potential Participation, D.E. 112 at 1 ("***The United States recently filed a Statement of Interest on closely related issues in the Southern District of New York***.") (emphasis added).

Even more incredibly, PDVSA has analogized Caballero's request for a temporary stay (which has been requested so that this Court will have the benefit of the SDNY's disposition of the Overlapping Issue, and, to the extent it files further papers in the SDNY Action, the U.S. government's position on such issue—which PDVSA has vociferously sought) to "forum shopping." The reality is that it is PDVSA that is engaging in "gamesmanship," seeking the U.S. government's opinions, but only on its terms, that is, in a court in which it perceives as more favorable. PDVSA cannot have its cake and eat it too. The Overlapping Issue is being actively litigated in the SDNY Action and the U.S. government has, at least once, opined on such issue. The SDNY Action is clearly at a more advanced stage on the Overlapping Issue. And, as will be demonstrated below, PDVSA fails to provide any argument that outweighs the judicial efficiency of temporarily staying this action until the SDNY rules on the Overlapping Issue, or any other argument warranting denial of the requested stay.

## BACKGROUND

It should come as no surprise to this Court that collecting on a terrorism judgment requires expenditure of many resources and often involves litigating in a number of jurisdictions. It should also come as no surprise to this Court that overlapping issues sometimes arise throughout the

various enforcement actions nationwide. As previously noted in his Motion, Caballero has, on several occasions, sought *and obtained* temporary stays of an enforcement action in favor of another enforcement action for judicial efficiency reasons. *See* D.E. 111 at 3-4 (citing five examples). Without any basis, PDVSA has incorrectly argued that Caballero's request for a temporary stay of this action is another example of Caballero "orchestrating one-sided advocacy."[2] *See* D.E. 115 at 5. Setting aside the fact that Da Afghanistan Bank's (the "DAB") and the Taliban's failure to appear in the SDNY Action is of no import (*see infra* Section I.), PDVSA's depiction of Caballero's procedural history is entirely incorrect. Indeed, in each of the five instances noted by Caballero in his Motion, where Caballero successfully sought and obtained a stay, the agency or instrumentality had appeared in the enforcement action which Caballero advocated should proceed first.

Just as there are overlapping issues among Caballero's various enforcement actions, there also exist issues unique to a particular enforcement action (or, at the very least, issues germane to one of Caballero's enforcement actions, but completely irrelevant to another of Caballero's enforcement actions). In fact, such is the case with Caballero's enforcement action pending in the United States District Court for Connecticut, *Caballero v. FARC, et al.,* No. 20-cv-01939-JAM (the "Conn. Action"), upon which PDVSA mistakenly relies. In its Opposition, PDVSA repeatedly notes that Caballero has not requested a stay in the Conn. Action in furtherance of its erroneous argument that Caballero seeks stays only when it suits him.[3] But PDVSA's argument

---

[2] To the extent that PDVSA relies on *ex parte* orders adjudicating an individual's and/or entity's agency or instrumentality status in support of its argument, such reliance is misplaced. Caballero is authorized to utilize *ex parte* procedures prior to attachment of blocked assets. *See Stansell v. FARC,* 771 F.3d 713, 729 (11th Cir. 2014) ("***In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.***") (emphasis added).

[3] PDVSA makes a similar argument with respect to the interpleader actions pending in *Stansell v. FARC, et al.,* No. 16-mc-00405, and another of Caballero's enforcement actions pending in the

erroneously presumes that Caballero "is actively litigating the 'central issue pending before this Court'" in the D. Conn. Action." D.E. 115 at 15. Such presumption is false.

PDVSA is a state apparatus. ALBA Petroleos de El Salvador S.E.M. de C.V. ("ALBA"), the agency or instrumentality at issue in the Conn. Action, is not. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares."). Indeed, ALBA has admitted as much.[4] Thus, the central issue here, which overlaps with the SDNY Action (i.e. whether TRIA applies to an agency or instrumentality of a non-state terrorist party *that also happens to be the apparatus of a non-terrorist state*) is not at issue in the Conn. Action.[5] And, even if it were (and it is not), ALBA, unlike PDVSA, has not sought the U.S. government's input. In fact, the court in the Conn. Action has rejected counsel of record for PDVSA in this case from serving as counsel for ALBA in the Conn. Action.

