UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTONIO CABALLERO,

       Plaintiff,

  v.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA, *et al.*,

       Defendants.

20-MC-40-LJV

DECISION & ORDER

---

       The plaintiff, Antonio Caballero, is a judgment-creditor of Fuerzas Armadas Revolucionarias de Colombia ("FARC").[1] He commenced this action under section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") for post-judgment execution on the blocked assets of alleged agencies or instrumentalities of FARC. Docket Items 10, 22. More specifically, he sought to execute his judgment against FARC upon Petróleos de Venezuela, S.A. ("PDVSA"), Docket Item 10, and six of PDVSA's subsidiaries: (1) PDV Marina SA; (2) Aceites Y Solventes Venezolanos SA; (3) Petroanzoategui SA; (4) Venfleet Asphalt Ltd.; (5) Venfleet Products Ltd.; and (6) Venfleet Ltd. (together, "the subsidiaries"), Docket Item 22.

       On April 18, 2022, Caballero moved to stay this action "given the overlap between a central issue pending before this Court and the United States District Court for the Southern District of New York [("Southern District")]." Docket Item 111 at 1. On

---

[1] The Court assumes the reader's familiarity with the factual and procedural background of this case and refers the reader to its prior decisions for a full recitation of the facts. *See e.g.*, Docket Items 78, 97.

May 3, 2022, PDVSA and the subsidiaries responded, Docket Item 115, and a week later, Caballero replied, Docket Item 116.[2]

For the reasons that follow, the motion for a stay, Docket Item 111, is denied.

## **LEGAL PRINCIPLES**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "It follows that the decision whether to issue a stay is 'firmly within a district court's discretion.'" *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995)).

"In determining whether a stay is appropriate, the Court must consider whether the 'interests of efficient judicial administration and comprehensive disposition of litigation' is better served through an order to stay the proceedings." *Red Tree Invs., LLC v. Petróleos De Venezuela, S.A.*, 2020 WL 209276, at *1 (S.D.N.Y. Jan. 14, 2020) (quoting *New York v. Blank*, 1991 WL 208883, at *11 (N.D.N.Y. Oct. 10, 1991)). "To guide this determination, courts generally consider five factors: '(1) the private interests

---

[2] In March, this Court invited the United States to submit a Statement of Interest in this action. Docket Item 106. After Caballero moved to stay this action, the United States informed the Court that it "declines to file a Statement of Interest at this time" but "leave[s] open the possibility of a future submission." Docket Item 112 at 2. The United States does not oppose Caballero's motion to stay, but it asks for thirty days from the date the Court lifts any stay or denies the motion for a stay to inform the Court whether it will file a Statement of Interest. *Id.*

of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed;[3] (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" *Id.* (citing *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

## **DISCUSSION**

Caballero urges this Court to stay this case while the Southern District grapples with a similar issue in another TRIA action: *In re: Terrorist Attacks on September 11, 2001*, No. 03-md-1570. Docket Item 111. Two sets of the many plaintiffs in that multi-district litigation hold default judgments against the Taliban. Docket Item 112-1 at 19-20.[4] Those plaintiffs also have obtained writs of attachment against sovereign reserves belonging to Afghanistan's central bank, Da Afghanistan Bank ("DAB"). *Id*. On February 11, 2022, President Biden issued an Executive Order that blocked DAB's assets held in the United States. Exec. Order No. 14,064 § 1(a). That same day, the United States filed a Statement of Interest in the Southern District action. *In re: Terrorist Attacks on Sept. 11, 2001*, Docket Item 7661.

In March, the two sets of plaintiffs moved for a turnover judgment of DAB's assets pursuant to section 201(a) of TRIA. *In re: Terrorist Attacks on Sept. 11, 2001*,

---

[3] The court in *Red Tree Investments* referred to *the plaintiffs'* interest in proceeding expeditiously as balanced against the prejudice to *the plaintiffs* that any delay might cause presumably because it usually is the defendant who wants to stay a case and the plaintiffs who oppose. *Id.* at *2-3. But that balance applies with equal force when the roles are reversed, and the defendants oppose the stay.

