**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIO CABALLERO, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )    Case No.: 1:20-mc-00040-LJV |
| | ) |
| FUERZAS ARMADAS | ) |
| REVOLUCIONARIAS DE COLOMBIA, | ) |
| a/k/a FARC-EP, a/k/a REVOLUTIONARY | ) |
| ARMED FORCES OF COLOMBIA; and | ) |
| THE NORTE DE VALLE CARTEL, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**PETRÓLEOS DE VENEZUELA, S.A. AND ITS SUBSIDIARIES'**
**BRIEF IN RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES**

At the invitation of the Court, and following "extensive consultation" across the U.S. government (ECF No. 119 at 1), the United States has now filed a Statement of Interest, offering a clear and cogent interpretation of TRIA and its place within the comprehensive legal framework for foreign sovereign immunity established by the FSIA. *See* ECF No. 125 ("SoI"). The Statement of Interest provides this Court with a valuable roadmap to the correct disposition of this purported enforcement action, where, as the Supreme Court has directed, the views of the United States are due "special attention," including because the U.S. State Department "helped to draft the FSIA's language." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017).

Here, the views expressed by the United States in its Statement of Interest either directly confirm or, at minimum, accord with the arguments PDVSA and its Subsidiaries have advanced in support of their Motion to Quash Writs and Vacate Turnover Judgment. First, the Statement of Interest confirms this Court lacked jurisdiction to enter the order adjudicating PDVSA to be an

"agency or instrumentality" of the FARC, issue the TRIA writs, or enter the default turnover judgment. *See* SoI at 2-3, 9-23 (subject-matter jurisdiction) & 3, 27 (personal jurisdiction); *see also* ECF No. 85-1 ("Mot.") at 14-21; ECF No. 91 ("Reply") at 1-8; ECF No. 99 at 5-7. Second, the Statement of Interest confirms Plaintiff failed to properly serve PDVSA. *See* SoI at 3, 24-29; *see also* Mot. at 21-25; Reply at 8-11. Third, the Statement of Interest confirms that Plaintiff has failed to carry his burden of proving ownership of the blocked assets. *See* SoI at 29-31; *see also* Mot. at 38-39; Reply at 5-6, 15-17; ECF No. 99 at 6. Finally, the Statement of Interest confirms that PDVSA is not and cannot be an "agency or instrumentality" of the FARC. *See* SoI at 29-35; *see also* Mot. at 25-31; Reply at 11-13; ECF No. 99 at 7-9.

The United States also addresses the foreign policy concerns previously raised by the Court. *See* Jan. 26 Hr'g Tr. 12:24-13:3 (the Court raising its "concerns" about "making a decision [here], that may be at odds with the Executive Branch and in ways that may cause concern for the country"). Indeed, the United States puts into stark relief how Plaintiff's purported enforcement action here jeopardizes important U.S. foreign policy, national security, and separation-of-powers concerns. To that end, the United States explains that the legal conclusions set out in its Statement of Interest are necessary to avoid "significant, negative foreign policy consequences"; to maintain "longstanding international principles regarding sovereign immunity . . . that protect the United States, [U.S.] forces, and [U.S.] personnel"; and to preserve the rules of "customary international law concerning service of process on foreign states," which "ensure . . . foreign countries provide the United States the same protections it would expect in . . . foreign courts." SoI at 20, 21, 28-29.

Each of the defects in Plaintiff's purported enforcement action identified by PDVSA and its Subsidiaries — and confirmed by the United States — requires vacatur of the Court's agency-or-instrumentality orders, quashing of the writs, and vacatur of the turnover judgment entered in

PDVSA's and its Subsidiaries' absence.  *See* Mot. at 18, 23-24 & Reply at 2  (citing, e.g., *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 111, 124 (2d Cir. 2017) (holding judgment is void and must be vacated if the court that entered it lacked jurisdiction over judgment debtor); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053-54, 1062 (2019) (holding default judgment void for defective service under FSIA); *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) ("When a judgment entered against the defaulting party is void, the court has no discretion and is compelled to [vacate it] for the reason that a void judgment cannot be enforced.")).

