WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

March 6, 2023

**VIA CM/ECF**

Honorable Lawrence J. Vilardo
United States District Court
Western District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

**RE:** *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-mc-40 (W.D.N.Y.) — Notice of Supplemental Authority

Dear Judge Vilardo:

We represent Petróleos de Venezuela, S.A. ("PDVSA") and its Subsidiaries, Aceites y Solventes Venezolanos Vassa S.A., PDV Marina S.A., Petroanzoategui S.A. (a/k/a Petro San Felix S.A.), Venfleet Asphalt Ltd., Venfleet Ltd., and Venfleet Products Ltd., in the above-referenced action. We write to advise the Court that, on February 21, 2023, Judge George B. Daniels issued a Memorandum Decision and Order dismissing for lack of subject-matter jurisdiction enforcement proceedings — explicitly modeled on Plaintiff's enforcement efforts here — within the *In re 9/11* Multi-District Litigation in the Southern District of New York. *See* **Ex. 1** (Mem. Decision & Order, *In re: Terrorist Attacks on September 11, 2001*, No. 1:03-md-1570, ECF No. 8866 (S.D.N.Y. Feb. 21, 2023)). The decision supports PDVSA's position, as confirmed by the United States in its Statement of Interest, that this Court lacks subject-matter jurisdiction over proceedings attempting to shift liability onto PDVSA and its Subsidiaries for Plaintiff's default ATA judgment against the FARC.

As the Court may recall, PDVSA and its Subsidiaries previously informed this Court of the *In re 9/11* enforcement proceedings involving assets of the Afghan central bank, Da Afghanistan Bank ("DAB"), given the identity of issues between the two sets of proceedings. *See* ECF No. 104. The plaintiffs in the *In re 9/11* enforcement proceedings sought to satisfy their default judgments against the Taliban by executing against the DAB's assets, based on the theory that the DAB was an "agency or instrumentality" of the Taliban as that phrase is used in the Terrorism Risk Insurance Act ("TRIA"). In short, Judge Daniels' decision rejected that theory and denied the plaintiffs' motion for turnover.

As the Court may also recall, Plaintiff placed heavy reliance on the outcome of the *In re 9/11* enforcement proceedings and even requested a stay of this action pending a decision in the Southern District of New York. *See* ECF No. 111. The Court denied the stay in June 2022, principally because the *In re 9/11* proceedings as to the DAB's assets had just begun, rendering it questionable that a decision in those proceedings would issue before a decision in these more advanced proceedings. ECF No. 118. In denying Plaintiff's motion to stay, however, this Court stated: "Of course, if the Southern District were to render a decision first, this Court would review and consider that decision." *Id*. at 4-5.

WHITE & CASE

Honorable Lawrence J. Vilardo
March 6, 2023

After this Court denied Plaintiff's motion to stay, the Magistrate Judge in *In re 9/11* recommended dismissal of the *In re 9/11* enforcement proceedings against the DAB's assets. *See* ECF No. 131 at 10 (citing *In re: Terrorist Attacks on September 11, 2001*, No. 1:03-md-1570, 2022 WL 4643442 (S.D.N.Y. Aug. 26, 2022) (R. & R.)). Judge Daniels has now adopted that recommendation, holding that TRIA does not provide subject-matter jurisdiction for purported enforcement proceedings over the assets of an "agency or instrumentality" of a foreign state where the judgment creditor does not have an underlying judgment against that foreign state under the Foreign Sovereign Immunities Act ("FSIA"). *See* Ex. 1 at 2, 10-22. The court therefore denied the *In re 9/11* judgment creditors' turnover motions for lack of subject-matter jurisdiction. *Id.* at 30. The same result is compelled here.

Judge Daniels began his opinion by recognizing that the DAB — like PDVSA — is an "agency or instrumentality of a foreign state" within the meaning of the FSIA and therefore enjoys both jurisdictional immunity from the courts of the United States (28 U.S.C. § 1604) and from attachment and execution on its property (*id*. § 1609). *See* Ex. 1 at 10-13. These two immunities "operate independently." *Id.* at 13 (quotation marks omitted). Thus, "to reach DAB's assets, the Judgment Creditors need exceptions to the FSIA both for the DAB's jurisdictional immunity and execution immunity." *Id.* at 14.

Mirroring Plaintiff's theory here, the *In re 9/11* judgment creditors invoked TRIA in a misguided attempt to overcome DAB's jurisdictional immunity from actions and enforcement proceedings. *Id.* Specifically, like Plaintiff, the judgment creditors argued that TRIA's text "nullified any relevant constraint on DAB's jurisdictional immunity by the FSIA." *Id.*; *see, e.g.*, ECF No. 90, at 9-10. The judgment creditors argued that TRIA (codified as a note in § 1610 of the FSIA) operates as an exception to the FSIA's jurisdictional immunity through § 201(a)'s introductory text stating that TRIA applies "[n]otwithstanding any other provision of law." *Id.* at 15. The court rejected that argument, concurring with the Magistrate Judge's view that "TRIA's notwithstanding clause is not a bulldozer that clears every possible legal obstacle between a litigant and their goal." *Id.* at 17 (quotation marks omitted). The court explained: "TRIA is an *execution* statute" and therefore "does not conflict with the provisions of FSIA that deal with *jurisdictional* immunity." *Id.* (italics supplied). Accordingly, the court held that "TRIA fails to provide the jurisdiction over DAB assets that the Judgment Creditors need." *Id.* at 17-18.