## ARGUMENT

### I. PDVSA FAILS TO REFUTE THAT THE PRIVATE INTEREST OF PLAINTIFF AND THE INTEREST OF THE COURTS FAVOR A STAY

As previously argued, it is in Plaintiff's interest to stay this case for the sake of judicial efficiency. PDVSA has conceded that there is significant overlap between the Overlapping Issue

---

SDNY, *Caballero v. FARC,* No. 20-mc-00249—both of which involve certain PDVSA subsidiaries. This argument also fails because none of the PDVSA subsidiaries therein have sought the U.S. government's input on certain issues like PDVSA has here. Moreover, as PDVSA itself concedes, Caballero "is not yet actively prosecuting" the latter action. D.E. 115 at 10.

[4] *See* Conn. Action, D.E. 175-1 at 19 (explaining ALBA's corporate structure and conceding that it is neither a foreign state organ nor a political subdivision).

[5] The difference in the positions taken by ALBA and PDVSA is further underscored by the fact that ALBA, unlike PDVSA, does not argue the applicability of the Foreign Sovereign Immunities Act's ("FSIA") service provisions under Section 1608(b). *Compare* ALBA's Mem. of Law In Support of Motion to Vacate Turnover Order [ECF No. 53] and Dismiss Third-Party Complaint [ECF No. 64], Conn. Action, D.E. 175-1 at 15-16, *with* Mem. of Law In Support of PDVSA's Mot. to Quash Writs of Execution and Vacate Turnover Judgment, D.E. 85-1 at 27, 29.

here and the SDNY Action. Because there is an overlap of such issue currently pending before both courts, judicial efficiency would be served by allowing the SDNY to adjudicate the Overlapping Issue first given that the SDNY is actively litigating such issue (again, the U.S. government—whose opinion PDVSA has zealously sought—has filed a Statement of the Issue therein and may submit additional filings) and is thus ahead of this Court in relation to such issue.[6] Allowing the SDNY to adjudicate the Overlapping Issue first would provide this Court the benefit of a reasoned analysis for consideration for when this Court is ready to adjudicate the Overlapping Issue here and would decrease the possibility of inconsistent results ultimately leading to appeal.[7] Caballero's request for a stay here is thus consistent with his requests for stays in other courts, which were sought in favor of more advanced proceedings for the sake of judicial efficiency.

It is of no import that a SDNY decision will not have preclusive effect here as PDVSA contends because a stay here would still provide otherwise adequate benefit to warrant a stay. There are only a handful of cases that deal with TRIA and even fewer that deal with TRIA in the Foreign Sovereign Immunity Act context.  PDVSA has opportunistically attempted to itself advance an "importance" of the Overlapping Issue at play here and in the SDNY, and the U.S.

---

[6] Moreover, the U.S. government has already intervened in the SDNY Action, and the funds therein have been divided and partly distributed because of the U.S. government's intervention. Clearly, the SDNY Action is not in its "nascent stages" as PDVSA purports.

[7] Such rationale further supports Caballero's argument that the Timing Cautions, which urge "expediency," are best served by allowing the SDNY to adjudicate the issue first. Notably, Caballero already briefed why his requested stay for judicial efficiency reasons is consistent with the Timing Cautions [D.E. 111 at 6], but  PDVSA failed to meaningfully grapple with these arguments.  Instead, PDVSA argues, in essence, that Caballero's requested relief is inconsistent with Caballero's earlier hesitation to invite the U.S. government's opinion, which stemmed from the undersigned's delay concerns. Such argument, however, misses the mark because the issue is no longer whether the U.S. government should be invited in this action (this decision has been made and the U.S. government has been invited), but instead how best to resolve the Overlapping Issue here for which the U.S. government's opinion has been sought.  And, for the reasons previously stated, it is Caballero's position that resolution of the Overlapping Issue here would be achieved faster by allowing the SDNY to proceed first.

government does not oppose Caballero's Motion. Surely, it would be beneficial for this Court to have a well-reasoned opinion on the issue from the more advanced SDNY (a sister federal court within the Second Circuit Court of Appeals, no less), regardless of whether this Court chooses to rule consistently with the SDNY's ultimate decision.