[4] All pinpoint citations refer to the ECF pagination.

Docket Items 7764, 7769. Not surprisingly, both sets of plaintiffs cited this Court's previous decision and order granting Caballero's motions for post-judgment execution on the blocked assets of PDVSA and its subsidiaries in support of their motions. *See In re: Terrorist Attacks on Sept. 11, 2001*, Docket Items 7764 at 29 (citing Docket Items 15, 33); 7769 at 28 (same). Both those motions are currently pending before United States Magistrate Judge Sarah Netburn. *See In re: Terrorist Attacks on Sept. 11, 2001*, Docket Entry on Oct. 4, 2016 (dispositive referral of action to Judge Netburn).

      Caballero asserts that this Court and the Southern District now face the same issue: how to apply "section 201(a) of TRIA in an action where a party has obtained a judgment against a non-state terrorist party and seeks to execute the judgment against an entity that is both: (i) an agency or instrumentality of that non-state terrorist party; and (ii) owned by a non-terrorist state." Docket Item 111 at 2. He argues that judicial efficiency would best be served by one court's deciding the issue first, *id.* at 2-3, and that each of the relevant factors weighs in favor of staying this action, *see id.* at 5-9. All told, his argument boils down to (1) one of these actions should be stayed in the interest of judicial economy, and (2) "it makes more sense" to stay this one because it involves fewer parties and has not been pending as long. *Id.* at 3. This Court disagrees.

      First, this Court does not see how judicial economy is served by staying a fully briefed motion so that it may have "the benefit of a reasoned analysis for consideration"[5] from another district court in a case involving different parties, *see* Docket Item 116 at 7. Of course, if the Southern District were to render a decision first, this Court would

---

[5] Caballero reminds the Court of this "benefit" as a reason for staying the case no less than eight times in his briefing. *See* Docket Item 111 at 3, 7, 9; Docket Item 116 at 3, 4, 7, 8, 10.

review and consider that decision.  But that is not to say this Court necessarily would follow the Southern District's decision or that such a decision is necessary for this Court to decide the motion before it.  Indeed, even Caballero acknowledges that any decision by the Southern District would be only persuasive authority here and that this Court would be free to decide to the motion to vacate as it sees fit based on the law and arguments before it.  *See* Docket Item 116 at 7-8.

Caballero's motion for a stay also is at odds with his repeated requests for alacrity in this action and his assertion that so-called "Timing Cautions" require this Court to act quickly.  *See, e.g.*, Docket Item 66 (opposing PDVSA's motion to substitute counsel and stay the case on timing grounds).[6]  The Court therefore is skeptical of Caballero's argument that staying this matter ultimately may lead to a quicker resolution in this case, *see* Docket Item 111 at 5-6.  In fact, it seems to this Court that a much speedier route would be to resolve the fully briefed motion to vacate—not to hold it in abeyance because the Southern District might render a helpful decision sometime in the future.

This Court is not persuaded that because this proceeding is at a less-advanced stage than the Southern District case, the "interests of the courts" favor a stay.  *See Red Tree Invs., LLC*, 2020 WL 209276, at *1.  Although Caballero now calls the Southern District case "more advanced," [7] Docket Item 116 at 4, he previously invoked

---

[6] In fact, as recently as a January 26, 2022 status conference, counsel for Caballero opposed this Court's inviting the United States' view on the motion to vacate due, in part, to continued concerns about delay.