*__Jurisdiction:__*   The United States confirms that "TRIA does not provide an independent basis for subject-matter jurisdiction" in this action.  SoI at 9; *see also id.* at 11-23; Mot. at 2, 14-18; Reply at 2-4.  Because PDVSA is an undisputed "agency or instrumentality of a foreign state" (as defined in § 1603(b) of the FSIA), the FSIA provides the sole basis for obtaining jurisdiction as to PDVSA.  *See* SoI at 10-11 (recounting "foundational principle that the 'FSIA is the sole basis for obtaining jurisdiction over a foreign state in U.S. courts'" (quoting *Argentine Republic v. Amerada Hess Shipping*, 488 U.S. 428, 434 (1989) (cleaned up))); Mot. at 14-18; Reply at 7.  But, as the United States explains, TRIA provides an exception only "for *attachment* immunity for entities that fall within its scope," i.e., where "the FSIA's terrorism exception to jurisdictional immunity [(28 U.S.C. § 1605A)] has already been satisfied."  SoI at 12 (emphasis in original); *see also* SoI at 14-15 (explaining that, under *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43 (2d Cir. 2010), "the requirement of an exception to the FSIA's jurisdictional immunity found in the FSIA itself continues to apply" in TRIA proceedings where there is no "predicate FSIA judgment against the foreign state in question"); Mot. at 16-18; Reply at 2-3.

As a result, PDVSA is presumptively immune from jurisdiction (28 U.S.C. § 1604) in this purported TRIA enforcement action because Plaintiff did not bring an action under the FSIA and,

in any event, could not overcome PDVSA's sovereign immunity, including because "Venezuela is not (and has never been) designated by the United States as a state sponsor of terrorism," as required for § 1605A to apply.  SoI at 4 n.2; *see id.* at 2, 4-5, 11-13; Mot. at 14-15, 17, 25-31; Reply at 7.  The Court therefore lacks subject-matter jurisdiction and personal jurisdiction under the FSIA.  *See* Mot. at 14-18, 19-20; Reply at 7, 8-11; *see also* SoI at 11 ("While the United States does not take a position as to whether Caballero could make such a showing, absent a determination that there is an applicable exception to the FSIA that provides subject-matter jurisdiction over PDVSA, there would be no basis to exercise jurisdiction over PDVSA in this case.").  It necessarily follows that the order determining PDVSA to be an agency or instrumentality of the FARC, the TRIA writ issued to M&T Bank under that order, and the subsequent turnover judgment are void for lack of jurisdiction and must be vacated.  *See* Mot. at 18, 23-24 & Reply at 2  (citing, e.g., *Mobil Cerro Negro*, 863 F.3d at 111, 124; *Harrison*, 139 S. Ct. at 1053-54, 1062).

As the United States recognizes, the analysis above is consistent with the rule of *Peacock* and *Epperson* requiring an independent basis for jurisdiction in any "new proceeding that impose[s] liability on a new party."  SoI at 17 (citing *Peacock v. Thomas*, 516 U.S. 349, 357 (1996); *Epperson v. Ent. Express*, 242 F.3d 100, 104 (2d Cir. 2001)); *see* Mot. at 14; Reply at 1.  As to PDVSA, the United States explains that *Peacock* requires that Plaintiff have a "judgment under 28 U.S.C. § 1605A."  SoI at 18.  Plaintiff undisputedly has no such judgment.  And *Peacock* and its progeny apply with equal force to Plaintiff's attempts to shift liability for his default ATA judgment against the FARC onto the Subsidiaries.  *See* Mot. at 14, 18; Reply at 1-2, 8.  But Plaintiff undisputedly has filed no complaint against the Subsidiaries through which he might attempt to plead subject-matter and personal jurisdiction.  *See* Mot. at 18-19, 21-25; Reply at 1-2.  Thus, the

order determining the Subsidiaries to be "agencies or instrumentalities" of the FARC is also void and must be vacated and the ensuing writs quashed.  *See* Mot. at 18, 23-24, Reply at 2.

Moreover, under *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), the order and writs as to the Subsidiaries should be vacated and quashed to avoid what the United States describes as "significant, negative foreign policy consequences, which would significantly limit the discretion of the [U.S.] Executive and cause unnecessary conflict with foreign countries . . . ." SoI at 20; *see also* SoI at 28 ("[A]s the Supreme Court stated in [*Pimentel*], 'judicial seizure of the property of a friendly state may be regarded as an affront to its dignity and may affect our relations with it.'" (quoting 553 U.S. at 866 (cleaned up))); Mot. at 39 (similar).  Plaintiff's entire theory of liability as to the Subsidiaries is based *solely* on the bare and conclusory allegations that (i) PDVSA is allegedly an "agency or instrumentality" of the FARC, (ii) PDVSA majority owns each Subsidiary, and (iii) therefore, each Subsidiary is also an "agency or instrumentality" of the FARC. *See* Mot. at 7, 18, 35-37; Reply at 15.  By Plaintiff's own theory, therefore, PDVSA is a "required-entity sovereign" under Federal Rule of Civil Procedure 19(a)(1).  *Pimentel*, 553 U.S. at 867.  But, as explained above, PDVSA is immune and thus "not amenable to suit" here.  *Id.* (applying Rule19(b)).  As the Supreme Court explained, the "privilege" of sovereign immunity would be "much diminished . . . if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in the sovereign's absence and over its objection."  *Id.* at 868-69.  Thus, under *Pimentel*, Plaintiff's purported enforcement action as to the Subsidiaries should be dismissed.  *See id.* at 867; *see also* ECF No. 103 at 7-8.

***Service of Process:***  The United States confirms Plaintiff was required to serve process on PDVSA before obtaining the order, writ, and turnover judgment.  *See* SoI at 25 (identifying "several independent reasons why service as set out in the FSIA is required" where a judgment

creditor "attempts to attach the assets of foreign states who were *not* party to the underlying liability judgment" (emphasis in original)); *see* Mot. at 21-25; Reply at 8-11.  The United States explains that a motion to enforce a judgment "for the first time" and "against a new party," "properly can be viewed as analogous to a pleading asserting a new claim for relief."  SoI at 26 (citing Fed. R. Civ. P. 5(a), 4(j)(1)).

This view accords with the points made by PDVSA and its Subsidiaries establishing that, "under *Peacock* and its progeny, this action is a new proceeding against entities not parties to Plaintiff's underlying judgment."  Reply at 8.  "As such, Plaintiff was required to serve PDVSA under Rule 4(j)(1)," which points to § 1608(b) of the FSIA and the Hague Service Convention, "and to serve the Subsidiaries under Rules 4(h)(2) and (f)(1), which [also] point to the Hague [Service] Convention."  *Id.*; *see* Mot. at 21.  Moreover, the United States confirms that, even if this were a valid post-judgment enforcement action, Plaintiff would *still* be required to properly serve PDVSA and its Subsidiaries with process to establish personal jurisdiction over them.  *See* SoI at 27 & n.8 (citing *CSX Transp. v. Island Rail Terminal*, 879 F.3d 462, 469 (2d Cir. 2018); *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

It is undisputed that Plaintiff did not effect service under the Hague Service Convention or any other treaty and, therefore, did not effect service pursuant to the requirements of the FSIA or Rule 4.  *See* Mot. at 22-23; Reply at 8.  That failure alone mandates vacatur.  *See* Mot. at 24 (citing *Harrison*, 139 S. Ct. at 1048, 1062; *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (reversing default judgment following D.C. Circuit decision holding judgment was void for lack of personal jurisdiction based on defective service)); *see also* ECF No. 103 at 9-10 (citing *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1040-41 (D.C. Cir. 2022), *cert. denied*, -- S. Ct. -- (2022) (reversing grant of summary

judgment where plaintiff failed strictly to comply with Hague Service Convention)).

***Ownership:***  The United States "note[s] several factors that must be considered" in this Court's analysis of "whether TRIA requires that the terrorist party [(the FARC)] itself have an ownership interest" in the assets sought to be executed — as PDVSA and its Subsidiaries have argued.  SoI at 29; *see* Mot. at 38-39; Reply at 5-6, 15-17; ECF No. 99 at 6; ECF No. 104 at 13-14.  Specifically, the United States advises that "Congress enacted TRIA against the background of [common-law execution] principles, and the statute should be interpreted consistent with those common-law precepts."  SoI at 31.  This includes the "'basic'" principle "'that a lienholder enjoys rights in property no greater than those of the debtor himself.'"  *Id.* (quoting *United States v. Rodgers,* 461 U.S. 677, 713 (1983) (Blackmun, J., concurring in part and dissenting in part)); *see* Reply at 6.  The United States further explains that construing TRIA to "requir[e] only that the agency or instrumentality of a terrorist party have an ownership interest in the assets for those assets to be subject to execution" — "as opposed to the terrorist party itself having that ownership interest" — may create tension with the "relatively permissive" definition of "agency or instrumentality" from *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 133-34 (2d Cir. 2016).  SoI at 34.  In other words, Plaintiff was required to prove, but did not (and cannot), that the FARC has an ownership interest in PDVSA, the Subsidiaries, or the restrained property.  *See* Mot. at 38-39; Reply at 5-6, 15-17; ECF No. 99 at 6; ECF No. 104 at 13-14.

These considerations, coupled with the text of TRIA ("assets *of . . . including*"), support the conclusion that TRIA requires the "terrorist party" "have at least an ultimate-beneficial ownership interest in 'the blocked assets' even if they are also 'blocked assets of any agency or instrumentality of that terrorist party.'"  Reply at 6.  And the recent decision in *Levinson v. Kuwait Financial House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022), which the United States brings to

the Court's attention (*see* SoI at 13, 15), confirms this requirement.  There, the Second Circuit

reversed the grant of a TRIA writ against the assets of an alleged agency or instrumentality of Iran,

the judgment debtor.  *Levinson*, 44 F.4th at 97.  The Second Circuit held the "Levinsons failed to

meet the statutory requirements under [N.Y. C.P.L.R.] § 5225(b) and, consequently, they failed to

establish that they were entitled to a writ of execution," because "there ha[d] been no showing that

KFH Malaysia is in possession of property 'in which the judgment debtor [Iran] has an interest.'"

*Id.* at 98 (second alteration supplied).

Here, Plaintiff has not even alleged (nor could he) that the FARC has an interest in the

assets he seeks to execute.  *See* Mot. at 38; Reply at 6, 16; ECF No. 93 at 4; ECF No. 99 at 6.  Nor,

for that matter, has Plaintiff established the assets at M&T Bank are in fact "owned by [PDVSA],

as opposed to . . . some lesser degree of connection," as the United States confirms he must, under

TRIA.  SoI at 30; *see* Mot. at 37-39; Reply at 5-6, 15-17.  Plaintiff has thus doubly failed to carry

his burden of proving ownership.  *See* Mot. at 37-39; Reply at 15-17.

**_"Agency or Instrumentality":_**   The United States confirms that the term "agency or

instrumentality" in TRIA does not encompass PDVSA, and the Second Circuit's decision in

*Kirschenbaum* is not to the contrary.  *See* SoI at 31-35; *see also* Mot. at 25-31; Reply at 11-3.

Specifically, the United States advises that "the unique scenario" here — where Plaintiff "holds a

judgment against a non-state terrorist party [[(the FARC)]] and seeks to execute that judgment

against an entity [(PDVSA)] that is alleged to be both an agency or instrumentality of that non-

state terrorist party and an agency or instrumentality of a foreign state" (ECF No. 106 at 3) — "at

a minimum," warrants "applying a narrow application of 'agency or instrumentality.'"  SoI at 34.

The United States agrees with PDVSA and its Subsidiaries that *Kirschenbaum*'s rule would not

apply to the novel facts here — facts that the Second Circuit had no cause to consider.  *Id.* at 32;

*see* Mot. at 30-31; Reply at 2-3, 6, 11-12.  And the United States likewise agrees that "applying *Kirschenbau*m's broad definition of 'agency or instrumentality'" in the facts presented here would create statutory conflicts and have unintended consequences.  SoI at 33 (internal inconsistency in TRIA); *see* SoI at 34-35 (inconsistency with FSIA terrorism exception); SoI at 20 & n.6 (inconsistency with JASTA); *see also* Mot. at 25-31; Reply at 13.

As the United States points out, "the Second Circuit itself [has] recognized that an overly broad construction of *Kirschenbaum* [i]s not advisable."  SoI at 35 (citing *Kirschenbaum v. Assa Corp.,* 934 F.3d 191, 199 (2d Cir. 2019))); *see* Reply at 6 (similar); *see also In re Terrorist Attacks on Sept. 11, 2001* ("*In re 9/11*")*,* No. 03-md-1570, 2022 WL 4643442, at *19 (S.D.N.Y. Aug. 26, 2022) (R. & R.) (noting *Kirschenbaum*'s definition "was only a starting point that would necessarily be refined as new circumstances presented themselves").  The United States therefore encourages the Court to apply *Kirschenbaum* narrowly so as to not "apply to agencies or instrumentalities of foreign states that have not been designated as state sponsors of terrorism" (SoI at 34), i.e., so as not to apply to PDVSA.  *See* Mot. at 25-31; Reply at 2-3, 6, 11-13.

Moreover, the United States provides reason for substantial doubt that *Kirschenbaum*'s definition of "agency or instrumentality" in TRIA is compelled by or consistent with the statute. *See* SoI at 33.  Indeed, the United States points out the shaky legal foundations of that definition, which the Second Circuit adopted from a minimally reasoned decision of the Middle District of Florida by way of the Eleventh Circuit, which itself "merely cited the district court's definition." SoI at 33 n.10 (citing *Stansell v. FARC,* No. 8:09-cv-2308, 2013 WL 12133661, at *2 (M.D. Fla. May 2, 2013), *aff'd in relevant part*, 771 F.3d 713 (11th Cir. 2014)); *see also* Mot. at 31 (noting *Kirschenbaum* was decided without analyzing any legislative history).  And the recent decision in *In re 9/11* likewise questions the Eleventh Circuit's legal reasoning in its latest decision construing

"agency or instrumentality" in TRIA.  *See* 2022 WL 4643442, at *21 n.13 (citing *Stansell v. FARC*, 45 F.4th 1340 (11th Cir. 2022)).

As the Court may recall, Plaintiff placed heavy reliance on the outcome of enforcement proceedings within the *In re 9/11* Multi-District Litigation in the Southern District of New York. Those proceedings — explicitly modeled on Plaintiff's enforcement efforts here — seek to execute against assets of the Afghan central bank as an alleged TRIA "agency or instrumentality" of the Taliban.  *See* ECF No. 104 at 1-3; ECF No. 115 at 7-8.  The United States has not recognized the Taliban as the government of Afghanistan nor has the United States designated Afghanistan as a state sponsor of terrorism.  *See* ECF No. 112-1 at 1-13 & 9 n.2.

Plaintiff moved to stay this purported enforcement action in favor of the *In re 9/11* enforcement proceedings, reminding the Court "no less than eight times in his briefing" that the Court would benefit from a decision in those proceedings.  ECF No. 118 at 4 n.5.  After this Court denied Plaintiff's motion to stay (*see id.*), the Magistrate Judge in *In re 9/11* recommended dismissing those proceedings and flatly rejected the contention, promoted by Plaintiff here, that "TRIA's 'agency and instrumentality' language [is] a backdoor exception to jurisdictional immunity that could not be obtained otherwise."  2022 WL 4643442, at *11; *see also id.* at *9 n.10 (declining to rely on this Court's decisions earlier in these proceedings, including because this "[C]ourt did not have the benefit of full adversarial briefing in rendering its initial decision").

*                              *                              *

For all these reasons, and those stated in PDVSA's and its Subsidiaries' Motion and Reply, this Court should (i) vacate the Decisions & Orders dated December 18, 2020 (ECF No. 15) and January 29, 2021 (ECF No. 33), (ii) quash the writs of execution issued under these orders, (iii) vacate the Turnover Judgment dated January 29, 2021 (ECF No. 35), and (iv) dismiss this action with prejudice.

Dated:  October 31, 2022

Respectfully submitted,

By:  _s/ Claire A. DeLelle_
Claire A. DeLelle
Nicole Erb
**WHITE & CASE**
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com

*Counsel for Petróleos de Venezuela, S.A.,*
*Aceites y Solventes Venezolanos Vassa S.A.,*
*PDV Marina S.A., Petroanzoategui S.A. (a/k/a*
*Petro San Felix S.A.), Venfleet Asphalt, Ltd.,*
*Venfleet, Ltd., and Venfleet Products, Ltd.*