The *In re 9/11* court also rejected the judgment creditors' arguments — substantively identical to Plaintiff's arguments here — that they did not need to overcome DAB's jurisdictional immunity because their action was a purported post-judgment enforcement proceeding. *See id.* at 19-22; *see also, e.g.*, ECF No. 90 at 8-9. The court acknowledged that, under Second Circuit precedents, including *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), TRIA "can provide a court with jurisdiction over the property of a foreign state or its instrumentality where there exists a valid underlying judgment *against the sovereign*." Ex. 1 at 20 (emphasis supplied). But, "[w]ithout a waiver of jurisdictional immunity" in the underlying judgment, "TRIA § 201(a) does not offer a freestanding mechanism for waiving a foreign sovereign instrumentality's immunity to jurisdiction." *Id.*; *see also id.* at 21 (holding that later Second Circuit precedents "confirm[] the

WHITE & CASE

Honorable Lawrence J. Vilardo
March 6, 2023

narrowness of *Weinstein's* holding that pertains only to situations in which there is a valid underlying judgment against a foreign sovereign").[1]

As with Plaintiff's default ATA judgment against the FARC, the *In re 9/11* judgment creditors hold a judgment against a non-state terrorist party (the Taliban), not against DAB directly nor against Afghanistan. *See id.* at 20. Accordingly, the court held that "*Weinstein*'s application of TRIA is of no avail" and cannot provide a basis for subject-matter jurisdiction as to DAB. *Id.* at 21. "Moreover," the court continued, "TRIA § 201(a) could not be wielded against Afghanistan or its instrumentalities independently because Afghanistan," like Venezuela, "has not been designated as a state sponsor of terrorism." *Id.* at 21. TRIA is only operative as to foreign states that have been designated as state sponsors of terrorism and against which there is an underlying judgment entered pursuant to the so-called terrorism exception to immunity (28 U.S.C § 1605A). *See* ECF No. 131 at 3-4.

And even if the court had subject-matter jurisdiction as to DAB, the turnover motions failed for the additional reason: the judgment creditors could not use TRIA to execute against DAB's assets because those assets were not "of" the judgment debtor. *See* Ex. 1 at 22-29; *see also* ECF No. 131 at 7-8. As the court explained, under Rule 69(a) of the Federal Rules of Civil Procedure, TRIA enforcement proceedings in New York must satisfy the requirements of both N.Y. C.P.L.R. § 5225(b) *and* TRIA. Ex. 1 at 22-23. Both statutes require the judgment creditors to show that "the judgment debtor" — there, the Taliban (here, the FARC) — "has an interest in the property the creditor is targeting," or in the words of TRIA, that the assets are blocked assets "of" the judgment debtor. *Id.* at 23; *see* ECF No. 131 at 7. The judgment creditors, like Plaintiff, attempted to use TRIA's "agency or instrumentality" parenthetical to satisfy this requirement but they misconstrued its meaning. *See* Ex. 1 at 24; TRIA § 201(a) (providing for execution of "the blocked assets *of* the terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party" (emphasis added)).

Lastly, the court further held that it was constitutionally restrained from finding that DAB was simultaneously an "agency or instrumentality" of Afghanistan and the Taliban. *See* Ex. 1 at 25-29. Under the definition of "agency or instrumentality" propounded in *Kirschenbaum*, "the government of Afghanistan necessarily exercises a degree of control or authority over its own central bank to make the central bank the Afghan government's agency or instrumentality." *Id.* at 25. "The judicial finding the Judgment Creditors seek," i.e., that DAB is also an agency or instrumentality of the Taliban, thus "necessarily and impermissibly implies that the Taliban constitutes the recognized government of Afghanistan." *Id.* But recognition is the exclusive prerogative of the President, who has not recognized the Taliban as the government of Afghanistan. *Id.* at 26-29. As a result, the court's "fundamental conclusion — as required by TRIA and the Constitution — is that neither the Taliban nor the Judgment Creditors are entitled to raid the coffers of the state of Afghanistan to pay the Taliban's debts." *Id.* at 29. Likewise Plaintiff

---

[1] The same basic principles that animate Judge Daniels' holding as to DAB apply equally to PDVSA's Subsidiaries under the Supreme Court and Second Circuit precedents in *Peacock* and *Epperson* — that a federal judgment creditor seeking to impose liability for a money judgment on a person not otherwise liable for the judgment must establish an independent basis for the court's subject-matter jurisdiction. *See* ECF No. 131 at 4-5.

Honorable Lawrence J. Vilardo
March 6, 2023

**WHITE & CASE**

here should not be permitted to raid the coffers of Venezuela and its state-owned entities to pay the debts of the FARC — a defunct Colombian narco-terrorist organization.

For these same reasons and those stated in their briefs, PDVSA and its Subsidiaries respectfully submit that this Court lacks subject-matter jurisdiction and should therefore (i) vacate the Decisions & Orders dated December 18, 2020 (ECF No. 15) and January 29, 2021 (ECF No. 33), (ii) quash the writs of execution issued under these orders, (iii) vacate the Turnover Judgment dated January 29, 2021 (ECF No. 35), and (iv) dismiss this action with prejudice.

Respectfully submitted,

By: *s/ Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
White & Case LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com

*Counsel for PDVSA and its Subsidiaries*

Attachment (Exhibit 1)

cc:   All counsel of record via CM/ECF