Relatedly, PDVSA's argument that any decision by the SDNY would be of little value to this Court because the Taliban and the DAB have not appeared in the SDNY action and thus any decision by the SDNY would be premised upon a non-adversarial process also fails.[8] Preliminarily, there is nothing preventing PDVSA from attempting to intervene in the SDNY Action or filing an amicus brief in the SDNY Action to assert its position.  Alternatively, PDVSA could direct the SDNY to its briefing before this Court. Furthermore, PDVSA's position on the Overlapping Issue is included in its motion to vacate filed before this Court.  Thus, even if this Court were to temporarily stay this case until the SDNY rules on the Overlapping Issue, this Court would still consider PDVSA's arguments at the time of adjudication of the Overlapping Issue— but with the added benefit of the SDNY opinion on the issue. Put another way, the fact that the DAB and the Taliban have not yet appeared in the SDNY Action is of no import because, in this case, PDVSA has appeared and has briefed its position, which this Court will ultimately consider.

PDVSA's gamesmanship is best exemplified by its argument that this Court may grant PDVSA's motion to vacate on other grounds unrelated to the Overlapping Issue and thus this Court need not wait for the SDNY Action's resolution of such issue.  Since PDVSA's appearance, PDVSA has hinted (and later clamored) for the U.S. government's input on various issues, which

---

[8] PDVSA argues that because a decision from the SDNY would have been rendered in a "default" context, it would be of little value to this Court. PDVSA's Opp., D.E. 115 at 15. However, any order from the SDNY proceeding would not be a true "default' judgment because the relevant issue is actively being litigated and the SDNY has already received briefs from multiple parties, notwithstanding the fact that the DAB and Taliban have not appeared.

it has characterized as "implicat[ing] weighty issues of U.S. foreign policy."[9] Why? Because PDVSA seeks to capitalize on Executive Branch tactics to the detriment of collection by terror victims. The SDNY put it best: "***Any statement from the Executive Branch submitted with respect to the TRIA <u>should be considered suspect</u>, given that Congress' passage of TRIA was over the objection of the Executive Branch and for the purpose of rendering blocked assets attachable***."[10]

Now, PDVSA does an about-face, essentially urging this Court to ignore the SDNY Action and what more the U.S. government, other parties, and the SDNY may have to say on the very issue PDVSA has argued of being of the upmost importance with respect to foreign policy concerns. In any case, PDVSA's attempt to persuade this Court to ignore the Overlapping Issue and focus instead on PDVSA's other arguments presented in its motion to vacate fails for the reasons briefed by Caballero in his opposition to the motion to vacate.[11] *See generally* D.E. 90.

## II. PDVSA FAILS TO REFUTE THAT PRIVATE INTERESTS OF THE DEFENDANTS AND PURPORTED BURDEN ON THE DEFENDANTS FAVORS A STAY

PDVSA fails to refute, let alone even address, that a stay here will have no prejudicial effect on PDVSA because the assets purportedly held by it and its Subsidiaries are blocked and

---

[9] D.E. 103 at 6; April 28, 2021, Hearing Tr., D.E. 74 at 39: 19-21 ("one thing that could happen is the United States could enter some of these proceedings, and let its position with respect to the subject matter of the proceedings..."). And, clearly, this Court has determined such issue to be important given its invitation to the U.S. government to file a Statement of Interest here. D.E. 106.

[10] *Levin v. Bank of N.Y. Mellon*, No. 09 CV 5900 (RPP) 2013 U.S. Dist. LEXIS 137399 at *95 n. 9 (S.D.N.Y. Sept. 23, 2013) (emphasis added), *rev'd on other grounds by* No. 13-4711, 2015 U.S. App. LEXIS 7881 (2d Cir. May 11, 2015). Courts have stated: "[T]he TRIA appears to represent something of a victory for these terrorism victims--whose interests have been most vigorously advanced by members of Congress--over the longstanding objections of the Executive Branch." *In re Islamic Republic of Iran Terrorism Litg.,* 659 F. Supp. 2d 31, 58 (D.D.C. 2009).

[11] By way of example, Caballero has already briefed why PDVSA's arguments based on a purported lack of personal jurisdiction and a purported failure to serve are premised upon misinterpretations of the law and thus fail. D.E. 90 at 32-36 (briefing why personal jurisdiction over PDVSA is unnecessary and the inapplicability of the FSIA's and Hague Convention' service provisions).

thus cannot be used. Instead, PDVSA argues that it will be prejudiced by a stay here because it will delay "vindication of its due process rights." D.E. 115 at 16. Such argument, however, is premised upon the incorrect notion that Caballero was not authorized to utilize *ex parte* procedures. Caballero was so authorized. *See supra* n. 2. Moreover, once Caballero obtained his writ of execution against the subject blocked assets, Caballero duly notified PDVSA of this action and his collection efforts, thereby satisfying whatever due process rights to which PDVSA is entitled.

Moreover, the proposed stay is not immoderate as PDVSA contends. The SDNY action is a U.S. federal proceeding considering the same Overlapping Issue; 2) the issue is actively being litigated in the SDNY; 3) being that the SDNY Action is being litigated in the same Second Circuit, the timeframe for such litigation is generally predictable by this Court; 4) the SDNY Action can be monitored by the parties and this Court to ensure that it continues moving forward; and 5) the joint status reports that Caballero suggests be filed every sixty days ensure that this Court can continue to weigh the benefit of having a well-reasoned SDNY opinion on the Overlapping Issue here versus the alleged prejudice to PDVSA.

Courts, including the Honorable Judge Telesca in this District in *HMT, Inc. v. Bell BCI Co.*, have stayed cases pending the outcome of another federal proceeding, even when there is no specific, identifiable timeframe for the proposed stay. No. 06-CV-6193T, 2007 U.S. Dist. LEXIS 6472 (W.D.N.Y. Jan. 30, 2007). Like the proposed stay in *HMT, Inc.*, Caballero's proposed stay is also predicated on the outcome of another federal proceeding—the SDNY Action. As such, the proposed stay is similarly reasonably limited as the stay in *HMT, Inc*. Significantly, as the court noted in *HMT, Inc.*, "a court may, in it's [*sic*] discretion, 'in the interest of judicial economy, enter a stay pending the outcome of proceedings, which bear upon the case, even if such proceedings

are not necessarily controlling of the action that is to be stayed.'" *Id*. at *7 (quoting *Lasala v. Needham & Co.*, 399 F. Supp. 2d at 427 (S.D.N.Y. 2005).

The proposed stay here is **_not_** "nearly identical" to the requested stay in *Landis* as PDVSA mistakenly argues.[12] The stay in *Landis* was indefinite because it was proposed to last until the validity of an operative Act had been determined by the Supreme Court of the United States in a parallel case or until that parallel case was otherwise terminated. *Landis v. N. Am. Co.*, 299 U.S. 248, 251, (1936). By contrast, Caballero's proposed stay has definitive limits: the resolution of the Overlapping Issue by the SDNY, which is being actively litigated and publicly available for the parties and this Court to monitor.

Moreover, PDVSA's attempt to draw a parallel between Caballero's proposed stay and PDVSA's own previously proposed stay, which Caballero argued was immoderate, is similarly unavailing. PDVSA previously sought a stay that was to last indefinitely (i.e. until the Interim government's transition into power in Venezuela) and which was tied to an entirely unpredictable timeframe of a supposed political process or, perhaps, a revolution in another country. Caballero's proposed stay here, by contrast, is much more definitively defined (as explained in the preceding

---

[12] In addition, PDVSA's citation to *"The Youngbloods" v. BMG MUSIC*, No. 07 CIV 2394 GBD KNF, 2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011) is unavailing. In that case, absence of "any evidence about the duration of the requested stay" weighed against the proposed stay. The facts of this case are distinguishable. Preliminarily, PDVSA conveniently left out the fact that the court in *"The Youngbloods"* used a Third Circuit test, which, unlike the Second Circuit test, explicitly considers the "duration of the requested stay" to evaluate the propriety of the stay. Such Third-Circuit test is not binding on this court. Moreover, the stay in *"The Youngbloods"* was requested pending resolution of a proceeding before the California district court, a court in an entirely different circuit than *"The Youngbloods"* court, and whose general timeframe for adjudication was unfamiliar. Unlike the stay in *"The Youngbloods,"* the proposed stay here is pending termination of a related case in the SDNY—a sister federal court within the same Circuit, whose timeframe for adjudication is more predictable and whose decision would be more persuasive than the decision of a district court in an entirely different Circuit. Additionally, even if this Court were to consider the potential duration of the stay, such factor, when weighed against the other relevant factors, weighs in favor of the proposed stay.

9

paragraph). Caballero's proposed temporary stay is also "without prejudice to any party requesting that the stay be lifted at any time (. . .)" and prescribes sixty-day joint status reports to be filed by the parties, which in tandem works to prevent an immoderate, indefinite stay. D.E. 111 at 10.

Nevertheless, to the extent that this Court deems Caballero's proposed stay, in its current form, as immoderate (and it is not), Caballero proposes that this case be stayed until the SDNY renders a decision on the Overlapping Issue. Such a stay would obviate PDVSA's concerns about the proposed stay continuing to include any appeals of a SDNY decision, which PDVSA has argued could last for years.

### III. PDVSA FAILS TO REFUTE THAT THE PUBLIC INTEREST AND INTEREST OF PERSONS NOT PARTIES TO THE LITIGATION FAVORS A STAY

PDVSA cannot point to anything in the public interest that would support the denial of a stay here. And as demonstrated above, PDVSA fails to refute that the public interest of judicial efficiency warrants a stay of this case. Regarding interests of non-parties to this litigation, PDVSA is silent regarding the fact that it is far easier for Caballero to have his views considered in the SDNY Action, either directly or through consultation with counsel for another plaintiff in that case, than it is for the many participants in the SDNY Action to have their views heard by this Court on a common issue. The only argument PDVSA raises in support of non-parties' interests ironically serves only PDVSA—that is, if this case were to proceed, the SDNY may look to this Court's ultimate ruling for guidance because this Court would have had the benefit of adversarial briefing. But, as noted above, this Court will take PDVSA's position (as stated in its various filings before this Court) into account at the time of adjudication of the Overlapping Issue here, notwithstanding its potential consideration of any forthcoming decision by the SDNY. Thus, PDVSA fails to refute that the public interest and interest of non-parties to this litigation weighs in favor of Caballero's proposed stay.

**DATED this 10th day of May 2022.**

        Respectfully Submitted,

        ZUMPANO PATRICIOS, P.A.
        312 Minorca Avenue
        Coral Gables, FL 33134
        Tel. (305) 444-5565

        */s/ Joseph I. Zumpano*
        Joseph I. Zumpano
        Florida Bar Number: 0056091
        *Appearing Pro Hac Vice*
        E-mail address: jzumpano@zplaw.com
        Leon N. Patricios
        Florida Bar Number: 0012777
        *Appearing Pro Hac Vice*
        E-mail address: lpatricios@zplaw.com

        ZUMPANO PATRICIOS & POPOK, PLLC
        Mitchell G. Mandell
        Senior Partner
        417 Fifth Avenue, Suite 826
        New York, New York 10016
        Tel: (212) 542-8125
        Fax: (646) 665-4685
        mmandell@zplaw.com

        ***Attorneys for Plaintiff Antonio Caballero***

## **CERTIFICATE OF SERVICE**

    We hereby certify that the foregoing document was filed this 10th day of May 2022 via CM/ECF.

        */s/ Joseph I. Zumpano*
        Joseph I. Zumpano