[7] Caballero asserts that the Southern District action is more advanced because the United States has filed a Statement of Interest in that action.  While this Court has invited the United States to file a Statement of Interest in this action tailored to the particular issues of this case, *see* Docket Item 106, it also is free to decide the case

the "advanced" stage of these proceedings to argue for a stay in other courts, *see id.* at 7 (noting that he sought stays in other courts in favor of "more advanced proceedings"). What is more, Caballero's motion calls this Court's attention to two cases that were stayed pending proceedings in this Court: *Caballero v. FARC*, No. 4:21-cv-1668 (S.D. Tex.), and *Caballero v. FARC*, No. 3:20-cv-4485 (D.S.C.).  *See* Docket Item 111 at 3-4. With other courts waiting for this Court to render a decision, delaying this proceeding would not seem to further the "interests of the courts."[8]

Moreover, the Court does not agree with Caballero that a stay will not prejudice PDVSA and its subsidiaries.  Caballero may be correct that because its assets are blocked, PDVSA and the subsidiaries cannot use those assets regardless of writs of attachment and turnover judgments.  But even when assets are already blocked, "attachment and execution" is a "drastic result[]" and "undeniably implicates due process concerns."  *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 726 (11th Cir. 2014).  Blocked or not, PDVSA and its subsidiaries still have a possessory interest in their property that they are entitled to defend.  That is precisely why this Court found that PDVSA and its subsidiaries were "entitled to notice and an opportunity to be heard to rebut the allegations that it is an agency or instrumentality of FARC."  *See* Docket Items 15 at 5 n.3; 33 at 10 n.7; *see also Stansell*, 771 F.3d at 726 ("[P]arties

---

without such a statement—something Caballero previously asked this Court to do, *see* Docket Item 105.  And it is not as though this Court is acting without the benefit of any filings in its sister courts.  Indeed, the parties regularly inform this Court of such supplemental authority from other courts.

[8] Moreover, Caballero's argument that one court may benefit from another's decision works in the opposite direction, too.  Strange as it may seem to someone from downstate, the Southern District may find a decision from the Western District helpful in resolving the motions before it.

whose assets are under threat of execution pursuant to TRIA [section] 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets."). This Court cannot agree that a stay would not prejudice PDVSA and its subsidiaries; in fact, at the very least, a stay would delay PDVSA's and the subsidiaries' due process right to be heard.[9]

Caballero seems to suggest that the voices of PDVSA and its subsidiaries may be heard in the Southern District action where there are numerous parties weighing in on the issue. Docket Item 111 at 6-7, 9; Docket Item 116 at 8. But no matter how many parties are participating in the Southern District action, neither PDVSA or its subsidiaries are among them.[10] Caballero also observes that counsel for PDVSA and its subsidiaries is counsel for a different party in the Southern District action. Docket Item 111 at 6-7. But being a party in an action is a far cry from having one's attorney participate in the case as a representative for someone else.

For all those reasons, PDVSA and its subsidiaries may be prejudiced by this Court's failure to promptly address their motion to vacate the attachment and turnover

---

[9] This is especially so where Caballero repeatedly cites this Court's writs of execution and turnover judgment to persuade other courts to order the attachment of funds. *See* Docket Item 115 at 17. For that reason as well, PDVSA and its subsidiaries are entitled to have this Court address their motion to vacate.

[10] This Court recognizes that "[c]ourts have repeatedly ruled that 'parties and issues need not be identical in order for one action to be stayed or dismissed in deference to an earlier action.'" *Dragon Cap. Partners L.P. v. Merrill Lynch Cap. Servs. Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997) (citation omitted). So this fact alone does not compel the Court to deny the stay. But the fact that there is *no overlap* between the parties here and in the Southern District, combined with the advanced stage of this action—that is, one with a fully briefed motion to vacate—convinces this Court that a stay is not an appropriate exercise of its discretion.

judgment, and there is no assurance that their interests will be addressed in the Southern District action.  The Court therefore declines to stay this matter.

## **CONCLUSION**

For the reasons stated above, Caballero's motion for a stay, Docket Item 111, is DENIED.  The United States shall inform the Court **within 30 days of the date of this order** whether it will file a Statement of Interest.  If the United States intends to file a Statement of Interest, the Court will set a briefing schedule.

SO ORDERED.

Dated:  June 7, 2022
        Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE